1  Philip J. Kearney - 114978
        PKearney@mpbf.com
2  Christopher R. Ulrich - 271288
        CUlrich@mpbf.com
3  Kevin D. Cardona - 314033
        KCardona@mpbf.com
4  MURPHY, PEARSON, BRADLEY & FEENEY
    580 California Street, Suite 1100
5  San Francisco, CA  94104-1001
    Telephone:      (415) 788-1900
6  Facsimile:      (415) 393-8087

7  Attorneys for Plaintiff DAI TRANG THI NGUYEN

8              **UNITED STATES DISTRICT COURT**

9          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10                  **SAN JOSE DIVISION**

| | |
|---|---|
| 11  DAI TRANG THI NGUYEN, an individual; | Case No.: |
| 12              Plaintiff, | **COMPLAINT FOR DAMAGES** |
| 13          v. | **1.   DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF DUE PROCESS CLAUSE OF FOURTEENTH AMENDMENT TO U.S. CONSTITUTION (42 U.S.C. § 1983)** |
| 14  CITY OF SAN JOSE; WILLIAM GERRY, an individual; and DOES 1-100, inclusive; | |
| 15 | |
| 16              Defendants. | **2.   DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF EQUAL PROTECTION CLAUSE OF FOURTEENTH AMENDMENT TO U.S. CONSTITUTION (42 U.S.C. § 1983)** |
| 17 | |
| 18 | |
| 19 | |
| 20 | **3.   MUNICIPAL LIABILITY FOR UNCONSTITUTIONAL CUSTOM, POLICY, OR PRACTICE DEPRIVING PLAINTIFF OF CIVIL RIGHTS** |
| 21 | |
| 22 | |
| 23 | |
| 24 | **[DEMAND FOR JURY TRIAL]** |

25

26  ///

27  ///

28  ///

Plaintiff DAI TRANG THI NGUYEN (hereinafter "Plaintiff" or "Ms. Nguyen") alleges as follows:

## I.     INTRODUCTION

1.     In 2016, Defendant CITY OF SAN JOSE (the "City") made it a priority to resume its efforts to curb prostitution, human trafficking, and other illicit acts occurring in many of its approximately 5,300 massage establishments by enacting an amendment to its massage ordinance.

2.     This ordinance imposed a host of new licensing, permitting, and municipal code requirements on the City's massage establishments. Enforcement authority over these new requirements was specifically granted to the San Jose Police Department ("SJPD") and the City's Code Enforcement Division, among other municipal entities.

3.     Defendant WILLIAM GERRY ("Gerry"), the sole designated Code Enforcement Division inspector assigned to enforce the new ordinance, used his power and authority vested in him by the City to intentionally target and sexually assault, rape, solicit bribes from, and extort numerous massage establishment owners or workers of exclusively Asian ethnicity, race, or national origin — including Plaintiff. At all times Gerry committed these acts under color of law, while on duty and official business as a Code Enforcement Inspector for the City. He is currently in custody awaiting trial on a 14-count criminal complaint ("Criminal Complaint") alleging the same (and additional) illegal and criminal acts that form the basis of this civil action.

4.     The City was specifically alerted to Gerry's sexual and extortive misconduct in a series of letters and whistleblower complaints from and regarding other Asian masseuses, well before he assaulted, raped, and extorted Plaintiff. The City's subsequent—and stunning—failure to discipline, supervise, train, or otherwise stop Gerry's behavior was knowing, intentional, and in deliberate indifference to the safety of Plaintiff and other similarly situated citizens; it proximately and foreseeably caused Plaintiff's severe physical, emotional, and psychiatric injuries. At all times relevant, the City had the means to institute reasonable and adequate safeguards to prevent Gerry from continuing his pattern of repulsive behavior and targeting Plaintiff.

5.     Plaintiff brings this action to recover damages pursuant to 42 U.S.C. § 1983, for the deprivation of civil rights secured unto her by the due process and equal protection clauses of the

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

Fourteenth Amendment to the Constitution of the United States, by federal laws, by Article 1, Sections 1 and 7 of the Constitution of the State of California, and by relevant case authority establishing municipal liability for the acts or omissions alleged herein, including *Monell v. Dep't. of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978) and its progeny, as set forth more fully below.

## II.    JURISDICTION

6.      This case is brought pursuant to 42 U.S.C. § 1983, and alleges the deprivation of Plaintiff's federal civil rights guaranteed under the U.S. and California Constitutions, and otherwise by statute and case law. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

## III.    INTRADISTRICT ASSIGNMENT

7.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) and Local Rule 3-2(e) because the acts, events and/or omissions giving rise to Plaintiff's claims occurred in the City of San Jose, County of Santa Clara. Therefore, assignment of this action to the Northern District of California and its San Jose Division are proper.

## IV.    PARTIES

8.      Plaintiff was at all times relevant herein a citizen of California, residing in the County of Santa Clara.

9.      Defendant City is a municipal corporation, duly organized and existing under the laws of the State of California. Under its authority, the City operates the Planning, Building & Code Enforcement Department (the "PBCE") and the SJPD, among other municipal components.

10.      Defendant City is legally responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and employees, departments, sub-entities, and agencies.  It is specifically responsible for the acts and omissions of defendant Gerry, and other City employees of the PBCE and SJPD, acting within the course and scope of their employment.

11.      At all times relevant herein, Defendant City was responsible for ensuring that the actions, omissions, policies, procedures, practices and customs of the PBCE and its employees and agents complied with the laws and the Constitutions of the United States and of the State of California.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

12.     Defendant Gerry, an individual, at all times relevant herein was employed by the Defendant City as a Code Enforcement Inspector within the Code Enforcement Division of the City's PBCE ("Code Enforcement Division" or "Code Enforcement Department"). He was the sole Code Enforcement Inspector tasked with inspecting hundreds of massage parlors and thousands of establishments offering massage services, within the San Jose city limits, and he was also responsible for determining and/or enforcing their compliance with applicable municipal ordinances, codes, policies, and directives.

13.     At all times relevant herein, Gerry was a resident of the State of California and believed to be a resident of the County of Santa Clara. Gerry is currently housed at the Santa Clara County Jail.

14.     Defendants DOES 1-100 are unidentified officers, agents, representatives, or employees of the City who either (a) had final policy-making authority regarding the enforcement of City municipal codes applicable to massage establishments, the issuance or rejection of massage permits, the time and manner of inspections, the hiring, training, and discipline of Code Enforcement Inspectors for the City, the investigation of City employee misconduct and complaints regarding City employees; (b) acted with deliberate indifference to the known or foreseeable deprivations of Constitutionally protected civil rights by Gerry and other City employees, including DOES 1-100; or (c) themselves committed the deprivations of Constitutionally protected civil rights, either alone or in concert with Gerry and/or other DOE defendants.

15.     The true names, capacities or involvement of the Defendants named herein as DOES 1 through 100, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint to identify their true names and capacities when the same has been determined.

16.     Plaintiff, Ms. Nguyen, is informed and believes, and upon such information and belief alleges, that each of the Defendants named herein as DOES were legally responsible in some manner for the events and happenings referred to herein, and proximately caused her injuries and damages, as is hereinafter alleged.

17.     At all times herein mentioned, each and every Defendant was an employee, agent, partner, joint venture, or co-conspirator of each of the other Defendants, and each was at all times

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1   acting within the course and scope of such employment, agency, partnership, joint venture, and/or in

2   concert with the other co-conspirator(s).

3       18.    While engaging in the conduct described herein, each Defendant acted under the color

4   of law and in the course and scope of their employment with the City. In engaging in such conduct,

5   each Defendant exploited and/or abused the authority vested in them as officers, agents, or

6   representatives of the City, and in that capacity violated the due process and equal protection

7   provisions of the 14th Amendment to the U.S. Constitution.

8                  **V.    STATEMENT OF FACTS**

9       19.    As noted above and alleged in more detail below, Gerry is currently held in custody on

10  the Criminal Complaint issued by the San Jose Police Department and accepted and filed by the Santa

11  Clara County Superior Court on September 29, 2020. The allegations contained in the Criminal

12  Complaint reflect in part the crimes and torts perpetuated against Plaintiff by Gerry as he acted in the

13  course and scope of his employment, and under color of law, as explained in greater detail and

14  specificity hereinafter. (A true and correct copy of the filed-endorsed Criminal Complaint filed against

15  Gerry in Santa Clara County Court, Case No. C2012699, is attached hereto as **Exhibit 1**.)

16  **A.    William Gerry & the City Code Enforcement Division**

17      20.    In 2007, the City hired Gerry as a Code Enforcement Inspector to serve within the Code

18  Enforcement Division of the PBCE, which at all times relevant was located at 200 East Santa Clara

19  Street, San Jose, California.

20      21.    The City hired Gerry without performing a background check, including upon

21  information and belief, an employment, credit, or financial history check. Such a background check

22  would have revealed that Gerry had declared bankruptcy in 1997, at which time he listed under penalty

23  of perjury over a dozen named bankruptcy creditors including banks, credit card agencies, retailers,

24  and individuals. Such information regarding Gerry's money mismanagement should have and

25  reasonably would have served as a major red flag in his hiring, and regarding his fitness to be

26  employed in an unsupervised capacity while yielding City-authorized enforcement powers over the

27  permitting of small businesses operating primarily on a cash basis.

28

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

22.     As a Code Enforcement Inspector, Gerry reported directly, and was accountable to, Joseph Hatfield ("Hatfield"), Supervisor of the Special Programs Group within the Special Operations Section of the Code Enforcement Division. Hatfield in turn reported to Rachel Roberts ("Roberts"), who served as another level of supervision within the Code Enforcement Division, either as Special Operations Division Manager or as the Acting Head Code Enforcement Official, or both.

23.     At all times relevant, Hatfield and Roberts had supervisorial authority and responsibility over Gerry, were actually aware of and/or deliberately indifferent to Gerry's pattern, custom, practice, and policy of depriving civil rights afforded by the U.S. and California Constitutions, and had the authority to discipline and terminate Gerry, and to otherwise prevent Gerry from committing constitutional violations against Plaintiff while acting under color of law.

24.     In 2016, as set forth in further detail below, the City implemented its then new "Massage Ordinance" ("Massage Ordinance" or "Ordinance") which ultimately resulted in the City imposing a host of new requirements for establishments offering massage services. According to the City's express public policy, the Ordinance was designed to combat prostitution, human trafficking, and other offenses known and reported to be prevalent within the City's massage industry.

25.     In 2017, Gerry was designated by the City as the only Code Enforcement Inspector to conduct outreach to the City's massage industry regarding these new requirements; he was specifically authorized to oversee the implementation of the enhanced scrutiny mandated by the Massage Ordinance. In that capacity, Gerry was officially designated as the "Code Enforcement Inspector II— Massage," in Code Enforcement Division Organizational Charts.

26.     The SJPD "Vice Unit" (hereinafter "Vice Unit") worked collaboratively with Gerry to carry out enforcement activities targeting massage parlors, thereby vesting Gerry with certain law enforcement duties. As noted further below, the SJPD Police Chief formally acknowledged Gerry's role in the SJPD's massage enforcement program. For instance, as a matter of routine collaboration, Gerry was typically alerted to the Vice Unit's raids of massage establishments for suspected criminal activity before their occurrence. During those raids, the Vice Unit asked Gerry to remain within a 1-2 block radius of the target location. Once entry was made by the SJPD, Gerry was asked to respond immediately and participate in the SJPD's enforcement action while police officers were still on

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

site. Gerry was also tasked with notifying the SJPD of evidence of criminal conduct taking place in establishments he inspected for code compliance. Due in part to Gerry's close collaboration with the Vice Unit, Plaintiff was unable to distinguish Gerry from a police officer.

**B.      Gerry's Civil Rights Violations against Ms. Nguyen.**

27.      Ms. Nguyen is a naturalized United States citizen of Vietnamese descent who speaks only broken English.

28.      At all times relevant and prior to the opening of her massage parlor, Ms. Nguyen was a licensed massage therapist in California.

29.      On or about November 30, 2018, Ms. Nguyen entered into a commercial lease of the property at 1692 Tully Road, #12, San Jose, California, for the purpose of operating a massage parlor named "Soft Touch Spa" (the "Spa").

30.      On or about December 20, 2018, in furtherance of the requirements of the Massage Ordinance, Gerry issued a "City of San Jose – Compliance Order" ("Order") on PBCE letterhead to the owner of 1692 Tully Road, #12. The Order notified the premises owner that the Spa was operating without a Massage Business Permit and a Massage Ownership/Management License as required by San Jose Municipal Code §§ 6.44.120 and 6.44.130, respectively. Gerry's Order directed that all massage operations at the Spa cease immediately. Thereafter, the owner of the premises notified Ms. Nguyen of the Order. (A true and correct copy of the Compliance Order issued by William Gerry on or about December 20, 2018, is attached hereto as **Exhibit 2** and is incorporated herein by reference.)

31.      On or about January 8, 2019, Gerry visited the Soft Touch Spa for the first time since Ms. Nguyen had taken ownership.  He was on-duty, driving a white City of San Jose sport utility vehicle ("SUV") bearing a San Jose municipal decal on its side. Based on information and belief, Gerry was acting within the course and scope of his designated employment authority during this and all subsequent visits to the Spa, as detailed below.

32.      When Gerry entered the Spa on January 8, 2019, he wore a white City identification placard clipped to his belt, which was visible to two of the Spa's female employees. Gerry told these employees that he had a massage permit application package for the Spa's owner, Ms. Nguyen. When told that Ms. Nguyen was not present, Gerry sat on the Spa's couch and invited the women to join him.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

When they did—one sitting on either side of Gerry—Gerry commenced to massage each woman's back with his hand under each of their blouses, touching bare skin. After an uncomfortably long period for both women, Gerry left. One of the women, Ngoc Dung Thi Nguyen, later told Ms. Nguyen that she was afraid in Gerry's presence and stated that 'He thinks he can do whatever he wants to my body.'

33.    The next day, Wednesday, January 9, 2019, Gerry returned to the Spa in the morning hours and met Ms. Nguyen.  Gerry again drove his white City SUV with municipal decal. His white Code Enforcement Division identification tag was again affixed visibly to his belt. Based on his identification tag, city car, and obvious authority to inspect massage establishments, Ms. Nguyen believed Gerry to be a SJPD officer. She immediately became intimidated by him.

34.    During the visit, Gerry identified unpermitted construction in the Spa not shown on City building plans. Gerry told Ms. Nguyen that bringing the construction into compliance would cost in excess of $50,000,

35.    Gerry then asked to discuss the matter privately with Ms. Nguyen; the two went into the Spa's employee break room. Ms. Nguyen expected to discuss the Soft Touch Spa and the permitting process. Instead, Gerry asked to see the entirety of a tattoo on Ms. Nguyen's back that was partially exposed under her outer garments. Ms. Nguyen was surprised that a police officer would make such a request, however she complied by lifting her blouse and sweater showing Gerry her exposed back. Thereafter, Gerry handed Ms. Nguyen a thick City *Application Packet For Massage Permits*.

36.    During their conversation in the breakroom, Gerry threateningly asked Ms. Nguyen if she "like[d] this location?" Based on this question and other statements, Ms. Nguyen believed that failing to cooperate with Gerry would inevitably lead to her Spa's closure.

///

///

///

///

///

///

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

37.     Gerry then told Ms. Nguyen that she could keep her Spa open if she paid him an upfront fee of $10,000 in cash, followed by monthly payments of $2,000. She understood from Gerry that payments to him would absolve her of any further obligation to comply with City Code requirements. To make the payment schedule clear despite Ms. Nguyen's lack of English proficiency, Gerry hand wrote instructions to Ms. Nguyen on the back of the Application Packet he had just handed her. The instructions described when and in what amounts he required his monthly cash payments:

                1-10-19          $2000

                2-1-19           "

                3-1-19           "

(A true and correct copy of the cover and last page of the "Application Packet for Massage Permits" (containing Gerry's extortionate writings) is attached hereto as **Exhibit 3** and is incorporated herein by reference.)

38.     The following morning, on January 10, 2019, Gerry returned to the Soft Touch Spa before it formally opened for business to collect his first payment of $10,000.  Ms. Nguyen had borrowed the steep sum from a friend. The two met again in the employee break or lunch room; no other employees were on the premises. Ms. Nguyen handed the full $10,000 cash payment to Gerry.

39.     Apparently wanting more than just payment, Gerry tried to kiss Ms. Nguyen on her lips, causing her to turn away in disgust. Gerry then pulled her head to his groin area and forced her to orally copulate him to the point of ejaculation. When the act was completed, Ms. Nguyen felt ashamed and ran to the Spa's bathroom to clean herself. Gerry left pending his next payment.

40.     The next day, January 11, 2019, Gerry contacted Ms. Nguyen and warned her to keep her Spa closed on Monday, January 14, 2019, because the SJPD was scheduled to conduct an inspection of her establishment (of which Gerry had received advanced notice from the Vice Unit). Ms. Nguyen followed Gerry's orders and closed her Spa on the given day.

41.     Per his instructions written on the back of the Application Packet **(Exhibit 3)**, Gerry returned to the Spa, on or about February 1, 2019, again while on duty in a City car. Gerry met Ms. Nguyen in the same break room, this time taking an envelope from her with a cash payment of $2,000. Gerry again forced Ms. Nguyen to orally copulate him to the point of ejaculation. Before leaving,

- 9 -

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

Gerry told Ms. Nguyen he would pick up his next (March) payment early on February 27, 2019, since he would be out of town during the first part of the month.

42.     As with this and all of Gerry's subsequent sexual assaults and extortive demands, Ms. Nguyen felt she could not resist; she understood and feared that her safety, livelihood, massage licenses and permits, and legal status with the City were all dependent on grimly doing what she was told to do by Gerry, both physically and monetarily. Due to her negative experiences with law enforcement in Vietnam, Ms. Nguyen was also distrustful of the police and government; she believed that reporting misconduct by a government official would result only in retaliation, false criminal charges, and other problems she was not equipped to confront.

43.     On February 19, 2019, Gerry texted Ms. Nguyen and asked for an even earlier meeting than previously agreed upon. He also proposed a new deal to Ms. Nguyen: he would arrange for the City to allow her to remain open for three years without being inspected, for a price of an additional $20,000. Gerry stated he would accomplish this by removing the Soft Touch Spa from the City's business records. In the text, which Gerry translated into Vietnamese using a mobile translation application, he explained his payment demand by stating that "he had to pay other people." Ms. Nguyen was shocked by this additional and extraordinarily large sum, but she felt trapped and fearful, so she borrowed more money and sold jewelry to cobble together the requested amount of cash.

44.     The following day, on February 20, 2019, Gerry returned to collect the $20,000 in cash. As with the previous incidents, Gerry took the extortion payment after isolating Ms. Nguyen in the breakroom and forcing her to orally copulate him to ejaculation.

45.     On February 26, 2019, Gerry texted Ms. Nguyen to warn her of a planned undercover SJPD "sting" operation planned for later that day at her Spa.

46.     The following day, on February 27, 2019, Gerry returned early for his March payment of $2,000. Gerry took the envelope of cash from Ms. Nguyen then, by means of fear, he forced her again to orally copulate him to the point of ejaculation; this constituting the fourth such act.

47.     On March 19, 2019, Gerry texted Ms. Nguyen and told her that he would come to her Spa the following day to take photographs for her massage permit. He promised Ms. Nguyen—

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

falsely—that he would get her the permit by April 15, 2019, and also remove her business's name from the list of City massage establishments to be inspected.

48.     On March 20, 2019, Gerry arrived to take pictures while one of Ms. Nguyen's employees was present. Ms. Nguyen had made an excuse to avoid being at the spa at the appointed time of Gerry's arrival, she could no longer endure his constant sexual assaults, extortion, and oppressive tactics. Later in the day, he returned when Ms. Nguyen was present and took her to a massage room. Ms. Nguyen had her $2,000 April cash payment ready, but did not hand it over to Gerry at the advice of a Spa employee. In the room, Gerry continued his string of sexual assaults by groping Ms. Nguyen's breasts under her blouse, fondling her vaginal area, then vaginally raping Ms. Nguyen.

49.     After that fifth sexual assault, Gerry left the Spa never to return.  Ms. Nguyen never heard from him again despite her repeated—and increasingly desperate—text communications over a span of months inquiring about her permits and money.

50.     Unbeknownst to Ms. Nguyen, shortly after raping her on March 20, 2019, Gerry resigned as a San Jose Code Enforcement Inspector II and relocated to Texas.

51.     Ms. Nguyen never consented to any of Gerry's sexual advances and predation, she submitted only based on his real and professed power over her as the sole Code Enforcement Inspector for the City's massage establishments. As such, his actions constituted the crimes of forced oral copulation, sexual assault, and rape as defined in the California Penal Code, all of which he committed in the course and scope of his employment, and under color of law.

52.     After Gerry's resignation, the City resumed its code enforcement efforts aimed at Ms. Nguyen's Spa. On June 2, 2019, the SJPD informed her landlord that the Soft Touch Spa would have to close because of a failure to obtain proper licenses and permits.

53.     Ms. Nguyen was in shock and emotionally broken; she had been psychologically tormented, humiliated, raped, and placed into severe debt. And now her ability to earn a living was being taken from her. She was crushed to learn that Gerry had literally done nothing to help her. She became desperate, furious, highly anxious, and emotionally unstable.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

54.     On June 28, 2019, Ms. Nguyen met with the Vice Unit to discuss the SJPD's plan to shut down her Spa. On that date the SJPD was informed by Ms. Nguyen, through her counsel, of Gerry's extortionate behavior, but the closure of her Spa proceeded.

55.     On September 15, 2019, Ms. Nguyen was forced to vacate the Spa she had built with money amassed from her family in Vietnam.

56.     The loss of her business and funds that could have been used to bring the Spa into compliance with City building codes and massage permitting requirements constituted a deprivation of Ms. Nguyen's Constitutionally protected property interests pursuant to the due process and equal protections clauses of the Fourteenth Amendment to the U.S. Constitution.

57.     After struggling financially for months, Ms. Nguyen could no longer manage or contain the emotional damage Gerry had caused through his extortion and sexual abuse. She could no longer sleep or rest. She became increasingly anxious and emotionally and mentally unstable. She was in crisis.

58.     On or around July 15, 2020, Ms. Nguyen went to the Kaiser Permanente Hospital in San Jose for treatment of her mental distress. She was kept at Kaiser Permanente until the facility closed, then she was transferred for continued protective monitoring to Valley Medical Center, Emergency Psychiatric Services ("EPS"), also located in San Jose.

59.     On or about July 16, 2020, EPS nurses asked her why she was in such severe emotional distress. Ms. Nguyen told them about the sexual assaults and rape perpetrated by Gerry. As required by law, EPS informed the police that a patient at their facility had been the victim of a sexual crime.

60.     Shortly thereafter, two uniformed SJPD officers arrived at the facility to interview Ms. Nguyen. She again described her victimization in as much detail as she could bear before bursting into tears and literally screaming from distress. The interaction triggered an investigation by the SJPD, which quickly identified Gerry as the perpetrator.

61.     On July 22, 2020, Detective Ben Lam of the SJPD, apparently following up on the initial SJPD report made at EPS, sent Ms. Nguyen a letter stating that she may have been the victim of a crime and that the SJPD was investing her case.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

62.     On August 3, 2020, Detective Lam interviewed Ms. Nguyen at length regarding Gerry's wrongful, illegal, and reprehensible conduct.

## C.     Gerry's Arrest & Other Victims of His Crimes

63.     The crimes targeting Ms. Nguyen were unfortunately representative of a much larger pattern of misconduct perpetrated by Gerry while on duty as a City Code Enforcement Inspector. Evidence uncovered in the criminal investigation demonstrated both the broad scope of Gerry's crimes and that he was allowed to run amok and unsupervised throughout the vulnerable massage industry of San Jose. With apparent limitation or City safeguard, Gerry combined the unique enforcement powers conferred solely to him by the City with the leverage afforded him by the City's strict new Massage Ordinance, to extort both sex and money.

64.     On September 29, 2020, a 14-count Criminal Complaint against Gerry was signed by the Honorable Paul Bernal, Judge of the Superior Court of the County of Santa Clara. Included among the fourteen felony counts were four counts of forced oral copulation in violation of California Penal Code Section 287(c)(2)(A), one count of rape in violation of California Penal Code Section 261(a)(2), seven counts of extortion under the color of authority in violation of California Penal Code Section 518(a), and three counts of bribery by a government employee in violation of California Penal Code Section 68(a). **(Exhibit 1.)**

65.     In addition to the sexual and economic crimes targeting Ms. Nguyen (identified in the Criminal Complaint as "Jane Doe" in Counts One through Nine), the Complaint alleged extortion and bribery offenses against named victims Ming Qiang Fang and Zuolun Zhang, themselves owners of other massage parlors in the City. The SJPD investigation also revealed that Gerry committed sex and extortive crimes under the color of his authority beyond even those charged in his criminal Complaint.

### 1.     Victim Xianli Doe

66.     In his *"Declaration In Support Of No Bail Request [P.C. § 1269] And Motion To Examine The Source Of Bail [P.C. § 1275],"* filed publicly under the penalty of perjury with the Santa Clara Superior Court on September 30, 2020, Detective Lam identified another sexual assault victim of Gerry whom he described with only her actual first name as, "Xianli Doe" ("Xianli") (A true and correct copy of the District Attorney's *Motion to Examine Source of Bail* and Detective Lam's

- 13 -
COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

*Declaration in Support of No Bail Request*, each dated September 28, 2020, is attached hereto as **Exhibit 4**).

67.     Xianli's victimization is described in more detail in an affidavit submitted by Detective Lam in support of a search warrant for Gerry's JP Morgan Chase bank account ("Affidavit"). In his Affidavit, Detective Lam described how in early 2019, Gerry offered Xianli a massage permit for her business in return for an extortion payment of $5,000 in cash. Xianli confided to Detective Lam that in addition to requesting the cash payment, Gerry also sexually assaulted her in early 2019.

**2.     Victim Zoulun Zhang**

68.     In his Affidavit, Detective Lam also confirmed that the owner of Xianli's spa, Zuolun Zhang, paid Gerry $10,000 in cash at Gerry's request in March 2019, for massage permits for two of Mr. Zhang's San Jose massage parlors (the establishment where Xianli worked and a second location). **(Exhibit 4, ¶ 6.)**  In his Affidavit, Detective Lam stated that Gerry told Mr. Zhang that the payments were for 'expedited massage permits.' Zhang also told Detective Lam that he was aware of other businesses which had been extorted by Gerry.

69.     However, Mr. Zhang's payments were ineffective; soon after making them Gerry stopped returning Zhang's attempts to communicate. Much like Ms. Nguyen, he was initially unaware that Gerry had resigned and moved to Texas. Mr. Zhang is named as a victim in Count 14 of the Criminal Complaint which alleges a violation of Penal Code Section 68(a) (Asking Or Receiving a Bribe By Officer, Government Employee Or Appointee). **(Exhibit 1, p. 5.)**

**3.     Victim Ming Qiang Fang**

70.     As synopsized in Detective Lam's Affidavit and stated fully in the official SJPD report of the investigation, in July 2018, Gerry visited a massage parlor in San Jose owned by Ming Qiang Fang to conduct ostensible City outreach and an inspection pursuant to the City's Massage Ordinance. During his visit he met a female employee with the first name of Shaojing and determined that the business did not have a valid massage permit.

71.     Approximately one week later, on or about August 27 or 28, 2018, Gerry came to the business again, eventually meeting with Shaojing and Mr. Fang.  Gerry told them bluntly before leaving that operating without a valid massage permit was subject to a $7,500 fine, and if they did not

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

pay immediately he would shut the business down.  Approximately two hours later, Gerry returned and spoke with Shaojing alone. Gerry told her that if she gave him $5,000 in cash, he would cancel the fine and allow the spa to remain open.

72.     Thereafter, Shaojing communicated Gerry's offer to Mr. Fang, the spa's owner. Mr. Fang agreed to pay the $5,000 to keep his business open.

73.     Approximately one week later, in or about early September 2018, Gerry texted Shaojing via WeChat and stated that the spa would now have to pay him $2,000 every month to stay open. This new demand was again communicated to Mr. Fang, who agreed to Gerry's extortionate terms. Thereafter, Mr. Fang paid Gerry $2,000 per month for the four remaining months in 2018 (September-December).

74.     In early January 2019, the landlord of Mr. Fang's spa decided not to renew his lease and informed Mr. Fang that he would have to close the premises. On or about January 6-8, 2019, Gerry contacted Shaojing at the spa and told her that for $10,000 in cash, he would renegotiate the lease with the landlord and pay all her fees owed to the City, thereby allowing the business to stay open. In response, Mr. Fang gathered what money he could and gave Shaojing $6,000 in cash to give to Gerry. After transmitting the cash, Shaojing eventually asked for it back when she realized the spa was closing anyway; Gerry never responded.

75.     The total amount of extortionate payments extracted by Gerry under color of authority identified to date by the SJPD is consequently $63,000: $34,000 from Ms. Nguyen; $10,000 from Zoulun Zhang; and $19,000 from Ming Qiang Fang. **(Exhibit 4, ¶¶4, 6-8, respectively.)** However, this was still not the full extent of Gerry's wrongdoing.

76.     Detective Lam found during his analysis of Gerry's personal savings and checking accounts a total of $140,000 of unexplained cash deposits made between March and May 2019; this from a municipal Code Enforcement Inspector II who, based on information and belief, made approximately $95,513.32 in salary in 2018.

77.     In one approximate 60-day period during this timeframe, 21 cash deposits in amounts ranging from $3,000 to $8,000 were made into Gerry's two accounts. The sums did not come from Gerry's new job in Texas. Detective Lam concluded that a portion of these additional cash deposits

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

represented extortionate sums from as yet "unknown" victims. **(Exhibit 4, ¶¶ 12-17.)** As would befit an individual with Gerry's complete lack of moral compass, the deposits appeared to Detective Lam to be "structured" so as not to violate the Currency Transaction Report limit of $10,000 and trigger an investigation by the bank into the origin of the cash funds. **(Exhibit 4, ¶14.)**

78.     On November 5, 2020, Gerry was arraigned in Department 24 of the Santa Clara County Superior Court. His criminal case was initially continued to November 24, 2020, for entry of plea, and then again until January 29, 2021, for the same purpose. Gerry remains in custody on a bail of $550,000. Based on information and belief, Gerry used his authority to sexually assault still other masseuses not described above who worked at or operated the massage businesses which were the subject of his Code Enforcement activities.

79.     Plaintiff further believes that language and cultural barriers, and internalized feelings of guilt, shame, and embarrassment have prevented additional victims from coming forward to report Gerry's sexual crimes either to the SJPD, the courts, the public, the Plaintiff, or otherwise.

**D.     The City's Unconstitutional Policies, Customs, or Practices.**

80.     As noted, Gerry's misconduct was committed in furtherance of an affirmative City policy aimed at using the Code Enforcement Division to combat illicit activity within massage parlors and spas. However, the City's grossly inadequate implementation of this policy, and its deliberate lack of oversight over the enforcement of the policy, were direct and proximate causes of the deprivation of Plaintiff's civil rights afforded by the U.S. and California Constitutions.

**1.     Gerry Acted Pursuant to an Express City Policy of Enhanced Massage Enforcement**

81.     On September 18, 2014, California Governor Jerry Brown signed Assembly Bill 1147 ("AB 1147), The Massage Therapy Act, into law. It took effect on January 1, 2015. Under AB 1147, cities and counties became able to regulate massage businesses within their own jurisdictions.

82.     In response, on June 23, 2015, during its "Priority Setting Session," the San Jose City Council ("Council" or "City Council") voted that the modification of the City's outdated Massage Ordinance be made a top municipal priority to combat prostitution and human trafficking. (A true and

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

correct copy of the "San Jose City Council Memorandum on Massage Ordinance and Amendments" dated November 23, 2015, is attached hereto as **Exhibit 5**, and is incorporated herein by reference.)

83.     On December 8, 2015, Council member Raul Peralez added Council Agenda Item 8.1 to the City Council's Official Agenda. The stated subject of Item 8.1 was "Actions Related To The Amendment to Title 6 Massage Parlor Regulation." (A true and correct copy of the City Council Memorandum dated December 8, 2015, is attached hereto as **Exhibit 6**, and is incorporated herein by reference.)

84.     Council Agenda Item 8.1 directed City staff to work with the Code Enforcement Division to review Santa Clara County's recently-approved massage parlor establishment ordinance and include concepts from that ordinance into City regulations. The Agenda Item included recommendations for specific enhancements to massage parlor oversight aimed at preventing parlors from becoming fronts for human trafficking and prostitution.

85.     One week later, on December 15, 2015, the Council approved Ordinance No. 29662 which amended Section 6.44 of the City Municipal Code (the "Massage Ordinance").

86.     The Massage Ordinance's Purpose Section stated in relevant sub-parts:

> "It is the purpose and intent of the city council that the operation of massage establishments and persons offering massage be regulated in the interests of public health, safety, and welfare by providing minimum building, sanitation, and health standards and to ensure that persons offering massage shall possess the minimum qualifications necessary to operate such businesses and to perform such services offered."

And:

> "It is the intent of this chapter to enact regulations to insure that those offering massage services are qualified and trained and can be expected to conduct their services in a lawful and professional manner. The City Council finds that existing controls have not satisfactorily addressed or regulated serious criminal and public health problems, nor have the existing controls regulated the profession so as to sufficiently encourage compliance with state and local laws."

(A true and correct copy of the Massage Ordinance, Ordinance No. 29662, effective January 15, 2016, is attached hereto as **Exhibit 7**, and incorporated herein by reference.)

87.     The Amendments to the Massage Ordinance required massage establishments to (1) maintain valid business permits issued by the Chief of Police, (2) maintain valid

- 17 -

ownership/management licenses also issued by the Chief of Police, and (3) ensure that individual masseuses be certified as massage therapists, among other requirements.

88.     Section 6.44.520 of the Massage Ordinance also specified which City agencies had authority to inspect massage premises under the Ordinance: "the Police Department, Fire Department, and Planning, Building, and *Code Enforcement Department*…" (Emphasis added).

89.     On March 7, 2017, the City Council added the Personal Care Business Compliance Initiative ("Initiative") to the Council Priority List and officially ranked it as No. 10 of the City's new policy priorities. The Initiative echoed the goals of the Massage Ordinance, and was aimed squarely at regulating the massage industry through "enhanced outreach," among other tactics.

90.     The City clearly intended that its Code Enforcement Division be at the forefront of enforcement operations in support of its new massage policy since it expressly delegated enforcement authority to that municipal component.

91.     Gerry used these enhanced enforcement protocols of the Massage Ordinance to impose sex upon and extract monies from vulnerable massage workers and owners who were the subject of his official outreach efforts. As such, Gerry's tortious and criminal misconduct was committed pursuant to express City policy.

**2.      Gerry was the Final Policy Maker Regarding Code Enforcement of Massage Establishments**

92.     The Public Safety, Finance, and Strategic Support ("PSFSS") Committee of the San Jose City Council in Fiscal Year 2017-2018 formally approved funding in the Adopted Budget for the PBCE to add a Code Inspector to work in partnership with the Police Department on massage enforcement, including direct outreach to property owners. (A true and correct copy of the City Council Memorandum to the PSFSS re the "Massage Parlors Ordinance Status Report", dated September 13, 2017, is attached hereto as **Exhibit 8**, and is incorporated herein by reference.) **(Exhibit 8, pp. 3-4.)**

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

93.     This new position—filled by Gerry—began enforcement operations in August 2017. As such, Gerry was formally given final policy-making authority by the City regarding, without limitation, the following:

- The frequency, necessity, timing, and manner of inspections of City businesses offering massage services;

- The issuance of citations for administrative, building, and other municipal code violations to businesses offering massage services;

- The approval or denial of applications for massage permits; and

- Direct communication with massage establishment owners and operators regarding options to make businesses compliant with applicable codes and massage permit requirements, whether in person, via e-mail, telephone, text message or letter.

94.     Gerry utilized this assigned final policy-making authority on behalf of the City to develop a policy, custom, and practice which he wielded under color of law to criminally exploit Plaintiff and other victims for sex and money. Over time, Gerry's abuse of his City-delegated authority became his criminal *modus operandi*. This pattern consisted of:

(1)     Visiting a massage establishment in person driving a white City issued vehicle with identifying decals, wearing his City Code Enforcement badge, and introducing himself as a Code Enforcement Inspector for the City, either after prior correspondence with the victim regarding alleged code violations, the issuance of a citation, or when making an unsolicited visit to inspect the premises and take photographs;

(2)     Threatening or intimidating owners of massage establishments with: exaggerated cost estimates of code compliance, violation reports to the police, eviction, and business closure;

(3)     Promising establishment owners or operators that the payment of extorted sums of cash would guarantee permit approval, provide advance notice of police inspections/raids, or guarantee a finite period with no enforcement activity; and

(4)     Sexually harassing and assaulting predominantly female Asian owners or employees of massage establishments, mainly in massage or breakrooms, after these same women

1    were specifically reminded of the Defendant's enforcement powers and potential

2    negative outcomes for their respective business.

3        95.    As a final policy maker for City Code Enforcement of massage establishments, Gerry's

4    acts perpetrated in furtherance of his policy, custom, practice are imputed to the City.

5    **3.    Gerry Acted Pursuant to the City's Long-Standing Practice of Unsupervised Solo
         Massage Enforcement**

6

7        96.    Based on information and belief stemming from data supplied by the City's Code

8    Enforcement Division itself, Gerry conducted approximately 703 massage enforcement visits between

9    2011 and his resignation in 2019. During those enforcement visits, he was accompanied by another

10   code enforcement inspector on approximately 5 occasions; meaning that well over 99% of the time

11   Gerry acted alone.

12       97.    There was also no supervisorial quality control of Gerry's outreach visits. In the same

13   nine-year time period noted above according to Code Enforcement Division records, Gerry's unit

14   supervisor, Joseph Hatfield, attended *two* of Gerry's enforcement actions. One of those actions was

15   when Gerry was participating in an SJPD Vice Unit raid, not when he was acting alone. Division

16   records demonstrate that Supervisor Hatfield did not conduct a single follow-up outreach visit to a spa

17   formerly visited by Gerry to check on his employee's conduct and professionalism in dealing with the

18   public. Code Enforcement Division records show that Rachel Roberts, Gerry's other immediate

19   supervisor, never visited a massage parlor in which Gerry conducted enforcement operations during

20   the same nine-year span to check on Gerry's work.

21       98.    Clearly by any measure, the City's practice and custom when it came to massage

22   enforcement was to let a single male make entry into the subject massage establishments and conduct

23   outreach on his own with no effective supervision or constraint. All visits to the Plaintiff's Spa noted

24   above were made by Gerry acting alone. This long-standing practice led directly and foreseeably to the

25   outrageous conduct by Gerry toward Ms. Nguyen and other victims as described above.

26

27

28

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

4.      **The City's Deliberate Indifference toward Hiring, Supervision, Discipline, and the Adoption of Policies to Prevent Constitutional Violations**

99.      Even at the inception of the enhanced enforcement program stemming from its new Massage Ordinance, the City of San Jose abjectly failed to adequately staff or fund the ambitious program.

100.      On March 2, 2016, City Chief of Police Edgardo Garcia ("Chief Garcia") authored a memorandum to the City Council's PSFSS Committee, notifying the Committee of the enormity of the task ahead. (A true and correct copy of this Memorandum to the PSFSS Committee is attached as **Exhibit 9**, and incorporated herein by reference.)

101.      In the memorandum, Chief Garcia stated that during calendar years 2008-2015, the City "stopped requiring and enforcing businesses to obtain a Massage Business Permit from the City, and [consequently] the Police Department no longer had ready access to a database of massage establishments." Chief Garcia also noted that approximately 295 parlors had been identified in concentrated 'hot spots' throughout San Jose, and that the Vice Unit was just starting outreach to those establishments. Chief Garcia went on to highlight the utility of a "task-force" approach in which the undermanned Vice Unit could leverage other city agencies including the Code Enforcement Division.

102.      In a follow-up memorandum to the PSFSS Committee on September 13, 2017, Chief Garcia noted again the severe lack of staffing available within the SJPD to enforce the "new Massage Ordinance." In his memorandum, Chief Garcia confirmed that there were "300 known massage businesses that were likely subject to the requirements of the new ordinance." In addition, Chief Garcia cited data from the California Massage Therapy Council identifying 600 certified massage therapists and practitioners in the City; as well as data from the State of California Board of Cosmetology which confirmed that there were up to 5,300 licensed establishments offering massage services in the City. Chief Garcia stated that each of these massage therapists and establishments—totaling 5900--would require outreach pursuant to the new Massage Ordinance.

103.      In the September 13, 2017 memorandum, Chief Garcia also admitted that: "due to department-wide staffing shortages, enforcement has been limited and must be prioritized…with the September 2016 shift change, sworn staff were redeployed to the patrol division effectively reducing

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1   the Vice Unit's staffing to one sergeant. From January 2017 to August 2017, the Vice Unit *lost*

2   *allocated full time staffing with redeployment of the remaining sergeant position*." (*Emphasis added*).

3      104.    So at a time when the City made the enforcement of massage violations one of its top

4   municipal priorities with the enactment of a tough new Ordinance designed to combat perceived

5   serious crimes including human trafficking, the City allocated exactly <u>zero</u> additional officers to the

6   SJPD's Vice Unit, the main investigative body charged with enforcement. In fact, the City allowed the

7   Vice Unit during that same period to wither from one officer to none.

8      105.    Even though that position was eventually restored, the Vice Unit was clearly

9   overwhelmed and was forced to rely heavily on the City's Code Enforcement Division. In his

10   September 13, 2017, memorandum referenced above, Chief Garcia cited as a positive development the

11   City's decision in fiscal year 2017-2018 to "add a [single] dedicated Code Inspector to work in

12   partnership with the Police Department on massage enforcement."

13      106.    As noted, that one code enforcement inspector was Gerry, the sole City employee to

14   whom massage enforcement authority was delegated by its Code Enforcement Division. Thus, the City

15   knowingly allowed Gerry to police a group of unsuspecting and vulnerable victims, most without the

16   English language skills or cultural awareness to stand up for themselves. One code inspector to provide

17   enforcement oversight to 5,900 locations and individuals; a level of municipal indifference to staffing,

18   hiring, and the safety of the affected massage workers, that would be almost comical if the

19   consequences were not so deplorably serious.

20      107.    The inexcusable and deliberate understaffing of the Code Enforcement Division's

21   massage section extended to the Division's supervision as well. At the time of the Massage

22   Ordinance's passage in 2016, the City's Code Enforcement Division was run by a "Code Enforcement

23   Official," Diane Buchanan ("Buchanan"). Buchanan was in charge of supervising two Divisions (Field

24   Operations and Special Operations), which themselves were responsible for eight Units staffed by

25   more than 60 employees. One of these Units was "Special Programs," where Gerry was assigned as

26   noted previously as the sole Code Enforcement Inspector with massage oversite. (A true and correct

27   copy of Organizational Charts of the City' Code Enforcement Division, dated September 1, 2017, is

28   attached as **Exhibit 10**, and is incorporated herein by reference.)

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

108.     In March 2018—approximately one year before Plaintiff was raped—Buchanan retired and her position (which according to "Transparent California" paid a combined annual salary and benefits package of $327,410.63), was not re-staffed during the rest of 2018 and the entirety of 2019 when Gerry was running his criminal enterprise and perpetrating the civil torts that are the subject of this lawsuit.

109.     Buchanan's prolonged absence forced Rachel Roberts, the manager of Gerry's Special Operations Division, to assume Buchanan's post, leaving her post as Gerry's Division Supervisor vacant. (A true and correct copy of the Organizational Chart of the Code Enforcement Division, dated August 27, 2018, is attached as **Exhibit 11**, and is incorporated herein by reference.)

110.     Later, and at all times relevant to the misconduct alleged herein, instead of the City filling one of the posts with a new candidate, Ms. Roberts was simply assigned both supervisorial jobs. (A true and correct copy of Organizational Charts of the City' Code Enforcement Division, dated December 3, 2018, is attached  as **Exhibit 12**, and incorporated herein by reference.)

111.     In effect, the one and only Division Supervisor who could have reigned in the one male code officer tasked with outreach and enforcement of the overwhelmingly female massage industry, was removed and not replaced during the entirety of Gerry's myriad Constitutional violations.  The Defendant was left without even the minimal supervision envisioned by the City when it set up the Code Enforcement Division.

112.     Buchanan's salary savings was not used to hire additional massage code enforcement inspectors. Such additional inspectors could have responded with Gerry to enforcement actions—the clear industry standard when conducting oversight of massage parlors—and undoubtedly squelched Gerry's criminal behavior. The City's deliberate business decision to not fill such a vital position and provide competent supervision was a direct, legal, and foreseeable substantial factor which enabled Gerry's repeated acts of rape, sexual assault, and extortion.

113.     Further and as noted above, it was not the practice of the few Code Enforcement Supervisors the City did employ to go into the field randomly (or at all), to meet with the public and check on Gerry's work—a violation of all relevant standards of practice in the effective supervision of municipal code enforcement employees.  Not only were there not enough supervisors to effectively

manage the approximately 60 employees in the Code Enforcement Division, but the City's custom and practice of keeping those supervisors out of the field eviscerated any effective oversight ability they had over their employee's conduct; such a complete lack of attention constituted a deliberate indifference to supervision by the City; an indifference that proximately (and foreseeably) allowed Gerry to commit the repeated Constitutional violations suffered by Ms. Nguyen.

114.    This lack of oversight was equally applicable to (the lack of) supervisorial review of Gerry's written records of enforcement.  At all times relevant herein, the Code Enforcement Division kept a chronological record of enforcement actions taken at individual establishments entitled a "City of San Jose Case Summary Report" ("CSR").  Even a cursory review of the CSR for the Soft Touch Spa would have revealed to a competent supervisor that something was amiss.

115.    Starting on August 15, 2012 (well before Ms. Nguyen leased the premises in 2018) and extending to November 5, 2018 (when enforcement at the Spa was assigned to Gerry pursuant to the Massage Ordinance) approximately 50 entries in the CSR were recorded for the Soft Touch Spa. They reflected a continual torrent of phone calls, letters, inspections, notifications regarding unpermitted construction, permit applications, building plans, and ultimately an expiration of a necessary work permit to bring the Spa's physical space into compliance on December 31, 2015. The work permit application remained in expired status through December 2018 when Gerry took over enforcement of the Soft Touch Spa. As noted, Gerry's first enforcement act toward the Spa occurred on December 20, 2018, when he sent his initial *City of San Jose – Compliance Order* to the Spa's landlord. Yet inexplicably, he recommended just 26 days later in the CSR (January 15, 2019 at 1:01pm), that further enforcement action be closed because he "was working with the responsible party." As described above, "working with" meant extorting and sexually assaulting.  Five minutes later at 1:06pm, the violations were formally listed as closed in the CSR.

116.    So, after approximately eight years of continual failures to bring the Spa's premises into compliance, and with an expired building permit application preventing the necessary work from being done lawfully, Gerry was still able to correct all code enforcement violations in just short of one month during the Christmas Holiday Season. Moreover, Gerry's recommendation regarding the suspension of further enforcement activities was accepted in a literal matter of minutes without any apparent

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

supervisorial sign-off by Hatfield or Roberts. Another glaring example of a complete failure of City supervision.

### 5.    The City had Actual Notice and Knowledge of Gerry's Unfitness

117.    The City cannot now claim that it was unaware of Gerry's unprofessional and unlawful conduct prior to the time he raped, sexually assaulted, and extorted Plaintiff. On October 25, 2018, a letter with enclosed photographs was received at the City Code Enforcement Division. (A true and correct copy of the anonymous letter to William Gerry enclosing photographs, received by the City on October 25, 2018, is attached hereto as **Exhibit 13**, and is incorporated herein by reference.)

118.    The letter noted (colloquially) that Gerry was having intercourse with a female masseuse at the "CEO Spa" on Alvin Avenue in San Jose.  The letter questioned why Gerry had given "application over 3 month [sic]" to that Spa despite "this spa not only [providing] massage ok…?" Despite the broken English, the message conveyed in the letter was absolutely clear: Gerry was giving an apparent brothel a pass on code enforcement in return for sexual favors. The photographs served only to confirm this inference; they showed highly inappropriate and amorous physical contact between Gerry and an Asian masseuse. The first photograph displayed Gerry in an extremely physical mutual embrace with the woman while both smiled at the camera. The woman's face can be seen resting on Gerry's chest, with both her upper and lower body pressed firmly against him; her arms are visibly locked around Gerry's torso at the approximate waist level. The second photograph presented the same two individuals in an intimate facial close-up, with Gerry's entire right cheek area pressed firmly against the woman's approximate left cheek and his nose touching the edge of her lips. Both are smiling affectionately. The woman was later identified as a Vietnamese employee of a spa where Gerry had conducted enforcement activities.

119.    The letter and shockingly unprofessional photos were immediately delivered to Rachel Roberts.  As noted previously, at the time Ms. Roberts was Gerry's supervisor, serving as both the Acting Director of the entire Code Enforcement Division and the Manager of the Special Operations Sub-Division which included Gerry's Special Programs Unit. Instead of conducting an investigation of Gerry, Roberts shared the letters and photographs with him and treated him as a potential victim of extortion. He thereafter identified himself and the female spa employee and confirmed the images were

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

taken during an outreach and inspection. In an apparent attempt to deflect personal responsibility, Gerry—unbelievably—claimed that such behavior was not uncommon and that he had received embraces and kisses from other female massage employees during his enforcement activities.

120.    Rather than limiting Gerry to a desk pending an investigation, or mandating that he only perform industry outreach in the presence of other inspectors, or training him on professional standards of conduct for this industry, Roberts simply turned the letters over to the SJPD to conduct a criminal investigation of the individual who had sent the letter. Gerry was allowed to continue conducting his enforcement operations by himself; 76 days later he forced plaintiff to orally copulate him *and* make her initial $10,000 extortionate payment. And this was not the extent of the City's advance notice of Gerry's misconduct.

121.    On December 16, 2018, 21 days after the delivery of the above photos and letter and 25 days *before* Plaintiff was sexually assaulted, an anonymous email was received by the City of San Jose's "Whistleblower Hotline." (A true and correct copy of the anonymous email submitted to the City via its Whistleblower Hotline is attached hereto as **Exhibit 14**.)

122.    The email reported that City Code Inspector William Gerry was "violating the city code of ethics and taking advantage of the fear people in the Asian community have of the government and police." The email recounted instances of improper and unwanted touching by Gerry of female masseuses, attempts to get them alone into massage parlor "backrooms," and his receipt of envelopes of money from establishments apparently not in compliance with the dictates of the Massage Ordinance. The email concluded with the following commentary: "…it makes me sad that someone like him is taking advantage of immigrants through fear, unwanted sexual advances, and bribes."(**Exhibit 14.**) The email was received and reviewed by a Senior Executive Analyst within the City's Office of Employee Relations and forwarded to the SJPD. On information and belief, the email was also provided to Roberts of the Code Enforcement Division. Shockingly, and despite the previous complaint received just weeks earlier with photographic evidence, Gerry's supervisors allowed him to continue his solo enforcement with disastrous results.

123.    The Code Enforcement Division's failure to conduct any level of even rudimentary oversight of Gerry after being alerted on multiple occasions of his amorous and unprofessional

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

behavior toward the subjects of his City massage enforcement constituted an appalling level of deliberate indifference to his supervision and discipline, especially in an industry with a high and foreseeable potential for such abuse. At a minimum, Code Enforcement Division supervisors should have conducted their own investigation of Gerry's relationship with the female masseuses in question, as well as contacting other spas visited by Gerry to determine the extent of his unlawful behavior. The failure to conduct even a rudimentary level of supervision constituted not just deliberate indifference, but a conscious, knowing affirmative enablement of Gerry's past and ongoing misconduct.

124.    As a direct and proximate consequence of the City's knowing, conscious, and deliberate indifference to the constitutionally protected rights of Ms. Nguyen, she became one of Gerry's and the City's victims; a circumstance the City could have easily prevented with the implementation of even a modicum of reasonable safeguards.

**E.    Gerry and the City's Intentional and Discriminatory Enforcement of the Massage Ordinance against Asian Female Massage Business Owners and Masseuses**

125.    Gerry intentionally targeted Asian massage parlor owners, operators, and masseuses in selectively enforcing and abusing the authority vested in him as a Code Enforcement Inspector. Out of the hundreds of massage establishments and thousands of licensed massage therapists within the City subject to Gerry's outreach,  to date all victims of Gerry's sexual assault, extortion, or rape perpetrated in the course of such authorized activity and under color of law, have been identified as being of Asian ethnicity or national origin. Detective Lam's Declaration in Support of No Bail Request, signed under penalty of perjury, corroborates that "[t]he businesses [Gerry] targeted were Asian-owned massage therapy offices" and that "[h]e was well-known in the community of Asian-owned massage parlors." **(Exhibit 4, ¶ 11.)**

126.    On information and belief, Gerry targeted Asian  owned and operated massage businesses or masseuses, including Plaintiff, based on a belief that they were less likely to report his crimes because of a language barrier or a culturally-based distrust of law enforcement, and plainly, for his sexual tastes.

127.    Gerry targeted Plaintiff specifically based on her membership in a vulnerable group-- Asian female massage parlor owners--which constituted an intentional and purposeful discrimination

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

in the application of the Massage Ordinance that he was charged with enforcing. Gerry's enforcement of the Ordinance in this manner was malicious and made with discriminatory intent.

128.   The City, through its conscious and knowing refusal to investigate the numerous citizen complaints and reports of Gerry's sexual assaults, solicitation of bribes, extortion, and other inappropriate or illegal conduct—or to stop the conduct—ratified and adopted Gerry's discriminatory enforcement of the Massage Ordinance.

129.   Ms. Nguyen suffered and continues to suffer from severe and enduring emotional distress, pain and suffering, anguish, hurt, shame, humiliation, and other general damages as a result of the City and Gerry's unlawful conduct.

## VI.   FIRST CLAIM FOR RELIEF

### DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF DUE PROCESS CLAUSE OF FOURTEENTH AMENDMENT TO U.S. CONSTITUTION (42 U.S.C. § 1983)

### (Against all Defendants and DOES 1-100)

130.   Plaintiff hereby re-alleges and incorporates by reference the allegations set forth above in this Complaint.

131.   At all times stated herein, Gerry acted under color of law of the State of California and the municipal ordinances adopted by the City, and official or unofficial policy, customs, and practice ratified by the City and within the scope of his employment for the City to, willfully and knowingly, deprive Ms. Nguyen of, or unlawfully interfere with, her civil rights vested in her by the United States Constitution, including but not limited to, the following:

(1)   Ms. Nguyen's substantive due process right to bodily integrity and privacy, i.e. to be free of sexual assault, rape, battery and other unlawful and offensive touching, and

(2)   Ms. Nguyen's property interest in her massage parlor business and the funds that Defendants extorted from Ms. Nguyen in violation of procedural due process;

(3)   Ms. Nguyen's right to equal protection of the laws as an Asian female massage parlor owner and massage therapist; and

(4)   Other rights recognized by the federal courts as emanating from the due process clause of the Fourteenth Amendment to the United States Constitution.

### 1.      Ms. Nguyen's Right to Bodily Integrity and Privacy

132.      Gerry violated Ms. Nguyen's right to bodily integrity by, *inter alia*, committing sexual assault and rape as alleged herein, without Ms. Nguyen's consent and under threat of denying a permit, assessing penalties, or reporting her to the police. At all times in so doing, Gerry acted under color of state law, in his capacity as an officer of the City, while on duty during business hours to officially conduct outreach to or "inspect" Ms. Nguyen's massage parlor.

133.      The right to bodily integrity and privacy in one's unclothed body has been recognized by numerous federal courts as an important civil right and liberty interest protected by and emanating from the Fourteenth Amendment to the U.S. Constitution. All of Gerry's acts were part of his deliberate scheme and *modus operandi* to use his City employment as a Code Enforcement Inspector to sexually assault Asian female massage parlor owners or employees, or otherwise solicit sexual favors and bribes from them.

### 2.      Ms. Nguyen's Property Interest in Massage Business and Livelihood

134.      Ms. Nguyen had a substantive due process right and property interest in her massage establishment, the Soft Touch Spa, and the income stream, assets, goodwill, business and professional opportunities it provided to her.

135.      As a direct result of Gerry's extortion of $34,000 in funds from Plaintiff and his false statements and promises that cooperation with Gerry's demands made to Plaintiff under threat of the Spa's closure would allow Plaintiff to remain compliant with all applicable municipal codes and keep her businesses open, Plaintiff lost her massage business and was deprived of her property interest in the Soft Touch Spa business and the aforementioned associated financial benefits.

136.      *Inter alia*, Gerry's extortion of funds unlawfully interfered with Ms. Nguyen's ability to obtain a massage permit and remain compliant with all applicable ordinances because it deprived her of time and money to spend on those efforts, and because Gerry, as the sole Code Enforcement Inspector for the City's massage establishments, through threat or force, made it impossible for her to obtain a permit without giving into his demands for sex and money. Absent Gerry's unlawful and unconstitutional interference with Ms. Nguyen's efforts to obtain an official massage permit from the City, Ms. Nguyen would have been able to come into compliance and be approved for said permit.

137.    Gerry and the City's interference with and deprivation of Ms. Nguyen's fundamental substantive due process rights to her bodily integrity and her property interests, as alleged herein, are inexcusable in that no procedural safeguards could justify the Defendants interference with her civil rights.

138.    Gerry committed each of the described acts alleged herein willfully, maliciously, fraudulently, and with oppression in his actions, conduct, concealments, and omissions, with ill will, evil motive, and the intent of harming Ms. Nguyen and other victims, and/or with willful and conscious disregard of the rights and safety of Ms. Nguyen and other victims, entitling Plaintiff to an award of punitive or exemplary damages against Gerry.

139.    As a direct and proximate result of Gerry's acts or omissions, all committed under color of his authority as an officer of the City, and the Code Enforcement Division or Vice Unit specifically, Ms. Nguyen suffered severe and enduring emotional distress, loss of funds through extortion, lost earning capacity, and other damages as will be proven at trial, all in violation of her rights under the laws of California and the Constitution of the United States, in particular the Fourteenth Amendment.

## VII.    SECOND CLAIM FOR RELIEF

### DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF EQUAL PROTECTION CLAUSE OF FOURTEENTH AMENDMENT TO U.S. CONSTITUTION (42 U.S.C. § 1983)

### (Against all Defendants and DOES 1-100)

140.    Plaintiff hereby re-alleges and incorporates by reference the allegations set forth above in this Complaint.

141.    As provided herein, Gerry violated the equal protection clause of the Fourteenth Amendment to the United States Constitution and denied Ms. Nguyen, an Asian female of Vietnamese descent, equal protection of the laws, by selectively enforcing the Massage Ordinance against her in a discriminatory manner, to sexually assault and rape her, and extort funds from her, through use of force and threats while acting under color of law by the authority vested in him by the City, based on her membership in a vulnerable group and suspect class as an Asian female massage parlor owner and masseuse and being similarly situated to Gerry's other victims.

142.     Gerry, as the final and sole policy maker for the City's code enforcement of massage establishments, intentionally and maliciously targeted Asian female massage parlor owners or masseuses in the City, including Plaintiff, and made them victims of his despicable crimes for which there is obviously no legitimate state or municipal interest or justification, let alone any reasonable basis.

143.     The City ratified and adopted as its own policy Gerry's discriminatory enforcement of the Massage Ordinance based on the race of the massage establishment owner or workers by, *inter alia*, (1) willfully ignoring or acting deliberately indifferent to citizen complaints identifying victims of Gerry's acts as masseuses of Asian descent, and (2) vesting in him final policy-making authority as the only Code Enforcement Inspector for massage establishments without even a modicum of oversight or supervision.

144.     Gerry committed each of the described acts alleged herein willfully, maliciously, fraudulently, and with oppression in his actions, conduct, concealments, and omissions, with ill will, evil motive, and the intent of harming Ms. Nguyen and other victims, and/or with willful and conscious disregard of the rights and safety of Ms. Nguyen and other victims, entitling Plaintiff to an award of punitive or exemplary damages against Gerry.

145.     As a direct and proximate result of Gerry's acts or omissions, all committed under color of his authority as an officer of the City, and the Code Enforcement Division or Vice Unit specifically, Ms. Nguyen suffered severe and enduring emotional distress, loss of funds through extortion, lost earning capacity, and other damages as will be proven at trial, all in violation of her rights under the laws of California and the Constitution of the United States, in particular the Fourteenth Amendment.

## VIII.   THIRD CLAIM FOR RELIEF

### MUNICIPAL LIABILITY FOR UNCONSTITUTIONAL CUSTOM, POLICY, OR PRACTICE DEPRIVING PLAINTIFF OF CIVIL RIGHTS

### (Against Defendant City of San Jose and DOES 1-100)

146.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth above in this Complaint.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

147.    In doing the acts complained of herein, Defendant City, through Gerry and DOES 1-100, and each of them, acted willfully and knowingly to deprive Ms. Nguyen of, or unlawfully interfere with, her civil rights vested in her by the United States Constitution, including but not limited to, the following:

(1)    Ms. Nguyen's substantive due process right to bodily integrity and privacy, i.e. to be free of sexual assault, rape, battery and other unlawful and offensive touching, and

(2)    Ms. Nguyen's property interest in her massage parlor business and the funds that Defendants extorted from Ms. Nguyen in violation of procedural due process;

(3)    Ms. Nguyen's right to equal protection under the law as an Asian female massage parlor owner and massage therapist; and

(4)    Other rights recognized by the federal courts as emanating from the due process clause of the Fourteenth Amendment to the United States Constitution.

148.    As alleged herein, the City had full knowledge of complaints and reports made regarding Gerry's constitutional violations which targeted Asian female massage parlor owners or masseuses, and through its inaction and failure to discipline or terminate Gerry, investigate citizen complaints, or take any action to stop the discriminatory and selective enforcement of Gerry's criminal scheme against Asian females, ratified Gerry's constitutional violations and itself is the cause of the violation of Plaintiff's right to equal protection of the laws.

149.    The City adopted policies, customs, and practices which foreseeably deprived citizens, including Ms. Nguyen, of their constitutional rights guaranteed by the Fourteenth Amendment to the United States Constitution, including the right to bodily integrity and privacy, and the property interests in their businesses, livelihoods, and finances, and to equal protection of the laws.

150.    Gerry, as the sole officer of the City charged with inspecting the City's massage establishments pursuant to the Massage Ordinance promulgated by the City, had final policymaking authority regarding the code enforcement, manner of inspection, and issuance of permits or citations to the City's approximately 5,900 massage establishments and practitioners, and developed an unconstitutional policy, custom, or practice of depriving citizens, including Ms. Nguyen, of their constitutional rights to bodily integrity and privacy, and their property interests as set forth above.  The

policy was established by, *inter alia*, Gerry's elaborate scheme and *modus operandi* of targeting female Asian massage parlor owners and employees for his repeated sexual and extortive crimes.

151.    As an officer with final policymaking authority with respect to code enforcement, manner of inspection, and issuance of permits or citations to the City's approximately 5,900 massage establishments and practitioners, Gerry's and DOES 1-100's unconstitutional acts are imputed to the City, and the City is liable for the damages suffered by Ms. Nguyen and other victims caused by Gerry's constitutional violations.

152.    On information and belief, Gerry acted in concert with DOES 1-100 to commit the aforementioned constitutional deprivations, and so DOES 1-100 adopted Gerry's policy or custom of constitutional deprivations as their own, or themselves committed the constitutional deprivations pursuant to their own final policy making authority.

153.    The City and DOES 1-100 acted with deliberate indifference to the grave risk of harm and likelihood of deprivation of constitutional rights posed to Ms. Nguyen and other citizens of the City who became victims to Gerry's outrageous and criminal acts by, *inter alia*:

- Failing and/or refusing to properly investigate numerous written complaints regarding Gerry's misconduct and crimes while "inspecting" the City's massage parlors on official duty as a Code Enforcement Inspector, while acting under color of law, and failing to take appropriate action such as suspension, termination, and other discipline;

- Assigning a single male Code Enforcement Inspector to enforce zoning requirements and other City regulations aimed at curbing prostitution, human trafficking, and crimes in approximately 5,300 massage establishments throughout the City which were and are predominantly operated by Asian females conducting a significant number of transactions in cash;

- Failing to staff or recruit additional Code Enforcement Inspectors assigned to inspect City massage parlors after the passing of the Massage Ordinance, as was set forth and planned within the Massage Ordinance and attendant memoranda;

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

- Failing to properly supervise or examine Gerry's enforcement activity as a Code Enforcement Inspector when blatant inconsistencies were evident from the City's records of massage parlor inspections and code compliance history;

- Leaving vacant for more than 1.5 years the role of head of City's Code Enforcement Division after Ms. Buchanan retired from the position;

- Hiring Code Enforcement Inspectors, including Gerry, without the requirement of prior code enforcement experience or other relevant or necessary qualifications; and

- Failing to conduct a background check of Gerry both before or after his hiring or assignment, whether related to employment history, criminal history, or credit history; and

- Failing to employ even a modicum of safeguards to prevent Gerry's constitutional violations and deprivations of civil rights.

154.     At all relevant times mentioned herein, Defendant City and the City officials, including but not limited to members and employees of the PBCE, SJPD, DOES 1-100, and others, were aware that Gerry was the sole Code Enforcement Officer of the City assigned to enforce the Massage Ordinance and inspect the City's massage parlors for compliance, were aware of complaints made against Gerry, and were aware that Gerry arranged to have a number of massage parlors come into compliance that had a prior history of non-compliance, without any documented changes to correct the code violations, and were aware of other suspicious discrepancies in the records of Gerry's code enforcement activity.

155.     Ms. Nguyen's emotional pain and suffering resulting from Gerry's sexual assault, rape, and her resultant financial losses, and those sustained from Gerry's solicitation of bribes and extortions, were the reasonably foreseeable consequence of the Defendant City and DOES 1-100's deliberate indifference to adequately staffing, supervising, disciplining, or investigating, as set forth above, all in violation of the Fourteenth Amendment to the U.S. Constitution providing Ms. Nguyen with substantive due process rights that may not be infringed, and procedural safeguards under the due process clause, and in violation of the equal protection of the laws to which Plaintiff was and is entitled.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

156.    As a direct and proximate result of the City's acts or omissions set forth above, through Gerry and DOES 1-100, all committed under color of their authority as officers of the City, and the Code Enforcement Division or Vice Unit specifically, Ms. Nguyen suffered severe and enduring emotional distress, loss of funds through extortion, past and future business income, lost earning capacity, and other damages as will be proven at trial, all in violation of her rights under the laws of California and the Constitution of the United States, in particular the Fourteenth Amendment.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.    Compensatory Damages according to proof;

2.    Special Damages according to proof;

3.    General Damages according to proof, including for pain and suffering, emotional distress, hardship, shock, worry, anxiety, stigma, insomnia, illness, and trauma;

4.    Restitution of extorted funds in the amount of $34,000;

5.    As against Gerry, punitive damages according to proof;

6.    Prejudgment interest;

7.    For attorney's fees as authorized by law, including but not limited to those pursuant to 42 U.S.C. § 1988;

///
///
///
///
///
///
///
///
///
///
///

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

8. Injunctive Relief, requiring the City to institute policies to prevent future sexual crimes and extortion by its employees and officials acting under color of law, against the citizens of San Jose; and

9. Any other relief as the Court deems appropriate.

Dated: January 6, 2021

MURPHY, PEARSON, BRADLEY & FEENEY

By _/s/ Philip J. Kearney_____
Philip J. Kearney
Christopher R. Ulrich
Kevin D. Cardona
Attorneys for Plaintiff DAI TRANG THI NGUYEN

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1

## **DEMAND FOR JURY TRIAL**

2          Pursuant to Fed. R. Civ. P. 38(b) and Local Rule 3-6, Plaintiff DAI TRANG THI NGUYEN

3    hereby demands a trial by jury as to all claims for relief stated herein.

4

5    Dated: January 6, 2021

6                                                     MURPHY, PEARSON, BRADLEY & FEENEY

7

8                                          By    _/s/ Philip J. Kearney_____
                                                  Philip J. Kearney
9                                                 Christopher R. Ulrich
                                                  Kevin D. Cardona
10                                                Attorneys for Plaintiff DAI TRANG THI NGUYEN

11

12

13   KDC.3872185.docx

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 37 -

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

# EXHIBIT 1

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SANTA CLARA
HALL OF JUSTICE
COMPLAINT FOR ARREST WARRANT(S)
WILLIAM ROBERT GERRY EGB263

THE PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiff,

vs.

WILLIAM ROBERT GERRY (12/22/1974),
7300 RIVER PARK DRIVE MCKINNEY TX 75071

Defendant(s).

FELONY COMPLAINT

DA NO: 200918037
CEN
EGB263 WRG WARR

Filed
September 29, 2020
Clerk of the Court
Superior Court of CA
County of Santa Clara
C2012699
By: PKotsubo

The undersigned is informed and believes that:

**COUNT 1**

On or about and between January 1, 2019 and April 30, 2019, in the County of Santa Clara, State of California, the crime of ORAL COPULATION BY FORCE, VIOLENCE, DURESS, MENACE, OR FEAR, in violation of PENAL CODE SECTION 287(c)(2)(A), a Felony, was committed by WILLIAM ROBERT GERRY who did accomplish an act of oral copulation against the will of the victim, Jane Doe, by means of force, violence, duress, menace and fear of immediate and unlawful bodily injury.

It is further alleged that the defendant(s) is/are not eligible for probation or suspension of sentence within the meaning of Penal Code section 1203.065(a).

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

# PROTECTIVE ORDER

# PC 1048 PRIORITY

**COUNT 2**

On or about and between January 1, 2019 and April 30, 2019, in the County of Santa Clara, State of California, the crime of ORAL COPULATION BY FORCE, VIOLENCE, DURESS, MENACE, OR FEAR, in violation of PENAL CODE SECTION 287(c)(2)(A), a Felony, was committed by WILLIAM ROBERT GERRY who did accomplish an act of oral copulation against the will of the victim, Jane Doe, by means of force, violence, duress, menace and fear of immediate and unlawful bodily injury.

It is further alleged that the defendant(s) is/are not eligible for probation or suspension of sentence within the meaning of Penal Code section 1203.065(a).

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

**COUNT 3**

On or about and between January 1, 2019 and April 30, 2019, in the County of Santa Clara, State of California, the crime of ORAL COPULATION BY FORCE, VIOLENCE, DURESS, MENACE, OR FEAR, in violation of PENAL CODE SECTION 287(c)(2)(A), a Felony, was committed by WILLIAM ROBERT GERRY who did accomplish an act of oral copulation against the will of the victim, Jane Doe, by means of force, violence, duress, menace and fear of immediate and unlawful bodily injury.

It is further alleged that the defendant(s) is/are not eligible for probation or suspension of sentence within the meaning of Penal Code section 1203.065(a).

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

**COUNT 4**

On or about and between January 1, 2019 and April 30, 2019, in the County of Santa Clara, State of California, the crime of RAPE BY FORCE, VIOLENCE, DURESS, MENACE OR FEAR, in violation of PENAL CODE SECTION 261(a)(2), a Felony, was committed by WILLIAM ROBERT GERRY who did accomplish an act of sexual intercourse with Jane Doe, a person not the spouse of the defendant, against the person's will by means of force, violence, duress, menace, and fear of immediate and unlawful bodily injury.

It is further alleged that the defendant(s) is/are not eligible for probation and the suspension of sentence, within the meaning of Penal Code section 1203.065(a).

A conviction of the offense charged in this count requires the defendant to register pursuant to Penal Code section 290.

### COUNT 5

On or about and between January 1, 2019 and April 30, 2019, in the County of Santa Clara, State of California, the crime of EXTORTION OF PROPERTY UNDER COLOR OF OFFICIAL RIGHT, in violation of PENAL CODE SECTION 518(a), a Felony, was committed by WILLIAM ROBERT GERRY who did obtain money from another, Jane Doe, with his or her consent, under color of official right.

### COUNT 6

On or about and between January 1, 2019 and April 30, 2019, in the County of Santa Clara, State of California, the crime of EXTORTION OF PROPERTY UNDER COLOR OF OFFICIAL RIGHT, in violation of PENAL CODE SECTION 518(a), a Felony, was committed by WILLIAM ROBERT GERRY who did obtain oral copulation from another, Jane Doe, with his or her consent, under color of official right.

### COUNT 7

On or about and between January 1, 2019 and April 30, 2019, in the County of Santa Clara, State of California, the crime of EXTORTION OF PROPERTY UNDER COLOR OF OFFICIAL RIGHT, in violation of PENAL CODE SECTION 518(a), a Felony, was committed by WILLIAM ROBERT GERRY who did obtain oral copulation from another, Jane Doe, with his or her consent, under color of official right.

### COUNT 8

On or about and between January 1, 2019 and April 30, 2019, in the County of Santa Clara, State of California, the crime of EXTORTION OF PROPERTY UNDER COLOR OF OFFICIAL RIGHT, in violation of PENAL CODE SECTION 518(a), a Felony, was committed by WILLIAM ROBERT GERRY who did obtain oral copulation from another, Jane Doe, with his or her consent, under color of official right.

**COUNT 9**

On or about and between January 1, 2019 and April 30, 2019, in the County of Santa Clara, State of California, the crime of EXTORTION OF PROPERTY UNDER COLOR OF OFFICIAL RIGHT, in violation of PENAL CODE SECTION 518(a), a Felony, was committed by WILLIAM ROBERT GERRY who did obtain sexual intercourse from another, Jane Doe, with his or her consent, under color of official right.

**COUNT 10**

On or about and between August 27, 2018 and August 28, 2018, in the County of Santa Clara, State of California, the crime of EXTORTION OF PROPERTY UNDER COLOR OF OFFICIAL RIGHT, in violation of PENAL CODE SECTION 518(a), a Felony, was committed by WILLIAM ROBERT GERRY who did obtain money from another, MingQiang Fang, with his or her consent, under color of official right.

**COUNT 11**

On or about and between August 29, 2018 and January 31, 2019, in the County of Santa Clara, State of California, the crime of EXTORTION OF PROPERTY UNDER COLOR OF OFFICIAL RIGHT, in violation of PENAL CODE SECTION 518(a), a Felony, was committed by WILLIAM ROBERT GERRY who did obtain money from another, MingQiang Fang, with his or her consent, under color of official right.

**COUNT 12**

On or about and between August 27, 2018 and August 28, 2018, in the County of Santa Clara, State of California, the crime of ASKING OR RECEIVING BRIBE BY OFFICER, GOVERNMENT EMPLOYEE OR APPOINTEE, in violation of PENAL CODE SECTION 68(a), a Felony, was committed by WILLIAM ROBERT GERRY who did ask, receive, and agree to receive a bribe from MingQiang Fang, the defendant being a(n) executive officer of the City of San Jose State of California, upon an agreement and understanding that the vote, opinion and action of the defendant upon any matter then pending and which might be brought before the defendant in his/her official capacity, should be influenced thereby.

**COUNT 13**

On or about and between August 29, 2018 and January 31, 2019, in the County of Santa Clara, State of California, the crime of ASKING OR RECEIVING BRIBE BY OFFICER, GOVERNMENT EMPLOYEE OR APPOINTEE, in violation of PENAL CODE SECTION 68(a), a Felony, was committed by WILLIAM ROBERT GERRY who did ask, receive, and agree to receive a bribe from MingQiang Fang, the defendant being a(n) executive officer of the City of San Jose State of California, upon an agreement and understanding that the vote, opinion and action of the defendant upon any matter then pending and which might be brought before the defendant in his/her official capacity, should be influenced thereby.

**COUNT 14**

On or about and between March 1, 2019 and March 31, 2019, in the County of Santa Clara, State of California, the crime of ASKING OR RECEIVING BRIBE BY OFFICER, GOVERNMENT EMPLOYEE OR APPOINTEE, in violation of PENAL CODE SECTION 68(a), a Felony, was committed by WILLIAM ROBERT GERRY who did ask, receive, and agree to receive a bribe from Zuolun Zhang, the defendant being a(n) executive officer of the City of San Jose State of California, upon an agreement and understanding that the vote, opinion and action of the defendant upon any matter then pending and which might be brought before the defendant in his/her official capacity, should be influenced thereby.

**REQUEST FOR TRIAL PRIORITY PURSUANT TO PENAL CODE § 1048**

The case charged above falls within the provisions of Penal Code section 1048, and the People therefore respectfully request that the case be given the trial priority provided by that section.

Any defendant, including a juvenile, who is convicted of and pleads guilty and no contest to any felony offense, including any attempt to commit the offense, charged in this complaint or information is required to provide buccal swab samples, right thumbprints and a full palm print impression of each hand, and any blood specimens or other biological samples required pursuant to the DNA and Forensic Identification Database and Data Bank Act of 1998 and Penal Code section 296, et seq.

# EXHIBIT 2

# CITY OF SAN JOSE – COMPLIANCE ORDER
## Department of Planning, Building and Code Enforcement
### 200 E. Santa Clara Street, San Jose, CA  95113

Page 1 of 5

| | |
|---|---|
| Owner: | PHAM SOPHIA L ET AL |
| Mailing Address: | 2445 GLEN FOX CT |
| | SAN JOSE, CA 95148-4112 |
| Occupant: | SOFT TOUCH SPA |
| | 1692 TULLY ROAD, #12 |
| | SAN JOSE, CA 95122 |
| Case No: | 201821681 |
| Permit No: | N/A |
| Violation Address: | 1692 TULLY ROAD, #12 |
| Inspection Date: | DECEMBER 19, 2018 |
| **Compliance Date:** | **SEE PAGE #3** |

AN INSPECTION OF THE PROPERTY FOR WHICH YOU ARE RESPONSIBLE HAS IDENTIFIED THE FOLLOWING VIOLATIONS OF THE SAN JOSE MUNICIPAL CODE:

| Code Section | Violations and Corrections Required | Compliance Confirmed |
|---|---|---|
| 6.44.120 | **Massage Business permit required** | |
| | It shall be unlawful for a person to maintain, manage, operate, conduct, control or own a massage business or off-premises massage business unless the business is maintained and operated in strict compliance with a valid business permit issued by the chief of police. A separate business permit is required for each location if a person maintains, manages, operates, conducts, controls or owns multiple massage businesses at different locations. | |
| 6.44.130 | **Massage ownership/management license required.** | |
| | A. It shall be unlawful for any person to work as a manager or have any ownership interest in a massage business or off-premises massage business without having first obtained an ownership/management license from the chief of police. | |
| | B. It shall be unlawful for any massage business to provide massage in exchange for money or any other thing of value, or for checks, credit, or any other representation of value, unless all individuals employed by the massage business to perform massage, whether as an employee, independent contractor, sole proprietorship, or otherwise, are certified massage therapists. | |
| | C. A separate ownership/management license is required for each location if a person owns, manages, or operates multiple massage businesses at different locations. | |
| 6.44.200 | **Operating Regulations and Permit Conditions** | |
| | A. The provisions of this part shall constitute business permit terms and conditions applicable to each business permit issued by the chief of police. | |
| | B. In addition, the provisions of this part shall constitute operating regulations. It shall be unlawful for any person to violate these provisions. | |

---

### *WARNING*
**FAILURE TO CORRECT ALL VIOLATIONS LISTED IN THIS ORDER, BEFORE THE COMPLIANCE DATE ABOVE, MAY RESULT IN ADMINISTRATIVE PENALTIES UP TO $2,500 PER DAY FOR EACH VIOLATION UNTIL COMPLIANCE IS ACHIEVED AS WELL AS THE ASSESSMENT OF ALL ADMINISTRATIVE COSTS. THIS ACTION IS IN ADDITION TO ALL OTHER LEGAL REMEDIES, CRIMINAL OR CIVIL, WHICH MAY BE PURSUED BY THE CITY IN RESPONSE TO ANY VIOLATION.**

---

# CITY OF SAN JOSE – COMPLIANCE ORDER
### Department of Planning, Building and Code Enforcement
### 200 E. Santa Clara Street, San Jose, CA  95113

Page 2 of 5

**VIOLATIONS**

1.  Soft Touch Spa is operating without the required Massage Business Permit and Massage
    Owner/Management License as well as the following terms and conditions;

    A.  It shall be unlawful for any person to work as a manager or have any ownership interest in a
        massage business or off-premises massage business without having first obtained an
        ownership/management license from the chief of police.

    B.  A separate ownership/management license is required for each location if a person owns,
        manages, or operates multiple massage businesses at different locations.

    C.  No records of massage services.

    D.  No I.D. on massage therapists.

---

### *WARNING*
**FAILURE TO CORRECT ALL VIOLATIONS LISTED IN THIS ORDER, BEFORE THE COMPLIANCE DATE ABOVE,
MAY RESULT IN ADMINISTRATIVE PENALTIES UP TO $2,500 PER DAY FOR EACH VIOLATION UNTIL
COMPLIANCE IS ACHIEVED AS WELL AS THE ASSESSMENT OF ALL ADMINISTRATIVE COSTS. THIS ACTION
IS IN ADDITION TO ALL OTHER LEGAL REMEDIES, CRIMINAL OR CIVIL, WHICH MAY BE PURSUED BY THE
CITY IN RESPONSE TO ANY VIOLATION.**

## CITY OF SAN JOSE – COMPLIANCE ORDER
### Department of Planning, Building and Code Enforcement
### 200 E. Santa Clara Street, San Jose, CA  95113

Page 3 of 5

### CORRECTIONS REQUIRED

1.    **You are hereby required to:**

- **Immediately** cease all massage operations at the business establishment known as Soft Touch Spa until permitted by the City of San Jose Police Department under Chapter 6.44 of the San Jose Municipal Code.

**In order to resume massage operations, you must:**

- Complete the Application Packet for Massage Permits (Business, Owner/Co-Owner, Manager).  You can find the application at https://www.sjpd.org/PDF_Forms/Massage_Application201609.pdf.

- Contact William Santillana, San Jose Police Permits Unit at (408) 277-4452 and/or William.Santillana@sanjoseca.gov to submit the completed Application Packet for Massage Permits (Business, Owner/Co-Owner, Manager), all required information for verification, and pay all fees for the required Massage Business Permit and Massage Owner/Management Permit.

- Obtain a Massage Business Permit as well as a Massage Owner/Management Permit issued by the City of San Jose Police Department **AND** comply with all terms and conditions of Chapter 6.44 of the San Jose Municipal Code.

    *Additional property and permit information may be found on the City's website at www.sjpermits.org/permits/ or by calling (408) 535-3555.*

---

### *WARNING*
**FAILURE TO CORRECT ALL VIOLATIONS LISTED IN THIS ORDER, BEFORE THE COMPLIANCE DATE ABOVE, MAY RESULT IN ADMINISTRATIVE PENALTIES UP TO $2,500 PER DAY FOR EACH VIOLATION UNTIL COMPLIANCE IS ACHIEVED AS WELL AS THE ASSESSMENT OF ALL ADMINISTRATIVE COSTS.  THIS ACTION IS IN ADDITION TO ALL OTHER LEGAL REMEDIES, CRIMINAL OR CIVIL, WHICH MAY BE PURSUED BY THE CITY IN RESPONSE TO ANY VIOLATION.**

# CITY OF SAN JOSE – COMPLIANCE ORDER
## Department of Planning, Building and Code Enforcement
### 200 E. Santa Clara Street, San Jose, CA  95113

Page 4 of 5

- *Additional property and permit information may be found on the City's website at www.sjpermits.org/permits/ or by calling our information hotline at (408) 535-3555.*

**NOTE:** PERMITS FROM THE BUILDING DIVISION ARE REQUIRED FOR STRUCTURAL, PLUMBING, MECHANICAL AND ELECTRICAL WORK.  WORK DONE WITHOUT THE REQUIRED PERMITS IS A MISDEMEANOR AND WILL NOT QUALIFY AS COMPLIANCE.

If compliance has not been achieved by the date as reflected in this compliance order, the City of San Jose will assess a re-inspection fee of $203.00 for each re-inspection.

December 20, 2018                  William Gerry  105E                                    (408) 535-6893
Date of Notice                       Code Enforcement Inspector                         Phone #

---

## *WARNING*
**FAILURE TO CORRECT ALL VIOLATIONS LISTED IN THIS ORDER, BEFORE THE COMPLIANCE DATE ABOVE, MAY RESULT IN ADMINISTRATIVE PENALTIES UP TO $2,500 PER DAY FOR EACH VIOLATION UNTIL COMPLIANCE IS ACHIEVED AS WELL AS THE ASSESSMENT OF ALL ADMINISTRATIVE COSTS. THIS ACTION IS IN ADDITION TO ALL OTHER LEGAL REMEDIES, CRIMINAL OR CIVIL, WHICH MAY BE PURSUED BY THE CITY IN RESPONSE TO ANY VIOLATION.**

# CITY OF SAN JOSE – COMPLIANCE ORDER
### Department of Planning, Building and Code Enforcement
### 200 E. Santa Clara Street, San Jose, CA 95113

Page 5 of 5

The Department of Planning, Building and Code Enforcement (Code Enforcement) has issued a Compliance Order (Compliance Order) alleging that the subject property is in violation with the San Jose Municipal Code. Failure to correct all violations listed in the order, before the compliance date may result in administrative penalties up to $2,500 per day for each violation until compliance is achieved as well as the assessment of all administrative costs. This action is in addition to all other legal remedies, criminal or civil, which may be pursued by the city in response to any violation.

If you believe that your property is not in violation with the San Jose Municipal Code and you dispute the basis for Compliance Order, you MUST file a request for a Director's hearing within fourteen (14) calendar days of the date of the Compliance Order was mailed or personally delivered to the responsible person(s).

Your request for hearing must be mailed or personally delivered to:

City of San Jose
Code Enforcement Division
200 East Santa Clara Street 4th flr.
San Jose Ca, 95113-1905

Your request for an appeal must be received by the City within the timeline above. If you do not file a request for hearing, the Compliance Order will become final. If a timely appeal is filed, then a hearing will be scheduled. You will receive at least seven (7) days notice that a hearing on your appeal will take place.

The Director's hearing is informal and provides you with an opportunity to present your evidence and testimony in dispute of the Compliance Order. After the close of the hearing, the Director will make a decision. The written decision will be mailed to the person subject to the Compliance Order. If you dispute the Director's decision, you may appeal to the San Jose Appeals Hearing Board within ten (10) days of the date of the written decision of the Director. That Board is described at:
        http://www.sanjoseca.gov/index.aspx?NID=341

Your rights when a Compliance Order is issued are contained in the San Jose Municipal Code Section 1.14.030 and the following sections. It is available on line at www.sanjoseca.gov by clicking on the link at the right of the page, "Municipal Code."

---

## *WARNING*
**FAILURE TO CORRECT ALL VIOLATIONS LISTED IN THIS ORDER, BEFORE THE COMPLIANCE DATE ABOVE, MAY RESULT IN ADMINISTRATIVE PENALTIES UP TO $2,500 PER DAY FOR EACH VIOLATION UNTIL COMPLIANCE IS ACHIEVED AS WELL AS THE ASSESSMENT OF ALL ADMINISTRATIVE COSTS. THIS ACTION IS IN ADDITION TO ALL OTHER LEGAL REMEDIES, CRIMINAL OR CIVIL, WHICH MAY BE PURSUED BY THE CITY IN RESPONSE TO ANY VIOLATION.**

# EXHIBIT 3



**SAN JOSE POLICE DEPARTMENT**
PERMITS UNIT
(408) 277-4452
www.sjpd.org



# APPLICATION PACKET

# FOR

# MASSAGE PERMITS

## (BUSINESS, OWNER / C0-OWNER, MANAGER)

**SAN JOSE POLICE DEPARTMENT**
**PERMITS UNIT**
201 West Mission Street
San Jose, CA  95110

1-16-19    $ 200.
          / ,

2 - . - 19

3  1 - /9   / /

# EXHIBIT 4

1   JEFFREY F. ROSEN,
    DISTRICT ATTORNEY, 163589
2   OANH TRAN,
    SUPERVISING DEPUTY DISTRICT ATTORNEY, 251062
'3  COUNTY GOVERNMENT CENTER, WEST WING
    70 West Hedding Street
4   San Jose, California  95110
    Telephone: (408) 808-3784
5
    Attorneys for The People
6

**FILED**

SEP 3 0 2020

Clerk of the Court
Superior Court of CA County of Santa Clara
BY_____
                    DEPUTY

7

8              SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

9

10  PEOPLE OF THE STATE OF CALIFORNIA,            C2012699

11

12                          Plaintiff,          BOOKING NO. _____

13                                              PFN:

14              vs.                             MOTION TO EXAMINE SOURCE OF
                                                BAIL [P.C. §1275]
15
    WILLIAM ROBERT GERRY
16  PFN:
                          Defendant.
17  _____

18

19  TO:   THE DEFENDANT IN THE ABOVE-ENTITLED CAUSE, HIS ATTORNEY OF

20        RECORD, AND THE CLERK OF THE ABOVE-ENTITLED COURT:

21

22        PLEASE TAKE NOTICE that the People request the Court to issue an order that if bail is

23  proffered on behalf of the above-named Defendant, bail shall not be accepted until a hearing has

24  been conducted to determine whether any portion of the proffered bail was feloniously obtained,

25

1  and whether any portion of the proffered bail is consistent with the intent of the Court to assure that

2  the Defendant make future court appearances.

3       This motion will be based on the Memorandum of Points and Authorities included herein, the

4  declaration for examination of source of bail filed herewith, and any documents and other evidence

5  (oral or written) to be presented at said hearing.

6

7  DATED:  September 28, 2020

8

9

10

11  _____

12  Oanh Tran
   Supervising Deputy District Attorney

13

14

15

16

17

18

19

20

21

22

23

1   JEFFREY F. ROSEN,
    DISTRICT ATTORNEY, 163589
2   OANH TRAN,
    SUPERVISING DEPUTY DISTRICT ATTORNEY, 251062
3   COUNTY GOVERNMENT CENTER, WEST WING
    70 West Hedding Street
4   San Jose, California  95110
    Telephone: (408) 808-3784
5
    Attorneys for The People
6

**F I L E D**

SEP 3 0 2020

Clerk of the Court
Superior Court of CA County of Santa Clara
BY_____DEPUTY

7            SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

8                                                    C2012699

    PEOPLE OF THE STATE OF CALIFORNIA,
9
                                Plaintiff,        BOOKING NOs. _____
10                                                PFN:
11
12              vs.
                                                  **DECLARATION IN SUPPORT OF NO**
                                                  **BAIL REQUEST [P.C. §1269]**
13                                                **AND**
                                                  **MOTION TO EXAMINE SOURCE OF**
14                                                **BAIL [P.C. §1275]**

15  WILLIAM ROBERT GERRY
    PFN:
16
17
18                          Defendant.
                                        /
19
20      1.  I, Benjamin Lam, declare as follows, I am currently employed as a Detective with the San

21          Jose Police Department, assigned to the Sexual Assaults Investigation Unit (SJPD).

22      2.  I attended the Peace Officer Standards and Training San Jose Police Academy at the San

23          Jose Police Department in the city of San Jose, California.  I have attended numerous

            classes regarding the investigation of various crimes and criminal procedure including but
24
            not limited to SJPD.  As part of my job as a patrol officer, some of my tasks include but
25

1    are not limited to reviewing sexual assault police reports, searching, locating and

2    processing crime scenes for evidence, conducting records checks, interviewing victims

3    and witnesses, arresting suspects, searching suspects person and property for evidence,

4    and interviewing suspects.

5        I have investigated crimes and made numerous arrests including those for narcotics

6    violations, assault, assault with a deadly weapon, auto theft, burglary, illegal possession

7    of firearms and/or deadly weapons, robbery, domestic violence and sexual assault.  I am

8    familiar with the manner in which suspects commit crimes, escape after committing their

9    crimes and their attempts to conceal evidence relating to crimes. Additionally, I have

10   conferred with more experienced officers and detectives regarding sexual assault

11   investigations about laws and rules of search and seizure.

12       Throughout my career, I have participated in several investigations at various stages

13   including preliminary reporting, follow-up investigation, seeking of criminal complaints,

14   interviewing and arresting suspects.  As a Detective in the Sexual Assaults Investigation

15   Unit (SAIU) I have been the primary investigator or have assisted other detectives in

16   more than 100 sexual assault investigations.

17   3.   In my current assignment, I have been involved in an investigation under SJPD case #20-

18        198-0163 in which Defendant William Robert Gerry, a former city of San Jose Code

19        Enforcement Inspector, was alleged to commit rape, forcible oral copulation, and

20        extortion against four victims while he was on duty.  He is currently charged with

21        violation of Penal Code sections "("PC") for one count of  PC 261(a)(2) [Forcible Rape];

22        three counts of PC 287(c)(2)(A) [Forcible Oral Copulation]; seven counts of 518

23        [Extortion], and three counts of PC 68(a) [Asking for a Bribe by a Public Official].

24   4.   During my investigation, I determined that in 2019, Defendant William Robert Gerry

25        committed forcible rape and forcible oral copulation on Victim #1 ((V) Dai) on 5

1   different occasions and extorted $34,000 in cash from her between **January 2019 to**

2   **March 2019.** Specifically, Defendant threatened to shut Victim #1's business down if

3   she did not pay him a specified amount of cash. He told her the terms of the cash

4   payments and on the days when he visited her to collect the cash, he also made Victim #1

5   orally copulate him. On the last occasion when he came to collect the cash payment, he

6   had her have sexual intercourse and digitally penetrated her.

5.   At some point in 2019, Defendant sexually assaulted Victim #2 ((V) Xianli) one time.

8   However, Victim #2 did not want to go into detail because she said it was too painful and

9   she does not want to think about it.

6.   Defendant extorted $10,000 in cash from Victim #3 ((V) Zuolun) in the beginning of

11   2019.

7.   Between **August 2018 and January 2019,** Defendant extorted $19,000 in cash from the

13   Victim #4 ((V) MingQiang).

8.   Defendant extorted a total of **$63,000** in cash from the victims.

9.   Defendant's last paycheck from the city of San Jose was April 15, 2019. His last day at

16   work in San Jose was March 29, 2019.

10.   Defendant's first paycheck from Texas was dated April 18, 2019 and was for $844.10

18   only.

11.   Defendant used his position of authority and power as a San Jose City Code Enforcement

20   Inspector to facilitate and commit the above crimes. Specifically, he would tell each

21   victim to pay him cash if they did not want their business to be shut down. Defendant

22   became the designated enforcement inspector for massage parlors in the summer of 2017.

23   Shortly after that, he began extorting money from massage parlor owners. The

24   businesses he targeted were Asian-owned massage therapy offices. He was well-known

25   in the community of Asian-owned massage parlors. As such, I believe there are more

1    victims who have yet to come forward.

2    12. A search warrant on Defendant's and his wife's JP Morgan Chase bank accounts

3    confirmed a total of over approximately **$140,000** in cash deposits between **March of**

4    **2019 and May of 2019.** The amount of the cash deposits varied from approximately

5    $3,000 to $8,000. This transaction coincides with Defendant's last day working with the

6    city of San Jose and moving to Texas to start his new job.

7    13. Therefore, I believe that part of the approximate $140,000 CASH deposits are a result of

8    extortion, known and unknown, based on the amount of cash and timeframe.

9    14. Based on my training and experience, I believe Defendant intentionally structured the

10   deposit amounts to be under the Currency Transaction Report (CTR) limit of $10,000 to

11   avoid being red flagged by JP Morgan Chase bank.

12   15. Based on the number of victims and the span of time Defendant committed these

13   offenses, and the fact that he is doing a similar job in Texas, I am concerned that

14   Defendant is continuing his criminal extortion of money and sex acts in his new

15   positions.

16   16. I also believe that Defendant is a serious flight risk based on the significance of the

17   charges involved in this investigation and because he has the monetary means to flee.

18   17. Based on the large amount of cash deposited into Defendant's and his wife's bank

19   accounts and based on my training and experience, I believe more victims will come

20   forward when the investigation is made known to the public.

21   18. Additionally, Defendant is currently working for Sachse city in Texas where he is

22   employed in a similar position to Code Enforcement Inspector. I believe he poses a

23   significant risk to the community in Sachse city, based on the crimes he has committed in

24   San Jose.

25   19. I request that bail be set to NO BAIL for Defendant.

20. In the alternative, if the Court is inclined to set bail for this case, I believe that any and all money that may be paid as a premium for a bail bond or pledged as security for a bail bond, may be moneys or assets acquired through extortion based on the facts of this investigation. Therefore, I request that a motion be granted to examine the source of any proffered bail.

21. The scheduled bail for the charges is $550,000.

California Penal Code Section 1275(a) states: "In setting, reducing, or denying bail, a judge or magistrate shall take into consideration the protection of the public, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at trial or at a hearing of the case. The public safety shall be the primary consideration."

Further, Penal Code 1269c allows a magistrate to set bail above the schedule amount if "a peace officer has reasonable cause to believe that the amount of bail set forth in the schedule of bail for that offense is insufficient to ensure the defendant's appearance or to ensure the protection of a victim, or family member of a victim, of domestic violence, the peace officer shall prepare a declaration under penalty of perjury setting forth the facts and circumstances in support of his or her belief and file it with a magistrate."

California Constitution Article I, Sec. 12. "A person shall be released on bail by sufficient sureties, except for:

(a) Capital crimes when the facts are evident or the presumption great;

(b) Felony offenses involving acts of violence on another person, **or felony sexual assault offenses on another person**, when the facts are evident or the presumption great and the court finds based upon clear and convincing evidence that there is a substantial likelihood the person's release would result in great bodily harm to others; or

1  (c) Felony offenses when the facts are evident or the presumption great and the court finds

2  based on clear and convincing evidence that the person has threatened another with great bodily

3  harm and that there is a substantial likelihood that the person would carry out the threat if released.

4  In fixing the amount of bail, the court shall take into consideration the seriousness of the

5  offense charged, the previous criminal record of the defendant, and the probability of his or her

6  appearing at the trial or hearing of the case.

7  I declare under penalty of perjury and on information and belief that the foregoing is true

8  and correct and that this declaration was executed on September 28, 2020, in San Jose, California.

9

10

11

12

**09/28/2020**

13

14

(Date)

Electronically signed by Detective Benjamin Lam # 4420
Sexual Assault Investigation Unit
San Jose Police Department
4420@sanjoseca.gov

(Signature)

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 5

COUNCIL AGENDA:   12/8/15
ITEM:   8.1

# CITY OF SAN JOSE
CAPITAL OF SILICON VALLEY

# *Memorandum*

**TO:** HONORABLE MAYOR
AND CITY COUNCIL

**FROM:** Larry Esquivel

**SUBJECT: MASSAGE ORDINANCE
AMENDMENTS**

**DATE:** November 23, 2015

Approved   D. DSyL                   Date   11/25/15

## RECOMMENDATION

Approve an ordinance of the City of San José amending Chapter 6.44 of the San José Municipal Code to add a purpose section, add additional and clarifying definitions, require all massage therapists to be certified by the California Massage Therapy Council, require massage businesses to provide the Police Chief with copies of massage therapist certificates, require mandatory reporting to the Police Chief and to make other technical and required revisions to be consistent with State law.

## OUTCOME

Approval of the proposed ordinance would strengthen the City's ability to take enforcement action against massage therapy establishments when prostitution or human trafficking is discovered.

## BACKGROUND

The City's current Massage Ordinance is codified in San José Municipal Code ("Code") Chapter 6.44.  The Massage Ordinance requires each massage business, owner and manager, and massage therapist to obtain a license from the Chief of Police.  The ordinance also sets forth minimum health and safety requirements and operating rules and regulations.  For example, massage businesses are only allowed to be open from 7:00 a.m. to 10:00 p.m., prohibited from possessing or consuming drugs and alcohol on the premises, and must comply with minimum clothing and sanitary condition requirements.

In 2008, State law (Senate Bill 731) was enacted prohibiting cities and counties from imposing ordinances, regulations, rules, requirements, or restrictions on California Massage Therapy Council ("CAMTC") certified individuals or businesses that use only CAMTC certified professionals to provide massage for compensation, unless those regulations are also uniformly applied to other businesses that provide professional services (i.e., law offices and accounting

HONORABLE MAYOR AND CITY COUNCIL
November 23, 2015
Subject:  **Massage Ordinance Amendments**
Page 2

businesses).  Massage businesses had to be treated similar to other professional service
businesses.  As a result, Senate Bill 731 severely limited the City's ability to enforce its Massage
Ordinance.

On September 18, 2014, Governor Jerry Brown signed Assembly Bill 1147, the Massage
Therapy Act, into law.  The new law went into effect on January 1, 2015.  Under Assembly Bill
1147, as of January 1, 2015, cities and counties are once again free to regulate massage
businesses with in their jurisdiction, as long as the regulations do not violate the provisions of
California Business and Professions Code Sections 460 and 4600-4621, and California
Government Code Section 51034.

On June 23, 2015, during its Priority Setting Session, the City Council voted that the
modification of the City's Massage Ordinance to prevent prostitution and human trafficking was
a top priority needing to be addressed.  Specifically, the Council directed staff to bring forward,
for Council consideration, amendments to the City's Massage Ordinance to strengthen the City's
ability to take enforcement action against massage therapy establishments where prostitution and
human trafficking was occurring.

Since the direction from Council, the Police Department and the City Attorney's office have
worked hand-in-hand to abate prostitution and human trafficking at massage therapy businesses
in the City.  In fact, many establishments have closed their doors following enforcement action
by the Police Department (including the issuance of administrative citations and criminal
citations following site inspections and/or undercover operations).  For those establishments that
simply refused to comply with the law, the City Attorney's Office sent warning letters to the
property and/or business owners advising them that if they continued to ignore the law, the City
Attorney's Office would file a civil nuisance/unfair business practices action and/or a red light
abatement action against them in Superior Court.  Following receipt of these letters, property
and/or business owners typically hired an attorney and abated the activity.

The Police Department also provided the current City's Massage Ordinance to the CAMTC for
review and feedback on what, if any, changes would be helpful to the City's enforcement
actions.  The CAMTC reviewed the City's Massage Ordinance and recommended the City's
Massage Ordinance be amended to do the following:

- Update the definitions and qualifications of a "School of Massage;"
- Require all massage therapist certifications be conducted through the CAMTC;
- No longer require separate rooms for couples' massages;
- Require exterior doors of a massage business must remain unlocked unless the therapist is the
  sole owner, or has one other employee;
- Remove the City requirement that a massage therapist provide proof of a medical exam in
  order to receive a massage therapy permit to be consistent with State law;
- Require that any owner or manager of a massage business be licensed by the police
  department; and

HONORABLE MAYOR AND CITY COUNCIL
November 23, 2015
**Subject:  Massage Ordinance Amendments**
Page 3

- Prohibit suggestive advertising such as nudity or individuals who are dressed in a manner that suggests any services other than massage.

## ANALYSIS

After reviewing the recommendations from the CAMTC and taking into consideration Council's direction, staff believes that a number of the changes recommended by the CAMTC to the City's Massage Ordinance would help the City enforce against and prevent prostitution and human trafficking.  As a result, the proposed ordinance adds a new purpose section to clearly articulate concerns with illegal activities at massage therapy businesses.  The proposed ordinance also adds additional clarifying definitions; requires all massage therapists to be licensed by CAMTC (which, in turn, requires a minimum of 500 hours of education or 250 hours with passage of an exam); requires each massage therapy business to provide the Chief of Police with copies of CAMTC certificates for every person who is employed or retained by them to provide massage therapy services; and requires any change in location or name of a massage therapy business to be approved by the Chief of Police.  The proposed ordinance also requires mandatory reporting of any arrest or violation of the Municipal Code, state or federal law to the Chief of Police.

For each massage therapy business, the Police Department will require each business to obtain a business permit from the Chief of Police and all owners and managers to be licensed by the Chief of Police.  Additionally, all massage therapists must be certified by CAMTC under the proposed ordinance.  If any massage therapy business is found to violate the Massage Ordinance, in additional to all other civil and criminal remedies, the City may suspend or revoke the business permit or owner/manager license under Chapter 6.02 of the Code.

It should be noted that massage therapy-based businesses in the City (and throughout the State) have generally been unregulated by the City from 2008 to 2015 because of Senate Bill 731.  The Police Department believes there are approximately 300 massage therapy businesses within the City, yet only one massage therapy business has obtained a Business Permit from the Chief of Police this year.  If the proposed changes are approved by the Council, the Police Department will send letters to these establishments notifying them of the new requirements.  In addition, the Police Department will work with the City Manager's Office to hold an outreach meeting to educate all known massage therapy businesses in the City on the new requirements.  At this time, the updated Massage Ordinance will be administered and enforced within the existing resources of the Police Department's Permit Unit.  The department will monitor workload related to the new ordinance and will return to Council as part of the future budget development process to recommend any resource adjustments, if appropriate.

HONORABLE MAYOR AND CITY COUNCIL
November 23, 2015
**Subject:  Massage Ordinance Amendments**
Page 4

## EVALUATION AND FOLLOW-UP

Should the Council approve the proposed ordinance, the Department will provide annual updates to the Public Safety, Finance and Strategic Support Committee and the Council beginning one year after implementation of the amended Massage Ordinance.

## POLICY ALTERNATIVES

*Alternative #1:  Not approve the amendments being proposed to the Massage Ordinance.*
**Pros:** There are no benefits to not approving the recommended changes to the Massage Ordinance.
**Cons:** If the proposed ordinance is not approved, "rogue" massage therapy businesses will continue to operate unregulated by and within the City.
**Reason for not recommending:**  The Council directed the Administration to bring forward amendments to the City's Massage Ordinance to strengthen the City's ability to take enforcement action against massage therapy establishments where prostitution and human trafficking was occurring.

## PUBLIC OUTREACH

The Department will coordinate with the City of San José's Press Information Office to message the changes being proposed.  This will include traditional media outlets as well as social media mediums.  The Department will also provide the amended Massage Ordinance to the CAMTC and work to message the information to approved massage therapy schools in San José.  Finally, as indicated above, the Department will send letters to known massage therapy establishments and work with the City Manager's Office to conduct an outreach meeting to help educate the industry.

## COORDINATION

This memorandum has been coordinated with the City Attorney's Office and the City Manager's Office.

HONORABLE MAYOR AND CITY COUNCIL
November 23, 2015
**Subject:  Massage Ordinance Amendments**
Page 5


## CEQA

Not a Project, File No. PP10-069, City Administrative Activities.


/s/
LARRY ESQUIVEL
Chief of Police


For questions, please contact Sgt. Todd Trayer #3301, Vice Unit Sergeant, at (408) 277-4322.

# EXHIBIT 6

COUNCIL AGENDA: 12.08.15
ITEM: 8.1



CITY OF
SAN JOSE
CAPITAL OF SILICON VALLEY

*Memorandum*

| | |
|---|---|
| **TO:** HONORABLE MAYOR AND CITY COUNCIL | **FROM:** Councilmember Raul Peralez |
| **SUBJECT: SEE BELOW** | **DATE:** December 8, 2015 |

Approved _____ Date  12-8-15

**SUBJECT: ACTIONS RELATED TO THE AMENDMENT TO TITLE 6 MASSAGE PARLOR REGULATION**

## RECOMMENDATION

1. Approve the staff recommendation.

2. Direct staff to work with Code Enforcement to review Santa Clara County's recently-approved massage parlor establishment Ordinance No. 78289[1] and include the following into our San Jose's regulation changes:
   a. A human trafficking conviction or arrest as a basis for the denial, suspension or revocation of a massage parlor establishment permit.
   b. Prohibit the opening of a massage parlor in the same location as one that has been closed due to trafficking/prostitution activity.
   c. Require that massage parlor clients enter only through the front door.
   d. Require that massage tables be at least two feet from each wall.
   e. Ban sleeping quarters in massage establishments.

## BACKGROUND

The adoption of the above ordinance requirements will help prevent massage parlor establishments from becoming fronts for prostitution and human trafficking activity while strengthening the City's enforcement levers.

---

[1] County of Santa Clara, California:  Ordinance 78289:  "Adoption of Ordinance No. NS-516.4 Amending Division 22 of Title B of the Santa Clara County Ordinance Code relating to massage establishments, massage therapists, and massage practioners," 6 October, 2015.
http://sccgov.iqm2.com/citizens/Detail_LegiFile.aspx?MeetingID=6063&ID=78289

HONORABLE MAYOR AND CITY COUNCIL
Subject:  Actions Related to the Amendment to Title 6 Massage Parlor Regulation
Page 2

I recently learned about how successful the changes adopted by the County have been in
shutting down illegal massage parlor establishments.  I would like to see some of these
changes be integrated into our City regulations as well.

I would like to thank staff in the San José Police Department and City Attorney's Office
for their work. We should engage staff in our Planning, Building and Code Enforcement
department who can also offer valuable resources in combating human trafficking.  I'm
also thankful for the advocacy and work done by the Santa Clara County Human
Trafficking Coalition for being fierce allies in the fight against these crimes.

# EXHIBIT 7



**City Clerk**

# CITY OF SAN JOSÉ, CALIFORNIA

Office of the City Clerk
200 East Santa Clara Street
San José, California 95113
Telephone (408) 535-1260
FAX (408) 292-6207

STATE OF CALIFORNIA
COUNTY OF SANTA CLARA
CITY OF SAN JOSÉ

I, Toni J. Taber, City Clerk & Ex-Officio Clerk of the Council of and for the City of San José, in said County of Santa Clara, and State of California, do hereby certify that **Ordinance No. 29662,** the original copy of which is attached hereto, was passed for publication of title on the **8th day of December 2015,** was published in accordance with the provisions of the Charter of the City of San José, and was given final reading and adopted on the **December 15, 2015,** by the following vote:

AYES:          CARRASCO, HERRERA, JONES, KALRA, KHAMIS, M. NGUYEN, T. NGUYEN, OLIVERIO, PERALEZ, ROCHA; LICCARDO.

NOES:          NONE.

ABSENT:      NONE.

ABSTAINED:  NONE.

Said ordinance is effective as of **January 15, 2016.**

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the corporate seal of the City of San José, this **17th day of December, 2015.**

(SEAL)_____

TONI J. TABER, CMC
CITY CLERK & EX-OFFICIO
CLERK OF THE CITY COUNCIL

/smd

RD:JVP:LCP
12/08/2015

ORD NO 29662

## ORDINANCE NO. <u>29662</u>

**AN ORDINANCE OF THE CITY OF SAN JOSE AMENDING CHAPTER 6.44 OF THE SAN JOSE MUNICIPAL CODE TO ADD A PURPOSE SECTION, ADD ADDITIONAL AND CLARIFYING DEFINITIONS, REQUIRE ALL MASSAGE THERAPISTS TO BE CERTIFIED BY THE CALIFORNIA MASSAGE THERAPY COUNCIL, REQUIRE MASSAGE BUSINESSES TO PROVIDE THE POLICE CHIEF WITH COPIES OF MASSAGE THERAPIST CERTIFICATES, REQUIRE MANDATORY REPORTINGS TO THE POLICE CHIEF, SPECIFY OPERATIONAL REQUIREMENTS AND MAKE OTHER CLARIFYING AND REQUIRED REVISIONS IN ACCORDANCE WITH STATE LAW**

**WHEREAS,** massage is a viable professional field offering the public valuable health and therapeutic services; and

**WHEREAS,** the registration and health and safety requirements imposed by this Ordinance are reasonably necessary to protect the health, safety and welfare of the citizens of the City of San José; and

**WHEREAS,** massage businesses have been found to present opportunities for prostitution, human trafficking, and other unlawful activity, and police officers have made arrests for prostitution in massage businesses located within the City of San José; and

**WHEREAS,** the California and City of San José legislature and the courts have long recognized the necessity of imposing reasonable regulations and standards for the operation of massage businesses, including but not limited to, minimum educational and experience requirements, passage of practical examination of competence, sanitary conditions, hours of operation, and other operational regulations designed to minimize opportunities for illegal activities and to ensure protection of the health, safety and welfare of citizens; and

**WHEREAS,** there is significant risk of injury to clients of massage businesses by improperly trained or poorly educated massage therapists; and

**WHEREAS,** the presence of businesses known or reputed to be places of prostitution or other illegal activity can have an adverse impact on surrounding properties and result in blight, foster further illegal activities, and generally become a public nuisance; and

**WHEREAS,** the adoption of this Ordinance is not a project under California Environmental Quality Act ("CEQA") Guidelines Section 13578(b)(5) as an

T-30513 \ 1264502_4
Council Agenda:  12/08/15
Item No.:    8.1

RD:JVP:LCP
12/08/2015

ORD NO 29662

administrative activity that will not result in potentially significant physical impact on the environment;

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF SAN JOSE:

Chapter 6.44 of Title 6 of the San José Municipal Code is hereby amended to read as follows:

## Part 1
## General Provisions

**6.44.010**     **Purpose**

A.   The City of San José is authorized to regulate massage establishments pursuant to Government Code Section 51030 et seq., Business and Professions Code Sections 460 and 4600 et seq., Section 7 of Article XI of the California Constitution, and its Charter and general police powers under the California Constitution.

B.   In enacting these regulations the San José Council ("City Council") recognizes that massage is a viable professional field offering the public valuable health and therapeutic services.

C.   It is the purpose and intent of the City Council that the operation of massage establishments and persons offering massage be regulated in the interests of public health, safety, and welfare by providing minimum building, sanitation, and health standards and to ensure that persons offering massage shall possess the minimum qualifications necessary to operate such businesses and to perform such services offered.

D.   It is the intent of this Chapter to enact regulations to insure that those offering massage services are qualified and trained and can be expected to conduct their services in a lawful and professional manner. The City Council finds that existing

2

RD:JVP:LCP
12/08/2015

controls have not satisfactorily addressed or regulated serious criminal and public health problems, nor have the existing controls regulated the profession so as to sufficiently encourage compliance with State and local laws.

## 6.44.020   Definitions

The definitions set forth in this part shall govern the application and interpretation of this Chapter.

## 6.44.030   California Massage Therapy Council or CAMTC

"California Massage Therapy Council" or "CAMTC" means the State of California non-profit organization established pursuant to Business and Professions Code Section 4602, as may be amended.

## 6.44.040   Chief of Police

"Chief of Police" means the Chief of Police of the City of San José or his or her authorized agents.

## 6.44.050   Client

"Client" means any person who receives a massage in exchange for money or any other thing of value, or for checks, credit or any other representation of value.

## 6.44.060   Massage

"Massage" means any method of treating the external parts of the body for remedial, health or hygienic purposes by means of pressure on or friction against; or stroking, kneading, rubbing, tapping, pounding or stimulating the external parts of the body with

3

RD:JVP:LCP
12/08/2015

ORD NO 29662

hands or other parts of the body with or without the aid of any supplementary aids, such as rubbing alcohol, liniments, antiseptics, oils, powders, creams, lotions, ointments or other similar preparations commonly used in this practice; or by baths, not limited to Turkish, Russian, Swedish, Japanese, vapor, shower, electric tub, mineral, fomentation, or any other type of bath.

### 6.44.070    Massage Business

"Massage Business" means the business of providing Massage to a Client.

### 6.44.080    Massage Therapist

"Massage Therapist" means any person who is certified as a Certified Massage Practitioner or Certified Massage Therapist pursuant to California Business and Profession Code Section 4600 et seq.

### 6.44.090    Off-Premises Massage Business

"Off-Premises Massage Business" means any Massage Business that is conducted at locations other than at specified business premises maintained by the business operator for the purpose of providing Massage on the premises.

### 6.44.100    Permittee

"Permittee" means the holder of a Massage Business permit issued by the Chief of Police.

T-30513 \ 1264502_4
Council Agenda: 12/08/15
Item No.:   8.1

RD:JVP:LCP
12/08/2015
ORD NO 29662

### 6.44.110   Recognized School of Massage

"Recognized School of Massage" means any school or institution of learning that is recognized as an approved school pursuant to California Business and Professions Code Section 4601, as may be amended.

### 6.44.120   Business Permit Required

It shall be unlawful for a person to maintain, manage, operate, conduct, control or own a Massage Business or Off-Premises Massage Business unless the business is maintained and operated in strict compliance with a valid business permit issued by the Chief of Police.   A separate business permit is required for each location if a person maintains, manages, operates, conducts, controls or owns multiple Massage Businesses at different locations.

### 6.44.130   Ownership/Management License Required

A.    It shall be unlawful for any person to work as a manager or have any ownership interest in a Massage Business or Off-Premises Massage Business without having first obtained an ownership/management license from the Chief of Police.

B.    It shall be unlawful for any Massage Business to provide Massage in exchange for money or any other thing of value, or for checks, credit or any other representation of value, unless all individuals employed by the Massage Business to perform Massage, whether as an employee, independent contractor, sole proprietorship, or otherwise, are certified Massage Therapists.

C.    A separate ownership/management license is required for each location if a person owns, manages, or operates multiple Massage Businesses at different locations.

T-30513 \ 1264502_4
Council Agenda:  12/08/15
Item No.:    8.1

RD:JVP:LCP
12/08/2015

ORD NO 29662

## 6.44.140   Massage Therapy Certification Required

It shall be unlawful for a person to perform Massage on a person in exchange for money or any other thing of value, or for checks, credit or any other representation of value unless that individual is a certified Massage Therapist.

## 6.44.150   Exemptions

The provisions of this Chapter shall not apply to the following classes of persons while engaged in the performance of the duties of their respective professions:

A.   Physicians, surgeons, chiropractors, osteopaths, acupuncturists, or physical therapists who are duly licensed to practice their respective professions in the State of California.

B.   Nurses registered under the laws of the State of California.

C.   Barbers and beauticians who are duly licensed under the laws of the State of California while engaging in practices within the scope of their licenses, limited solely to the massaging of the neck, face, scalp, feet up to the ankle, or hands up to the wrist of the client.

D.   Hospitals, nursing homes, sanitariums or other health care facilities duly licensed by the State of California.

E.   Accredited high schools, junior colleges, and colleges or universities where coaches and trainers are acting within the scope of their employment.

F.   Trainers of amateur, semi-professional or professional athletes or athletic teams.

T-30513 \ 1264502_4
Council Agenda: 12/08/15
Item No.:   8.1

RD:JVP:LCP
12/08/2015

ORD NO 29662

## Part 2

## Operating Regulations and Conditions

### 6.44.200      Operating Regulations and Permit Conditions

A.      The provisions of this Part shall constitute business permit terms and conditions applicable to each business permit issued by the Chief of Police.

B.      In addition, the provisions of this Part shall constitute operating regulations. It shall be unlawful for any person to violate these provisions.

### 6.44.210      Hours of Operation

A.      Massage in exchange for money or any other thing of value, or for checks, credit or any other representation of value shall be provided or given only between the hours of 7:00 a.m. and 10:00 p.m.

B.      The premises on which a Massage Business is operated or conducted shall be open only between the hours of 7:00 a.m. and 10:00 p.m.

### 6.44.215      Entry and Exit

All Clients shall enter and exit exclusively through the front door of the Massage Business.  The front door shall be the door facing the street, or if no such door exists, the door that is most visible to members of the public passing by the Massage Business.

### 6.44.220      Listing of Services

A.      A list of services available shall be displayed in an open and conspicuous manner in a public place within the premises and shall be described in readily

7

T-30513 \ 1264502_4
Council Agenda: 12/08/15
Item No.:    8.1

RD:JVP:LCP
12/08/2015

ORD NO 29662

understandable language. No person shall perform or offer to perform any service other than those posted.

B.    A Massage Therapist for an Off-Premises Massage Business shall provide to Clients and to the public upon request the list of services described in Subsection A.

## 6.44.230    Records of Massage Services

A.    The Permittee shall keep a written record of the date and hour of each Massage service; the name and address of each Client; the name of the Massage Therapist administering the service, the address at which the service was provided, the type of service administered, and such other information as the Chief of Police considers necessary on a Client service release form approved by the Chief of Police.

B.    Such written record shall be open to inspection by City officials including the Police Department and the City Attorney's Office for the administration and enforcement of the Municipal Code or State law.

C.    Such records shall be maintained on the premises of the Massage Business for a period of two years.

D.    In the case of an Off-Premises Massage Business, the Permittee shall maintain the above specified records at the business address provided by the Permittee on the business permit application.

E.    Each Permittee shall:

T-30513 \ 1264502_4
Council Agenda:  12/08/15
Item No.:    8.1

RD:JVP:LCP
12/08/2015                                             ORD NO 29662

1.   Provide the Chief of Police with a copy of the valid CAMTC certificate for every person who is employed or otherwise retained by Permittee to provide Massage prior to the commencement of such person's employment or Massage service.

2.   Display in the reception area or similar open public place on the premises a copy of each CAMTC certificate for all persons employed or otherwise providing Massage.   CAMTC certificates of former employees or contractors shall immediately be removed as soon as the Massage Therapist is no longer employed or providing Massage services through the Massage Business.

3.   Require each Massage Therapist to clearly and prominently wear a CAMTC certification card at all times when the Massage Therapist is inside a Massage Business or providing Massage at an off-site premise.

## 6.44.240   Notifications

A.   A Permittee shall immediately notify the Chief of Police of any of the following occurrences:

1.   Arrests of any owners, managers, employees, or Massage Therapists for an offense other than a misdemeanor traffic offense;

2.   Resignations, terminations, or transfers of owner/manager licensee or Massage Therapists employed or otherwise retained by Permittee to provide Massage;

3.   Any event involving the Massage Business, Permittee, owner/manager licensee or Massage Therapist that constitutes or may constitutes a violation of this Chapter, Municipal Code, or state or federal law.

9

RD:JVP:LCP
12/08/2015

ORD NO 29662

B.    This provision requires reporting to the Chief of Police even if the Permittee believes the Chief of Police has or will receive the information from another source.

## 6.44.250    Linens Required

A.    The Permittee shall, at all times, have an adequate supply of clean sanitary towels, coverings and linens.

B.    Clean towels, coverings and linens shall be stored in cabinets.

C.    Towels and linens shall not be used on more than one client, unless they have first been laundered and disinfected.

D.    Disposable towels and coverings shall not be used on more than one client.

E.    Soiled linens and paper towels shall be deposited in separate, approved receptacles.

## 6.44.260    Separate Facilities Required

A.    The Permittee shall provide separate Massage rooms and separate dressing facilities if male and female clients are to be treated simultaneously on the same Massage Business premises, unless there is consent from the male and female Clients to receive Massage on separate Massage tables in the same room.

B.    Massage Businesses shall not contain sleeping quarters on the premises. There shall be no room or space used for sleeping, living or residential uses on the Massage Business premises.

T-30513 \ 1264502_4
Council Agenda:  12/08/15
Item No.:    8.1

RD:JVP:LCP
12/08/2015

ORD NO 29662

### 6.44.270    Clothing Requirement

A.    The Permittee, owners, managers, employees, and Massage Therapists, when present on the premises of a Massage Business or when working or providing services for an Off-Premises Massage Business, shall be clean and shall wear clean, nontransparent outer garments. Such garments shall not expose their genitals, pubic areas, buttocks or chests and shall be in compliance with California Business and Professions Code Section 4609, as may be amended.

B.    A Massage shall not be given unless the Client's genitals and female client's breasts are fully covered.

C.    A Massage Therapist shall not, in the course of administering any Massage, make physical contact with the genitals of any person regardless whether the contact is over or under the persons clothing.

### 6.44.280    Drugs and Alcohol Prohibited

A.    No person shall enter or remain in any part of the premises of a Massage Business, or conduct, operate, be employed by or provide Massage for an Off-Premises Massage Business, while in the possession of, consuming, or using any alcoholic beverage or drugs except for medication provided pursuant to a prescription issued by a physician duly licensed to practice in the State of California. The Permittee, owner, operator, manager or Massage Therapist shall not permit any such person to enter or remain on such premises.

B.    No alcoholic beverage or drug, other than a prescription medication in the possession of the person for whom the prescription was written shall be stored or kept on the premises of a Massage Business.

11

RD:JVP:LCP
12/08/2015

ORD NO 29662

**6.44.290**   **Condoms Prohibited**

A.   No person shall enter or remain in any part of the premises of a Massage Business, or conduct, operate, be employed by or provide Massage for an off-premises Massage Business, while in the possession of or while using a condom.

B.   No condom shall be stored or kept on the premises of a Massage Business.

**6.44.300**   **School of Massage Prohibited**

A.   No Massage Business or off-premises Massage Business shall operate as a School of Massage or use any of the premises or facilities of a school of massage except as specified in Subsection B.

B.   A School of Massage may be operated simultaneously with and in the same or a contiguous building with a Massage Business, provided that the facilities of the school are physically separated, clearly delineated and there is not a sharing of any portion of those respective facilities.

**6.44.310**   **Advertising Restrictions**

No person shall publish or distribute, or cause to be published or distributed, any advertising matter including on the internet or business identification card that would reasonably suggest to prospective Clients that any service is available other than a Massage.   For example, no advertising shall contain any nudity or suggest sexual services are available.

T-30513 \ 1264502_4
Council Agenda:  12/08/15
Item No.:   8.1

RD:JVP:LCP
12/08/2015

ORD NO 29662

### 6.44.320 Locks Prohibited

A.    No Massage shall be conducted within any cubicle, room, booth or treatment room on the premises of a massage business which is fitted with a lock.

B.    All exterior doors on the premises of a massage business shall remain unlocked from the interior side during business hours unless the Massage Business meets the requirement of California Government Code Section 51034(b)(5), as may be amended.

### 6.44.330 Minimum Age Requirement

No person shall be employed in a Massage Business or perform Massage or manage or hold an ownership interest in a Massage Business who is not at least eighteen years of age.

### 6.44.340 Insurance Requirement

A.    During the term of a business permit, the Permittee and each Massage Therapist who works for the Permittee or on the Permittee's business premises shall maintain in full force and effect professional liability or massage malpractice insurance or other such policy as the office of the risk manager shall require:

1.    With minimum policy limits to be set by the risk manager;

2.    Issued by an admitted insurer or insurers as defined by the California Insurance Code; and

T-30513 \ 1264502_4
Council Agenda:  12/08/15
Item No.:    8.1

RD:JVP:LCP
12/08/2015

ORD NO 29662

3.  Providing that no cancellation, change in coverage, or expiration by the insurance company or the insured shall occur during the term of the business permit, without thirty days written notice to the chief of police prior to the effective date of such cancellation or reduction in coverage.

B.  Proof of insurance shall be provided to the Office of the Risk Manager.

## 6.44.350    Business Name

No person shall conduct or operate a Massage Business under any name not specified in a valid business permit issued by the Chief of Police.

## 6.44.360    Massage Business Premises - Physical Requirements

The premises of every Massage Business shall be maintained and shall at all times when open for business meet the following requirements:

A.  Minimum lighting shall be provided in accordance with Article 220 of the National Electrical Code, and, in addition, at least one artificial light of not less than forty watts shall be provided in each room or enclosure where massage services are performed on clients;

B.  Hot and cold running water shall be provided at all times on the premises;

C.  Cabinets shall be provided for storage of clean linens;

D.  Adequate bathing, dressing, locker and toilet facilities shall be provided for clients;

T-30513 \ 1264502_4
Council Agenda:  12/08/15
Item No.:    8.1

RD:JVP:LCP
12/08/2015

E.  A minimum of one separate wash basin for employees shall be provided at all times. The basin shall be located within or as close as practicable to the area devoted to the performing of massage services. Sanitary towels shall also be provided at each basin;

F.  Pads used on massage tables shall be covered with a durable washable plastic or other waterproof material which shall be cleaned and disinfected with a disinfectant at least once each day the premises are open;

G.  Wet and dry heat rooms, steam or vapor rooms or cabinets, toilet rooms, shower and bath rooms, bathtubs, tanning booths, whirlpool baths and pools shall be thoroughly cleaned and disinfected as needed, and at least once each day the premises are open, with a disinfectant.

H.  All walls, ceilings, floors and other physical facilities for the establishment must be in good repair and maintained in a clean and sanitary condition.

I.  All massage tables shall be at least two feet away from any wall at all times.

J.  Comply with all Planning, Building and other applicable codes and regulations.

**6.44.370    Presence of Massage Therapist**

No Massage Business shall be open for business without having at least one Massage Therapist who holds a valid Massage Therapist certification from CAMTC present on the premises during all business hours.

**6.44.380    Massage at Hotels and Motels**

T-30513 \ 1264502_4
Council Agenda: 12/08/15
Item No.:    8.1

RD:JVP:LCP
12/08/2015

ORD NO 29662

It shall be unlawful for a person to perform Massage at a hotel or motel that does not have a business permit issued pursuant to this Chapter.

## 6.44.390      Massage at Place of Business

It shall be unlawful to perform Massage on any Client at any place of business that does not have a business permit unless:

A.      The place of business is an office regularly occupied by the Client for business purposes;

B.      The Client is the business owner, operator or an employee of the business; and

C.      The Massage is performed by a Massage Therapist who is employed by an Off-Premises Massage Business that holds a valid business permit.

## 6.44.400      Identification Card Display

A.      It shall be unlawful for any Massage Therapist to be present on the premises of a Massage Business or work for an Off-Premises Massage Business, or to otherwise perform Massage on a Client without having prominently displayed his or her CAMTC certification card issued by the CAMTC.

B.      The identification card shall be prominently displayed on the outermost garment at approximately chest height.

C.      The personal identification card shall be in good and readable condition at all times.

T-30513 \ 1264502_4
Council Agenda: 12/08/15
Item No.:    8.1

RD:JVP:LCP
12/08/2015

D.      A Massage Therapist shall only provide Massage under the name specified in his or her CAMTC certificate.

## 6.44.410      <u>Signs</u>

Any Massage Business signs shall be in conformance with the current ordinances and regulations of the City.

## Part 3
### Permits and Licenses

## 6.44.500      <u>Procedures and Determinations</u>

The procedures set forth in Chapter 6.02 for permits and licenses shall govern the application for, investigation, approval, denial, suspension and revocation of any business permit, ownership/management license, or Massage Therapist license issued pursuant to this Chapter, except as specifically provided in this Part.

## 6.44.510      <u>Additional Requirements for Permits and Licenses</u>

In addition to the procedures set forth in Chapter 6.02, a person applying for a permit or license under this Chapter shall provide to the Chief of Police:

A.      Proof that the applicant is at least eighteen years of age.

B.      For a business permit, the applicant shall provide:

      1.      Proof of zoning approval for the business premises;

RD:JVP:LCP
12/08/2015

2.      Proof of professional liability or malpractice insurance as specified in Part 2 of this Chapter;

3.      The name and address of each Massage Therapist employed by the Permittee or who works on the Permittee's business premises.

C.      For an ownership/management license, when the applicant is or will be a manager of the business, the applicant shall provide proof of a diploma or certificate of graduation from a Recognized School of Massage after successfully completing a one-hundred-hour course of instruction.

## 6.44.520      Inspection to Determine Compliance

The City officials charged with investigating and enforcing this Chapter and the Municipal Code, including, but not limited to, the Police Department, Fire Department, and Planning, Building and Code Enforcement Department, are authorized to inspect the premises and all business records of each massage business during business hours for the purposes of determining compliance with the provisions of this Chapter.

## 6.44.530      New Managers and Massage Therapists - Notification

A.      The Permittee shall notify the Chief of Police, in writing, of the name and residence and business premises address of each person employed as a Massage Therapist or a manager prior to the start of employment.

B.      A Massage Therapist shall not commence employment or providing Massage services unless the following has been provided to the Chief of Police:

1.      Proof of insurance; and

18

RD:JVP:LCP
12/08/2015

2.    A copy of the CAMTC certification.

## 6.44.540    Change of Name or Location

A change of location or name of a Massage Business shall be subject to the approval of the Chief of Police.  The new location shall comply with each and every requirement of this Chapter.

## 6.44.550    Permit and License Fees

Fees for the massage business permit and ownership/management license applications, and renewal applications shall be as set forth in the Schedule of Fees established by Resolution of the City Council.

## 6.44.560    Term of Permits and Licenses

A.    Each business permit and ownership/management license issued pursuant to this Chapter shall expire two years after the date of issuance.

B.    No business permit or ownership/management license issued by the Chief of Police pursuant to this Chapter may be sold, transferred or assigned by the Permittee or licensee, or by operation of law, to any other person or persons; any such sale, transfer or assignment, or attempted sale, transfer or assignment, shall be deemed to constitute voluntary surrender of such permit or license and such permit or license shall be thereafter be deemed terminated and void.

C.    In addition to the provisions set forth in Chapter 6.02 of the Municipal Code, a business permit or owner/manager license issued pursuant to this Chapter may be denied, suspended or revoked if the Permittee or licensee committed any offense involving lewdness, indecent exposure, prostitution, human trafficking,

19

RD:JVP:LCP
12/08/2015

ORD NO 29662

sex trafficking, labor trafficking or other similar offense or the employees, independent contractors, sole proprietorship, or otherwise of the Massage Business have committed such offenses during the course of employment or services.

## 6.44.570    Compliance With all Laws

All Massage Business, including Permittee, owner, manager, operator or Massage Therapist, shall comply with all local, state, and federal laws and regulations.

## 6.44.580    Public Nuisance and Remedies

It shall be unlawful and a public nuisance for a Massage Business to be operated, conducted, or maintained in violation of the provisions of this Chapter.  The City may exercise its discretion and commence any criminal or civil actions or proceedings available under the Municipal Code, state or federal law against any person or entity in violation of this Chapter or any other applicable law.  All remedies under Chapter 6.02, this Chapter, the Municipal Code and state and federal law are cumulative.

## 6.44.590    Conflicts

In the event of any conflicts or inconsistencies between the provisions of this Chapter and the provisions of any other chapter(s) of the Municipal Code, the provisions of this Chapter shall control, unless do so would be inconsistent with the stated purpose of this Chapter.

T-30513 \ 1264502_4
Council Agenda:  12/08/15
Item No.:    8.1

RD:JVP:LCP                                          ORD NO 29662
12/08/2015

PASSED FOR PUBLICATION of title this 8th day of December 2015, by the
following vote:

AYES:            CARRASCO,  HERRERA,  JONES,  KALRA,  KHAMIS,
                 M.  NGUYEN,  T.  NGUYEN,  OLIVERIO,  PERALEZ,
                 ROCHA; LICCARDO.

NOES:            NONE.

ABSENT:          NONE.

DISQUALIFIED:    NONE.

                                          SAM LICCARDO
                                          Mayor

ATTEST:

TONI J. TABER, CMC
City Clerk

21

T-30513 \ 1264502_4
Council Agenda:  12/08/15
Item No.:    8.1

EXHIBIT 8

PSFSS COMMITTEE:   9/21/17
ITEM:   (d) 4



CITY OF
**SAN JOSE**
CAPITAL OF SILICON VALLEY

*Memorandum*

**TO:**  PUBLIC SAFETY, FINANCE, AND        **FROM:**  Edgardo Garcia
STRATEGIC SUPPORT COMMITTEE

**SUBJECT:  MASSAGE PARLORS ORDINANCE**        **DATE:**  September 13, 2017
**STATUS REPORT**

Approved _____ Date   9/14/17

**RECOMMENDATION**

Accept the status report on Chapter 6.44 (Massage Ordinance) of the San José Municipal Code
with regard to operating regulations and enforcement efforts.

**BACKGROUND**

On September 15, 2016, the Public Safety, Finance, and Strategic Support Committee (PSFSS)
accepted the report "Massage Parlors Over-Concentration in Neighborhoods Evaluation Status
Report[1]" and directed staff to return to the committee in one year with a status update.  The
Committee also requested that the City Attorney return with information relating to the
feasibility of a moratorium on issuing new massage permits.

Additionally, on March 7, 2017, the City Council added the Personal Care Business Compliance
Initiative to the Council Priority List and ranked it at No. 10 of the new policy priorities.  The
initiative would require the following:

(1) A registry requiring all personal care businesses that provide any form of massage
services to annually register prior to obtaining a business tax certificate with an additional
cost-recovery fee for a city employee position to proactively coordinate administrative
processes and inspection for compliance.
(2) A moratorium on the distribution of new massage parlor permits to all personal care
businesses that provide any form of massage services during the initiative development
up to a period of one year with an option to extend per council's approval.
(3) Conduct outreach and discussion with industry business professionals.

This memorandum will provide an overview of operational and zoning code requirements for
massage businesses, an update on enforcement and compliance efforts, and an update on the staff
work with respect to the Personal Care Business Compliance Initiative.

---

[1] Staff report (PSFSS 9/15/16): http://sanjose.granicus.com/MetaViewer.php?meta_id=591230

## Operational Requirements for Massage Establishments

The operating requirements for massage establishments are contained within Chapter 6.44 of the Municipal Code, which was updated in December 2015. The Code now requires:

- All massage businesses, including off-premises massage businesses, to obtain a business permit from the Office of the Chief of Police;
- All owners/managers of massage businesses, including off-premises massage businesses, to obtain an ownership/management license from the Office of the Chief of Police;
- All massage therapists working in San José to be certified by the California Massage Therapy Council;
- All massage businesses to provide the Office of the Chief of Police with copies of massage therapist certificates; and
- Mandatory reporting to the Office of the Chief of Police.

The Massage Ordinance exempts from the provisions of the code certain state licensed medical professionals; state licensed barbers and beauticians who solely provide neck, face, scalp, foot, and hand massage; licensed health care facilities; coaches and athletic trainers at accredited high schools, colleges, universities, and of amateur, semi-professional, or professional athletes/athletic teams.

## Zoning Code Requirements for Massage Establishments

Title 20 (Zoning Code) of the San José Municipal Code regulates where the City allows massage uses, including massage parlors, to locate. The Code makes a distinction between "massage parlors" and establishments where massage is:

(1) Administered only by persons who each possess a current, active, and valid certificate issued pursuant to Chapter 10.5 of Division 2 of the California Business and Professions Code and copies of all such certificates have been provided to the director; or

(2) Administered in conjunction with:
   (a) The practice of a medical doctor, chiropractor, dentist, osteopath, physical therapist, or registered nurse; or
   (b) A state-approved massage school; or
   (c) An athletic club or a full-service barber or beauty salon where not more than fifteen percent of floor space is used for massage activity. For purpose of this definition, a full service barber must at a minimum provide hair styling, including shampoos, and shave services; and a full service beauty salon must at a minimum provide services for hair styling, including shampoos, and facials.

The categories above are treated as a "Personal Services" use under the Zoning Code. Personal Services are permitted in the Commercial Pedestrian, Commercial Neighborhood, Commercial General, Combined Industrial Commercial, Transit Employment Center, Downtown Primary Commercial, Downtown Commercial Neighborhood Transition, and Main Street zoning districts.

Now that the Municipal Code requires state certification for massage practitioners and establishments, "massage parlors" as defined in the Zoning Code are no longer allowed. Only those massage businesses that would be classified as a Personal Services use under the Zoning Code are allowed.

Prior to obtaining a Massage Business Permit, the massage business is required to obtain a Zoning Letter from the director of Planning, Building, and Code Enforcement that verifies the business is located in the correct zone for a State-Certified Massage Use (Personal Services).

## ANALYSIS

### Operational Regulations – Implementation and Status Report

The Police Department's Vice Unit is responsible for coordinating the enforcement of the new Massage Ordinance, which took effect on January 15, 2016. At the time of the 2016 report to PSFSS, the Vice Unit had identified 300 known massage businesses that were likely subject to the requirements of the new ordinance. The list was developed based on complaints from residents, explicit online postings, and areas of heavy clustering. Of those, 100 had received warning letters from the Police Department with the following results:

- A total of five businesses applied and successfully obtained massage permits;
- Dozens of businesses have contacted the Police Department and started the massage permit application process, but then do not follow through.
- One permitted business was the subject of an undercover operation and had its massage permit revoked.
- No additional letters have been sent from the Vice Unit due to staffing limitations.
- Six businesses advised the Vice Unit they are no longer in business due to Vice enforcement.
- All six businesses that were the subjects of Vice enforcement were confirmed to be closed. The incidents associated to those businesses have been turned over to the District Attorney for criminal charges.

Due to department-wide staffing shortages, enforcement has been limited and must be prioritized. As described at the September 15, 2016 PSFSS Committee meeting, with the September 2016 shift change, sworn staff was redeployed to the patrol division effectively reducing the Vice Unit's staffing to one sergeant. From January 2017 to August 2017, the Vice Unit temporarily lost allocated full time staffing with redeployment of the remaining sergeant position.

Now as the Police Department begins to rebuild, the Department has filled the Vice sergeant position with the September 10, 2017 shift change. In addition, funding was approved in the Fiscal Year 2017-2018 Adopted Budget for the Planning, Building and Code Enforcement

PUBLIC SAFETY, FINANCE, AND STRATEGIC SUPPORT COMMITTEE
September 13, 2017
**Subject: Massage Parlors Ordinance Status Report**
Page 4

Department to add a dedicated Code Inspector to work in partnership with the Police Department on massage enforcement.

Partnering with Code Enforcement has greatly expanded the capacity for enforcement directly with property owners. In the limited outreach and enforcement done to date, the Vice Unit has found that many businesses are operating in locations not zoned for massage uses. When the Vice Unit contacted the owners of the property where the unpermitted business was located, the landlords often took swift action to hold their tenants accountable.

The newly added and assigned Code Enforcement inspector began enforcement operations in August of 2017, and in the short time since, has already seen success as businesses and property owners receive compliance orders for failure to have proper permits or other Municipal Code violations, as well as for zoning issues. As of August 31, 2017, 25 inspections have been conducted, and 19 compliance orders and one citation have been issued. One business has closed.

In addition to the above staffing, the Police Department's Permits Unit has one civilian staff person coordinating the permitting of massage businesses. The new Massage Ordinance includes specific requirements for the massage business in an effort to provide additional safety precautions for our community. Staff has found that most massage permit applicants provide documents that are inadequate and incomplete, which delays their ability to get permitted. However, with the new Code Enforcement effort, businesses and property owners now receive compliance orders with deadlines, and failure to meet those deadlines results in increased fines and penalties, hearings before the Appeals Hearing Board, and ultimately closure.

**Proposed Personal Care Business Compliance Initiative**

At the March 7, 2017 Council Priority Setting Session, the City Council added the Personal Care Business Compliance Initiative to the Council Priority List and ranked it #10 (of 24 policy priorities).

This item contained the following direction:

1) Create a registry requiring all personal care businesses that provide any form of massage services to annually register prior to obtaining a business tax certificate with an additional cost-recovery fee for a city employee position to proactively coordinate administrative processes and inspection for compliance.

2) A moratorium on the distribution of new massage parlor permits to all personal care businesses that provide any form of massage services during the initiative development up to a period of one year with an option to extend per Council's approval.

3) Conduct outreach and discussion with industry business professionals.

At the time of the Priority Setting Session, staff from the Police Department and Code Enforcement did not do a full workload assessment of the initiative. Following is an analysis of each of the items in the Personal Care Business Compliance Initiative.

## *1. Registry and Expansion of Massage Ordinance*

The massage ordinance was drafted to apply to those businesses that primarily performed massage. The City's goal was to put out of business those illicit operations that were masquerading as massage establishments. However, there are other businesses at which massage therapy is provided, such as chiropractic offices and full-service salons.

The ordinance, which Council adopted in December 2015, includes a series of exemptions for these types of businesses. The Personal Care Business Compliance Initiative removes the exemption language. Such an expansion could impact thousands of existing San José businesses that offer some form of massage therapy, including:

- Medical offices (including physicians/chiropractors/physical therapists);
- State-licensed massage schools (there are four in San José according to the California Massage Therapy Council online database);
- Full-service salons (the State of California Board of Cosmetology licensure data shows at least 5,000 licensed establishments in San José); and
- Athletic clubs and personal trainers.

In addition to the above, the California Massage Therapy Council shows more than 600 certified massage therapists and certified massage practitioners registered with San José addresses. Each of these categories has unique needs for outreach. For example, the State Board of Cosmetology provides materials in English, Spanish, Vietnamese, and Korean. As noted below, the outreach required to implement and enforce the current iteration of the massage ordinance has not yet been completed. Of the 300 massage businesses likely subject to the massage ordinance requirements, the Police Department has only reached out to 100 to date.

Staff would need to develop specialized mailing lists, develop print and online materials, hold community meetings, respond to questions from the public, and other activities related to the development of the ordinance. Currently, no funds have been budgeted for this outreach, and there is not staff allocated to the project. Re-allocating sworn or civilian staff would impact ongoing work, whether crime prevention activities or enforcement activities, and, due to continued vacancies, is not currently feasible until the majority of vacancies are filled.

Following the outreach to impacted businesses, staff would proceed to draft an amendment to Chapter 6.44 of the Municipal Code to delete the exemptions for medical offices, state-licensed massage schools, full service salons, and athletic clubs and require such uses to obtain a City massage permit. Staff would then bring forward the ordinance and memorandum to Council for review and approval.

PUBLIC SAFETY, FINANCE, AND STRATEGIC SUPPORT COMMITTEE
September 13, 2017
**Subject: Massage Parlors Ordinance Status Report**
Page 6

Implementing and enforcing an expanded ordinance would require public outreach to educate business and property owners. Additional civilian staffing would be needed in the Police Department Permits unit to issue permits, as well as staffing in Planning, Building and Code Enforcement to issue Zoning Letters and inspect facilities.

Since this item was placed on the Priority List, there has not been staff available to allocate to the project. Staff understands the community concern that some businesses may be masquerading as exempt businesses to avoid getting massage permits. Pending the reallocation of existing staff to do the outreach and policy work, Code Enforcement and the Vice Unit can respond to complaints, inspect, and take enforcement action in the meantime in cases where the business is truly not a "full-service salon" or other type of exempt business.

## 2. *Moratorium on Issuing New Massage Permits*

At the September 15, 2016, PSFSS meeting, the Committee directed the City Attorney to return with information related to the feasibility of a moratorium on issuing new massage permits. The moratorium was proposed as part of the Personal Care Business Compliance Initiative.

City Attorney has advised the Police Department that effecting some form of moratorium on the issuance of massage permits is possible. However, the Police Department believes that a moratorium at this time would complicate efforts to bring about compliance and hinder current enforcement efforts. Moving forward on a moratorium would require additional staff work, including the following:

- Determining which businesses are subject to the moratorium. For example, could existing massage businesses that are located in an appropriate zoning district still apply for massage permits and come into compliance?
- If existing businesses are allowed to come into compliance, then staff work would be required to develop a comprehensive list of all massage businesses to know if massage permit applicants were eligible for permits or subject to the moratorium.
- Staff would have to develop an appeal process and criteria under which a business could prove it was exempt from the moratorium if it was not on the City's official list.

With the addition of the aforementioned dedicated Code Inspector and restored staffing in the Vice Unit, the Police Department would like to continue forward with full implementation of the massage regulations and allow massage businesses the opportunity to come into full compliance by obtaining the required permits. It should be noted, that because the processing of massage permits is performed by a civilian staff person in the Police Department's Permits Unit, that continuing to issue permits does not take away resources from enforcement efforts.

PUBLIC SAFETY, FINANCE, AND STRATEGIC SUPPORT COMMITTEE
September 13, 2017
**Subject: Massage Parlors Ordinance Status Report**
Page 7

### *3.   Outreach and Discussion with Industry Business Professionals*

There are two components of outreach to the industry:

a) Outreach to businesses that are subject to the existing massage ordinance, with a goal of bringing them into compliance and preventing new illicit businesses from opening. This outreach will be the responsibility of the Vice Unit sergeant, in partnership with Code Enforcement. These two entities will work together on a plan to notify businesses which are out of compliance and bring those businesses into compliance with State and local regulations.

b) Outreach regarding a potential expansion of the massage permit program, as outlined under Item 1 above.

Staff's current efforts focus on outreach to businesses subject to the current ordinance with a goal of bringing about compliance. Staff will be working to develop an outreach plan in the months ahead and to follow up that outreach with compliance inspections and enforcement now that the Code Enforcement inspector position has been added.

### CONCLUSION

While the Vice Unit has been challenged with enforcement efforts over the past year due to the staffing issues facing the entire Police Department, the Department is enthusiastic about the new partnership with the Code Enforcement Division and the opportunity to make significant progress in implementing the Massage Ordinance. At this time, the Police Department does not have staffing available to implement the Personal Care Business Compliance Initiative. Implementation of this Priority List item will require reallocation of staff from other prevention or enforcement activities, and that is not recommended until position vacancies are substantially filled. For the current fiscal year, the Police Department and Code Enforcement Division instead recommend focusing on enforcing the existing ordinance robustly.

### COORDINATION

This memorandum has been coordinated with the Code Enforcement Division of the Department of Planning, Building and Code Enforcement, and the City Attorney's Office.

/s/
Edgardo Garcia
Chief of Police

For questions, please contact Lieutenant Todd Trayer at (408) 277-4631.

EXHIBIT 9



CITY OF
**SAN JOSE**
CAPITAL OF SILICON VALLEY

*Memorandum*

**TO:** PUBLIC SAFETY, FINANCE, AND
STRATEGIC SUPPORT COMMITTEE

**FROM:** Edgardo Garcia

**SUBJECT:** **MASSAGE PARLORS OVER-
CONCENTRATION IN
NEIGHBORHOODS EVALUATION**

**DATE:** March 2, 2016

Approved: _____  Date: 3/10/16

## RECOMMENDATION

Accept the report on the results of an evaluation of the possible over-concentration of massage parlors in neighborhoods and whether the City can prohibit the opening of a massage parlor in the same location as one that has been closed due to human trafficking/prostitution activity, including the merits of additional amendments to Chapter 6.44 (Massage Ordinance) of the San José Municipal Code; and refer the Massage Parlors Over-Concentration in Neighborhoods Evaluation report to the full City Council for the April 5, 2016, City Council meeting.

## BACKGROUND

On December 8, 2015, the San José City Council approved an ordinance amending Chapter 6.44 of the San José Municipal Code with respect to massage therapists. In addition to making technical changes and clarifications to the City's existing regulations, the ordinance required all massage therapists to be certified by the California Massage Therapy Council, required massage businesses to provide the Police Chief with copies of massage therapist certificates, and required mandatory reporting to the Police Chief.

The Council also approved a memorandum from Councilmember Raul Peralez which directed staff to work with Code Enforcement to review Santa Clara County's recently approved massage parlor establishment Ordinance No. 78289 (*County of Santa, California: Ordinance 78289: "Adoption of Ordinance No. NS-516.4 Amending Division 22 of Title B of the Santa Clara County Ordinance Code relating to massage establishments, massage therapists and massage practitioners," 6 October 2015*) and include the following into the City of San José's regulation changes:
   (a) A human trafficking conviction or arrest as a basis for the denial, suspension or revocation of a massage parlor establishment permit.
   (b) Require that massage parlor clients enter only through the front door.
   (c) Require that massage parlor table be at least two feet from each wall.

PUBLIC SAFETY, FINANCE, AND STRATEGIC SUPPORT COMMITTEE
March 2, 2016
**Subject:  Massage Parlors Over-Concentration in Neighborhoods Evaluation**
Page 2

    (d) Ban sleeping quarters in massage establishments.

These changes were incorporated into the final ordinance, which was adopted by the City
Council on December 15, 2015.

At the December 8, 2015 meeting, the City Council also approved a memorandum from Mayor
Sam Liccardo, Vice Mayor Rose Herrera, and Councilmember Pierluigi Oliverio that directed
the City Manager to evaluate the over-concentration of massage parlors in neighborhoods and
return to the Public Safety, Finance and Strategic Support Committee and Council in 2016 with a
report and recommendation.  In addition, the Council also directed the City Attorney explore
Item (2b) from the memorandum from Councilmember Raul Peralez: Prohibit the opening of a
massage parlor in the same location as one that has been closed due to trafficking/prostitution
activity.

This memorandum addresses the current status of these referrals from Council.


## ANALYSIS

### Evaluation of the possible overconcentration of massage parlors in neighborhoods

From 2008 to 2015, state law limited the City's ability to regulate massage businesses.  As a
result, the City of San José stopped requiring and enforcing businesses to obtain a Massage
Business Permit from the City, and the Police Department no longer had ready access to a
database of massage establishments. Since the December 8, 2015 Council action, the San José
Police Department's Vice Unit has compiled and mapped 295 San José businesses that are
known to be active massage establishments (see attachment).  This list was developed from Vice
Unit observations, on-line resources, and complaints from residents.

This work is a first step in determining which massage establishments are located within the city
and where they are located.  In reviewing the preliminary data, it appears that massage
establishments have become concentrated or located in "hot spots" within the city.  Many of
these locations are on busy thoroughfares that are easily accessible to potential customers.  Many
are located in older commercial or retail spaces that fit the price point for massage businesses to
still be successful.  The Vice Unit's initial analysis of the mapped data shows the businesses
have formed clusters and corridor-like masses ranging from five (5) to well over fifteen (15)
businesses in certain areas.  These high density/high traffic areas lead to an increase in demand
and patrons begin to associate specific areas of our city with these types of establishments.

The Vice Unit is in the process of conducting outreach concerning over-concentration with other
jurisdictions including the City and County of San Francisco and the cities of Los Angeles and
Santa Clara.  Only San Francisco has responded in the time frame necessary for this report, but
their experience has been informative.

PUBLIC SAFETY, FINANCE, AND STRATEGIC SUPPORT COMMITTEE
March 2, 2016
**Subject:  Massage Parlors Over-Concentration in Neighborhoods Evaluation**
Page 3

Prior to 2009, San Francisco required a 1000-foot buffer between massage businesses and required a conditional use permit.  This requirement was given up following the changes in state law that impacted San José's ordinance. Since Assembly Bill 1147 took effect, San Francisco has returned to regulating massage establishments through the conditional use process, but has not reinstated the 1000-foot buffer requirement.  In addition, San Francisco has formed a task force to monitor massage uses with staff from Police, Health, Planning, Building and Fire participating in task force inspections as needed.

The City of San José has taken a similar "task-force" approach to addressing massage establishments engaged in human trafficking/prostitution by utilizing the resources of the City Attorney's Office, the Planning Department, Code Enforcement, the Department of Labor and the Police Department.  These efforts have resulted in both closures of twenty one (21) massage businesses over the past three years and the same amount of criminal citations for prostitution at those establishments.  We have regularly leveraged our current resources of the City Attorney's Office, the Planning Department, Code Enforcement, the Department of Labor and the Police Department to address the multitude of issues often posed by illicit massage parlors.

In San José, the Zoning Code places some restrictions and requirements on massage establishments, including requiring a massage parlor to be more than 200 feet from a residential use and more than 500 feet from a school, college, or university.  The operating requirements for massage establishments are contained within Chapter 6.44 of the Municipal Code, which was updated in December 2015.

As the Police Department implements the December updates to the operational regulations, the Department will continue to research how other California cities are addressing massage uses from a land use and zoning perspective and coordinate with the Planning Department on whether to explore additional requirements in the Zoning Code.

**Prohibiting the opening of a massage parlor in the same location as one that has been closed due to human trafficking/prostitution activity**

At the December 8, 2015 Council meeting, the Council directed the City Attorney to return with analysis of whether the City can prohibit a massage parlor from opening at the same location where a massage establishment was previously closed due human trafficking/prostitution activity.

When the City takes enforcement action against a property owner and/or business owner for human trafficking or prostitution, the City's standard practice is to work toward a settlement agreement and court injunction under which the landowners and business owners cannot operate personal services businesses, including massage parlors on the property again.  Language is routinely included in the court injunction that restricts the business owner from engaging in any personal service business, including massage, and the property owner is likewise restricted from allowing another personal service business at the subject property.  These agreements and injunctions often include time limits, which are specific to each case and each property owner.

PUBLIC SAFETY, FINANCE, AND STRATEGIC SUPPORT COMMITTEE
March 2, 2016
**Subject:  Massage Parlors Over-Concentration in Neighborhoods Evaluation**
Page 4

These measures have been effective in ensuring that a similar business cannot open at the same location where an illicit business was previously closed.

**Implementation of Recent Amendments to Chapter 6.44 (Massage Ordinance) of the San José Municipal Code**

The Police Department's Vice Unit is responsible for coordinating the implementation of the new Massage Ordinance (Chapter 6.44 of the San José Municipal Code).  Since the new ordinance took effect on January 16, 2016, the Vice Unit has implemented a few trial inspections based on the new laws.  The locations chosen were complaint-driven and those complaints were confirmed both through administrative and criminal investigations.  Two businesses have found to have inadequately licensed personnel and have since been shut down (Lux Spa, located at 93 N. 14th Street, and Heavenly Spa, at 1249 N. 1st Street).

Given the large number of massage establishments in San José, the Police Department anticipates a potential onslaught of permit requests.  To prepare, the Vice Unit has worked with the Permits Unit to establish the process for licensing massage businesses and owner/managers and is updating current permit applications to reflect the requirements of the massage ordinances.  The Vice Unit will be sending an outreach letter to all known massage businesses outlining the new requirements.  The letter will be translated into Spanish, Vietnamese, Chinese, Thai, and Korean.

The Police Department's website will be updated to include an explanation of the permitting process, as well as copies of the multilingual outreach materials.

The Police Department plans to implement this outreach by March 17, 2016, and begin processing massage permits on March 24, 2016.

Massage businesses will be given 60 days to apply for permits, providing adequate time to come into compliance.  Following that time period, the Police Department will work to inspect and address massage businesses as time and staffing allows, focusing first on non-permitted businesses.

Throughout this process, the Vice Unit will continue to investigate and pursue any case where Human Trafficking is reported, as well as locations suspected of engaging in non-Human Trafficking prostitution-related crimes.  Vice will also conduct administrative inspections to ensure massage therapists are certified by the California Massage Therapy Council.

**CONCLUSION**

As the Police Department is just beginning to implement the new ordinance, the Department is not recommending any additional changes to the Municipal Code at this time.  Time is needed to complete the outreach, the implementation of the permitting process, and the first wave of enforcement.  After all of this is completed, the Police Department will review progress and

PUBLIC SAFETY, FINANCE, AND STRATEGIC SUPPORT COMMITTEE
March 2, 2016
**Subject:  Massage Parlors Over-Concentration in Neighborhoods Evaluation**
Page 5

assess what additional measures may be needed to address the proliferation of massage
businesses within the City, including amendments to Chapter 6.44 and Title 20 of the San José
Municipal Code.

**COORDINATION**

This memo has been coordinated with the Planning, Building and Code Enforcement Department
and the City Attorney's Office.

/s/
Edgardo Garcia
Chief of Police

For questions, please contact SJPD Lieutenant Mike E. Sullivan at (408) 277-4041.

Attachment:  Map of San José Massage Businesses



# Attachment

# *San Jose Massage Businesses*



**City Council Districts**
- District 1
- District 2
- District 3
- District 4
- District 5
- District 6
- District 7
- District 8
- District 9
- District 10

● Massage Business Location

# EXHIBIT 10

# CODE ENFORCEMENT DIVISION

Draft 09/01/17



**Diane Buchanan**
CODE ENFORCEMENT OFFICIAL
5246
.15GF/.12CDBG/.38MH/.35SW

CE Insp II
VACANT
16880  1.0MM

**Mollie McLeod**
FIELD OPERATIONS
Division Manager
12748
.18GF/.58MH/.24CDBG

**Rachel Roberts**
SPECIAL OPERATIONS
Division Manager
12747  .12GF/.76SW/.03
OSA/.09 TRL

Network Tech II
Thanh Truong
14666
.50MH/.50SW

Planner III
Ed Schreiner
18319  .60SW/.40
PLNG FEES

**Debbie Morales**
CODE ENF. SUP.
MULTIPLE HOUSING
TIER I II
2167  1.0MH

**Roger Beaudoin**
CODE ENF. SUP.
MULTIPLE HOUSING
TIER III
18379  1.0MH

**Rita Tablado**
CODE ENF. SUP.
CDBG AREAS
5611  .75CDBG/.25GF

**Maria Diaz-Perez**
SR. SUP. ADMIN
CALL CTR
0387
.22GF/.25CDBG/.25SW/.2
8MH

**Joe Celio**, Acting
For TODD WALTRIP, - LOA
CODE ENF. SUP.
CITY-WIDE GEN.
CODE/TRL/OSA
2163
.69GF/.10OSA/.21TRL

**Oscar Carrillo**
CODE ENF. SUP.
GENERAL CODE
20007  1.0MH

**Joseph Hatfield**
CODE ENF SUP.
SPEC PRG/AC/VA/IPS
8457  1.0GF

**Brian Sousa**
SUP. ENV SVCS SPEC.
LOCAL ENF. AGENCY,
NCU
7031  1.0SW

CE Insp. I
Maria Miller
2169  1.0MH

CE Insp II
Gary Muraoka
6031  1.0MH

CE Insp I
VACANT
7266  1.0 CDBG

Staff Technician
Karla Caceres
18781
.60MH/.40SW/.10
TRL

CE Insp II
Kevin Smith
16828  1.0TRL

CE Insp II
Carolyn Slezak
6361  1.0GF

CE Insp II
Steven Kelly
15584 1.0BCC

Env Insp II
Bob Bates
6617  1.0SW

CE Insp. I
Randy Barlow
6030  1.0MH

CE Insp II
Angelica Garcia
2165  1.0MH

CE Insp I
VACANT
5515  1.0 CDBG

PRIN . OFC SPEC.
Regina Mancera
6334  1.0MH

CE Insp II
Al Morales
14929  1.0OSA

CE Insp I
Fernando Looez
7728  1.0GF (D2)

Bldg Insp Combo
Doug Perasso
19972  1.0BCC

Env Insp II
Sharon Clute
14616  1.0SW

CE Insp I
Bycha Buxton
15041  1.0MH

CE Insp II
Loren Due
6889  1.0MH

CE Insp II
Yma Garcia
7723  1.0 CDBG

SR. OFC SPEC.
Leslie M. Alvernaz
8315  1.0SW

CE Insp II
James Young
3586  1.0GF
(D10)

CE Insp II
Mike Tran
16879  1.0GF (D5)

CE Insp II
Steven Solorio
18439  1.0MM

Env Insp II
VACANT
7763  1.0SW

CE Insp II
Suttipong
Faiwongjun
7764  1.0MH

CE Insp I
VACANT
18375  1.0MH

CE Insp II
Servando Perez
2166  1.0 CDBG

SR. OFC SPEC.
Katherine Alvarado
17206
.23SW/.24GF/.25CD
BG/.28MH

CE Insp II
Brigitte Marquis
3581  1.0GF
(D8)

CE Insp II
Amber Zenk
6028  1.0GF
(D3,5,7)

CE Insp I
Hector Ortiz
6364  1.0VA-Fee

CE Insp II
Tracy Keifer
18377  1.0MH

CE Insp II
Gwen Lum-Duffy
2164  1.0MH

CE Insp I
Elizabeth Ortiz
4679  1.0 CDBG

SR. OFC SPEC.
Cecilia Salazar
7767  1.0SW

CE Insp I
Kamille Singh
2170  1.0GF

CE Insp II
Ed Galletti
18374  1.0GF (D7)

CE Insp II
Tony Gonzalez
8162  .35GF/.65GF

Temp and Retiree
Rehire
CE Insp II
Archdeacon (LEA)
Caudill (GC)
Schutz (MH)

CE Insp II
Rene Ayala
18378  1.0MH

CE Insp II
Marcelino
Guevara
5758  1.0MH

Proposed Delet
01/2018
CE Insp II
Vince Tovar
9046  1.0 IWM-NCU

SR. OFC SPEC.
VACANT
6604  1.0MH

CE Insp II
Jason Gibilisco
18373  1.0GF
(D3,6)

CE Insp I
Duncan Skinner
6616  1.0SW (D6)
Cond Use Permit

CE Insp II
William Gerry
19971  1.0 MASG

CE Insp II
Carolina
Sgambati
18376  1.0MH

CE Insp I
Jose Castaneda
12287  1.0MH

Proposed Delete
01/2018
CE Insp II
Mike Soda
12038  1.0 IWM-NCU

CE Insp II
Kevin
Hirabayashi
18372  1.0GF

CE Insp II
Manny Duarte
8517  1.0GF

CE Insp II
VACANT  (will be Greg
Peacock)
15042  1.0AC

Total FTE = 73
FTE Filled = 62
FTE Vacant = 9
Retiree Rehire = 3
Overstrength =
Temp/Pool =

CE Insp II
Greg Peacock
7730  1.0MH

will be Armando
Lara?

Proposed Delete
01/2018
CE Insp II
Dave Pieruccini
8126  1.0 IWM-NCU

CE Insp II
Joe Celio
7732  1.0GF (D8)

CE Insp II
Rick Arnaiz
2173  1.0GF
(D9,10)

CE Insp II
VACANT
6362  1.0VA Fee

CE Insp II
Phil Poole
3583  1.0MH

CE Insp II
VACANT
8283  1.0GF

will be Kenny Taylor?

will be Jerome
Calubaquib?

# CODE ENFORCEMENT DIVISION

09/01/17

CITY OF SAN JOSE
CAPITAL OF SILICON VALLEY

**Diane Buchanan**
CODE ENFORCEMENT OFFICIAL
5246
.15GF/.12CDBG/.38MH/.35SW

- CE Insp II, VACANT, 16880 1.0MM

## Mollie McLeod — FIELD OPERATIONS Division Manager, 12748, .18GF/.58MH/.24CDBG

- Network Tech II, Thanh Truong, 14666, .50MH/.50SW

### Debbie Morales — CODE ENF. SUP. MULTIPLE HOUSING TIER I II, 2167 1.0MH
- CE Insp. I, Maria Miller, 2169 1.0MH
- CE Insp. I, Randy Barlow, 6030 1.0MH
- CE Insp I, Bycha Buxton, 15041 1.0MH
- CE Insp II, Suttipong Faiwongjun, 7764 1.0MH
- CE Insp II, Tracy Keifer, 18377 1.0MH
- CE Insp II, Rene Ayala, 18378 1.0MH
- CE Insp II, Carolina Sgambati, 18376 1.0MH
- CE Insp I, Armando Lara, 7730 1.0MH
- CE Insp II, Phil Poole, 3583 1.0MH

### Roger Beaudoin — CODE ENF. SUP. MULTIPLE HOUSING TIER III, 18379 1.0MH
- CE Insp II, Gary Muraoka, 6031 1.0MH
- CE Insp II, Angelica Garcia, 2165 1.0MH
- CE Insp II, Loren Due, 6889 1.0MH
- CE Insp I, VACANT, 18375 1.0MH
- CE Insp II, Gwen Lum-Duffy, 2164 1.0MH
- CE Insp II, Marcelino Guevara, 5758 1.0MH
- CE Insp I, Jose Castaneda, 12287 1.0MH

### Rita Tablado — CODE ENF. SUP. CDBG AREAS, 5611 .75CDBG/.25GF
- CE Insp I, VACANT, 7266 1.0 CDBG
- CE Insp I, VACANT, 5515 1.0 CDBG
- CE Insp II, Yma Garcia, 7723 1.0 CDBG
- CE Insp II, Servando Perez, 2166 1.0 CDBG
- CE Insp I, Elizabeth Ortiz, 4679 1.0 CDBG
- Proposed Delete 01/2018, CE Insp II, Vince Tovar, 9046 1.0 IWM-NCU
- Proposed Delete 01/2018, CE Insp II, Mike Soda, 12038 1.0 IWM-NCU
- Proposed Delete 01/2018, CE Insp II, Dave Pieruccini, 8126 1.0 IWM-NCU

### Maria Diaz-Perez — SR. SUP. ADMIN CALL CTR, 0387, .22GF/.25CDBG/.25SW/.28MH
- Staff Technician, Karla Caceres, 18781, .60MH/.40SW/.10 TRL
- PRIN . OFC SPEC., Regina Mancera, 6334 1.0MH
- SR. OFC SPEC., Leslie M. Alvernaz, 8315 1.0SW
- SR. OFC SPEC., Katherine Alvarado, 17206, .23SW/.24GF/.25CDBG/.28MH
- SR. OFC SPEC., Cecilia Salazar, 7767 1.0SW
- SR. OFC SPEC., VACANT, 6604 1.0MH

## Rachel Roberts — SPECIAL OPERATIONS Division Manager, 12747 .12GF/.76SW/.03 OSA/.09 TRL

- Planner III, Ed Schreiner, 18319 .60SW/.40 PLNG FEES

### Joe Celio, Acting For TODD WALTRIP, - LOA — CODE ENF. SUP. CITY-WIDE GEN. CODE/TRL/OSA, 2163, .69GF/.10OSA/.21TRL
- CE Insp II, Kevin Smith, 16828 1.0TRL
- CE Insp II, Al Morales, 14929 1.0OSA
- CE Insp II, James Young, 3586 1.0GF (D10)
- CE Insp II, Brigitte Marquis, 3581 1.0GF (D8)
- CE Insp I, Kamille Singh, 2170 1.0GF
- CE Insp II, Jason Gibilisco, 18373 1.0GF (D3,6)
- CE Insp II, Kevin Hirabayashi, 18372 1.0GF
- CE Insp II, Joe Celio, 7732 1.0GF (D8)
- CE Insp II, Kenny Taylor, 8283 1.0GF

### Oscar Carillo — CODE ENF. SUP. GENERAL CODE, 20007 1.0MH
- CE Insp II, Carolyn Slezak, 6361 1.0GF
- CE Insp I, Fernando Lopez, 7728 1.0GF (D2)
- CE Insp II, Mike Tran, 16879 1.0GF (D5)
- CE Insp II, Amber Zenk, 6028 1.0GF (D3,5,7)
- CE Insp II, Ed Galletti, 18374 1.0GF (D7)
- CE Insp I, Duncan Skinner, 6616 1.0SW (D6), Cond Use Permit
- CE Insp II, Manny Duarte, 8517 1.0GF
- CE Insp II, Rick Arnaiz, 2173 1.0GF (D9,10)

### Joseph Hatfield — CODE ENF SUP. SPEC PRG/AC/VA/IPS, 8457 1.0GF
- CE Insp II, Steven Kelly, 15584 1.0BCC
- Bldg Insp Combo, Doug Perasso, 19972 1.0BCC
- CE Insp II, Steven Solorio, 18439 1.0MM
- CE Insp I, Hector Ortiz, 6364 1.0VA-Fee
- CE Insp II, Tony Gonzalez, 8162 .35GF/.65GF
- CE Insp II, William Gerry, 19971 1.0 MASG
- CE Insp II, Greg Peacock, 15042 1.0AC
- CE Insp II, VACANT, 6362 1.0VA Fee

### Brian Sousa — SUP. ENV SVCS SPEC. LOCAL ENF. AGENCY, NCU, 7031 1.0SW
- Env Insp II, Bob Bates, 6617 1.0SW
- Env Insp II, Sharon Clute, 14616 1.0SW
- Env Insp II, VACANT, 7763 1.0SW

Temp and Retiree Rehire
CE Insp II
Archdeacon (LEA)
Caudill (GC)
Schutz (MH)

Total FTE = 73
FTE Filled = 62
FTE Vacant = 9
Retiree Rehire = 3
Overstrength =
Temp/Pool =



# EXHIBIT 11

# CODE ENFORCEMENT DIVISION

08/27/2018





**Rachel Roberts, Acting**
DEPUTY DIRECTOR
5246
.15GF/.12CDBG/.38MH/
.35SW

**Network Tech II**
Thanh Truong
14666
.50MH/.50SW

**Mollie McLeod**
FIELD OPERATIONS
Division Manager
12748  .18GF/.62MH/
.20CDBG

**Vacant**
SPECIAL OPERATIONS
Division Manager
12747  .12GF/.76SW/.03
TRL/.09 OSA

**Planner III**
Ed Schreiner
18319  .60SW/.40
PLNG FEES

**Rene Ayala, Acting**
For Todd Waltrip
CODE ENF. SUP.
TIER I  II
2167  1.0MH

**Joe Celio**
CODE ENF. SUP.
MULTIPLE
HOUSING
TIER III
18379  1.0MH

**Rita Tabaldo**
CODE ENF.
SUP.CDBG AREAS
5611  .50CDBG/
.25MH/.25GF

**Maria Diaz-Perez**
SR. SUP. ADMIN
CALL CTR
0387  .22GF/
.25CDBG/.25SW/
.28MH

**Jason Gibilisco**
CODE ENF. SUP.CITY-
WIDE GEN. CODE/
TRL/OSA  2163
.69GF/.10OSA/.21TRL

**Oscar Carrillo**
CODE ENF. SUP.
GENERAL CODE
8457  1.0GF

**Joseph Hatfield**
CODE ENF SUP.
SPEC PRG/AC/VA/IPS
20007
.75MH/10TRL/
.10SW/.05OSA

**Bryan Sousa**
SUP. ENV SVCS
SPEC.
LOCAL ENF.
AGENCY, NCU
7031  1.0SW

**CE Insp. II**
Gary Muraoka
6031  1.0MH

**CE Insp II**
Marcelino
Guevara
5758  1.0MH

**CE Insp I**
VACANT
7266  1.0 CDBG

**STAFF TECH**
Karla Caceres
18781  .50MH/
.40SW/.10TRL

**CE Insp II**
Loren Due
16828  1.0TRL

**CE Insp II**
Carolyn Slezak
6361  1.0GF

**CE Insp II**
Ed Galetti
15584 1.08CC

**Env Insp II**
Paul Harden
6617  1.0SW

**CE Insp. I**
Randy Barlow
6030  1.0MH

**CE Insp I**
Jose Castaneda
12287  1.0MH

**CE Insp I**
VACANT
5515  1.0 CDBG

**PRIN . OFC SPEC.**
Regina Lizaola
6334  1.0MH

**CE Insp II**
James Young
14929  1.0OSA

**CE Insp I**
Fernando Looez
7728  1.0GF (D2)

**Bldg Insp Combo**
Doug Perasso
19972  1.08CC

**Env Insp II**
Sharon Clute
14616  1.0SW

**CE Insp II**
Rene Ayala
18378  1.0MH

**CE Insp II**
Carolina
Sgambati
18376  1.0MH

**CE Insp I**
VACANT
7723  1.0 CDBG

**SR. OFC SPEC.**
Leslie M. Alvernaz
8315  1.0SW

**CE Insp II**
VACANT
3586  1.0
(D10)

**CE Insp II**
Mike Tran
16879  1.0GF(D5)

**CE Insp II**
Steven Solorio
18439  1.0MH

**Env Insp II**
Nimrat Sandhu
7763  1.0SW

**CE Insp II**
Lara Walker
6889  1.0MH

**CE Insp II**
Maria Miller
2169  1.0MH

**CE Insp II**
Servando Perez
2166  1.0 CDBG

**SR. OFC SPEC.**
Katherine Alvarado
17206  .235W/
.24GF/.25CDBG/
.28MH

**CE Insp II**
Hector Ortiz
3581  1.0GF(D8)

**CE Insp II**
Amber Zenk
6028  1.0GF
(D3,5,7)

**CE Insp I**
Angel Esparza
6364  1.0VA-Fee

**CE Insp II**
Suttipong
Faiwongjun
7764  1.0MH

**CE Insp II**
VACANT
15041  1.0MH

**CE Insp II**
Elizabeth Ortiz
4679  .75 CDBG/
.25MH

**SR. OFC SPEC.**
Cecilia Salazar
7767  1.0SW

**CE Insp II**
VACANT
18373  1.0GF
(D3,6)

**CE Insp I**
VACANT
18374  1.0GF
(D7)

**CE Insp II**
Tony Gonzalez
8162  .35GF/
.65VDB

**CE Insp II**
Tracy Keifer
18377  1.0MH

**CE Insp II**
Mike Soda
7730  1.0MH

**SR. OFC SPEC.**
Marla Ayoung
6604  1.0MH

**CE Insp II**
Kevin Hirabayashi
18372  1.0GF

**CE Insp II**
Manny Duarte
8517  1.0GF

**CE Insp II**
William Gerry
19971  1.0 MASG

**CE Insp II**
Phil Poole
3583  1.0MH

**CE Insp II**
VACANT
18375  1.0 MH

**CE Insp II**
VACANT
7732  1.0GF (D8)

**CE Insp II**
Rick Arnaiz
2173  1.0GF
(D9,10)

**CE Insp II**
Angelica Garcia
2165  1.0MH

**CE Insp I**
Armando Lara
8283  1.0GF

**CE Insp II**
Jerome
Calubaquib
6362 1.0VA

**CE Insp II**
Gwen Lum-Duffy
2164  1.0MH

**CE Insp II**
Greg Peacock
15042 1.0AC

**CE Insp I**
Kamille Singh
2170  1.0GF

**CE Insp I**
Vince  Tovar
6616  1.0SW (D6)
Cond Use  Permit

**Temp and Retiree Rehire**
Archdeacon (LEA)
Caudill (GC)
Morales (MH)
Ochoa (LEA)

**Total FTE = 70**
FTE Filled = 61
FTE Vacant = 9
Retiree Rehire =4
Overstrength =
Temp/Pool =

# EXHIBIT 12

# CODE ENFORCEMENT DIVISION

12/03/2018



CITY OF SAN JOSE
CAPITAL OF SILICON VALLEY

**Rachel Roberts, Acting DEPUTY DIRECTOR**
5246
.15GF/.12CDBG/.38MH/.35SW

Joy Rodriguez
ANALYST
388 .23MH/.24GF/.25CDBG/.28SW

Karinna Ayala
STAFF SPECIALIST
18495 .10CDBG/.20HSG/.40MH

Network Tech II
Thanh Truong
14666
.50MH/.50SW

**Mollie McLeod**
FIELD OPERATIONS
Division Manager
12748 .18GF/.62MH/.20CDBG

**Rachel Roberts**
SPECIAL OPERATIONS
Division Manager
12747 .12GF/.76SW/.03 TRL/.09 OSA

Planner III
Ed Schreiner
18319 .60SW/.40 PLNG FEES

## Field Operations

**Rene Ayala, Acting**
CODE ENF. SUP.
TIER I II
2167 1.0MH

- CE Insp. II
Gary Muraoka
6031 1.0MH
- CE Insp. I
Randy Barlow
6030 1.0MH
- CE Insp II
Rene Ayala
18378 1.0MH
- CE Insp II
Lara Walker
6889 1.0MH
- CE Insp II
Suttipong
Faiwongjun
7764 1.0MH

**Joe Celio**
CODE ENF. SUP.
MULTIPLE HOUSING
TIER III
18379 1.0MH

- CE Insp II
Marcelino Guevara
5758 1.0MH
- CE Insp I
Jose Castaneda
12287 1.0MH
- CE Insp II
Carolina Sgambati
18376 1.0MH
- CE Insp II
Maria Miller
2169 1.0MH
- CE Insp II
VACANT
15041 1.0MH
- CE Insp II
Tracy Keifer
18377 1.0MH
- CE Insp II
Phil Poole
3583 1.0MH

**Rita Tabaldo**
CODE ENF.
SUP.CDBG AREAS
5611 .50CDBG/.25MH/.25GF

- CE Insp I
VACANT
7266 1.0 CDBG
- CE Insp I
VACANT
5515 1.0 CDBG
- CE Insp I
VACANT
7723 1.0 CDBG
- CE Insp II
Servando Perez
2166 1.0 CDBG
- CE Insp II
Elizabeth Ortiz
4679 .75 CDBG/.25MH
- CE Insp II
Mike Soda
7730 1.0MH
- CE Insp II
Rosana Carassco
18375 1.0MH
- CE Insp II
Angelica Garcia
2165 1.0MH
- CE Insp II
Gwen Lum-Duffy
2164 1.0MH

**Maria Diaz-Perez**
SR. SUP. ADMIN
CALL CTR
0387 .22GF/.25CDBG/.25SW/.28MH

- STAFF TECH
Karla Caceres
18781 .50MH/.40SW/.10TRL
- PRIN . OFC SPEC.
Regina Lizaola
6334 1.0MH
- SR. OFC SPEC.
Leslie M. Alvernaz
8315 1.0SW
- SR. OFCSPEC
Cecilia Horlick
17206 .23SW/.24GF/.25CDBG/.28MH
- SR. OFC SPEC.
VACANT
7767 1.0SW
- SR. OFC SPEC.
VACANT
6604 1.0MH

## Special Operations

**Jason Gibilisco**
CODE ENF. SUP.CITY-WIDE GEN. CODE/TRL/OSA 2163
.69GF/.10OSA/.21TRL

- CE Insp II
Loren Due
16828 1.0TRL
- CE Insp II
James Young
14929 1.0OSA
- CE Insp II
Donald Timoteo
3586 1.0GF (D10)
- CE Insp II
Hector Ortiz
3581 1.0GF(D8)
- CE Insp II
Roberto Franco
18373 1.0GF (D3,6)
- CE Insp II
Kevin Hirabayashi
18372 1.0GF
- CE Insp II
VACANT
7732 1.0GF (D8)
- CE Insp I
Armando Lara
8283 1.0GF
- CE Insp II
Greg Peacock
15042 1.0AC

**Oscar Carrillo**
CODE ENF. SUP.
GENERAL CODE
8457 1.0GF

- CE Insp II
Carolyn Slezak
6361 1.0GF
- CE Insp I
Fernando Looez
7728 1.0GF (D2)
- CE Insp II
Mike Tran
16879 1.0GF(D5)
- CE Insp II
Amber Zenk
6028 1.0GF (D3,5,7)
- CE Insp II
VACANT
18374 1.0GF (D7)
- CE Insp II
Manny Duarte
8517 1.0GF
- CE Insp II
Rick Arnaiz
2173 1.0GF (D9,10)
- CE Insp II
Jerome Calubaquib
6362 1.0VA
- CE Insp I
Kamille Singh
2170 1.0GF
- CE Insp II
Vince Tovar
6616 1.0SW (D6)
Cond Use Permit

RPA
2.0 GF

**Joseph Hatfield**
CODE ENF SUP.
SPEC PRG/AC/VA/IPS
20007LD
.75MH/10TRL/.10SW/.05OSA

- CE Insp II
Ed Galetti
15584 1.0BCC
- Bldg Insp Combo
Doug Perasso
19972 1.0BCC
- CE Insp II
Steven Solorio
18439 1.0MM
- CE Insp I
Angel Esparza
6364 1.0VA-Fee
- CE Insp II
Tony Gonzalez
8162 .35GF/.65VDB
- CE Insp II
William Gerry
19971 1.0 MASG

**Bryan Sousa**
SUP. ENV SVCS
SPEC.
LOCAL ENF.
AGENCY, NCU
7031 1.0SW

- Env Insp II
Paul Harden
6617 1.0SW
- Env Insp II
Sharon Clute
14616 1.0SW
- Env Insp II
VACANT
7763 1.0SW

Temp and Retiree Rehire
Archdeacon (LEA)
Buchanan (GC)
Caudill (GC)
Ochoa (LEA)

Peak Staffer
Flannagan (GC)

Total FTE = 72
FTE Filled = 61
FTE Vacant =11
Retiree Rehire =4
Overstrength =
Temp/Pool =1

# EXHIBIT 13

SJPD CASE #
16-312-9706
Dt #3177
Letter to W. Gerry

2054 Tully Rd
San Jose CA 95122

Ego Spa.

RECEIVED
OCT 25 2018
CITY OF SAN JOSE
PLANNING, BUILDING AND CODE ENFORCEMENT

95113-1905S9

SAN JOSE CA 95
24 OCT 2018 PM 4

To: William GERRY
200 East SANTA CLARA Street
San Jose CA 95113-1905

John Fitzgerald Kennedy
1917-1963

USA

RECEIVED

OCT 2 5 2018

CITY OF SAN JOSE
PLANNING, BUILDING AND CODE ENFORCEMENT

Dear William

did you want me put your picture Anywhere ???
I tell you need to come check this SPa gau Family with
Ceo SPa? I aphication over 3 month you not give Me yet
why you give to Ceo sPa 2493 ALvin Ave  ???
this sPa not only MASSage ok they have a luts young
girl they not have Licence MASSage I know ok
you need Come check and close them I know you
Can do it you very Strong... if you not want me
Send your picture anywhere... I wait you 1 month
if Ceo sPa Still open I will Send your picture
City Hall Policee Delarment and bym and
Some where SPa too make every SPa they
Know you have GirlFriend work MASSage
you Fuck her too I will write down you Fuck
Girl MASSage on your picture and Sent anywhere
do not make me get Mad ok I will do it...
I Just told you set down Ceo SPa easy For
you I ALReady Know you will do if you want
Hurry ok I will See you I want do it Soon....
you set it down many SPa already very easy For you
Me and your Girl Friend don't like Ceo SPa
all young girl they not MASSage they Just do extra
if you not trust one Sent Someone ask young Girl
do it and you Know

will Send any for Bashir Pine          ____ 800-535-6893
we Girl MASSage and Fuck Her I will Send Police Depterment SI To
MAKing every Shop they will Write down Sent City Hall about you

go check amd sea crown. tea sta 6669 & 44444 Ave
SAN JoSE CA 95121 I Kwon you Can close any Shop ALReady
you need close this STa if you not want me send it anywher

This SPa not only massage They do extra all young
not have licensc MASSAge



- (5) POSS ~~Cuc~~ PHAM.
  PER CEO SPA ↗
  FROM REJUVINATE.
  (5) DENIED HER WORKING
  AT CEO SPA.

# EXHIBIT 14

**From:** noreply@sanjoseca.gov [mailto:noreply@sanjoseca.gov]
**Sent:** Sunday, December 16, 2018 3:59 PM
**To:** Whistleblower Hotline <hotline@sanjoseca.gov>
**Subject:** Online Form Submittal: Whistleblower Hotline - Online Complaint Form

## Whistleblower Hotline - Online Complaint Form

Whistleblower Hotline - Online Complaint Form
*Fields marked with an asterisk (*) are required.*

| | |
|---|---|
| Date of Incident | September 2018 |
| Time of Incident | Daytime |
| Suspected Person(s) Involved | William Gerry, Code Enforcement |
| Description of Complaint | William Gerry is doing Code Enforcement for Massage businesses. He is violating city code of ethics and taking advantage of the fear people in the Asian community have of the government and police. He crossed the line several times when speaking with me, and I've heard from other owners similar stories. Here is what happened to me. -I submitted all paperwork for a massage permit. -On two different occasions William came to my store. My first encounter he came in, said who he was, and grabbed my hands to hold them to speak with me. This made me feel very uncomfortable and not professional. He also touched me several times on the shoulder and back with a rubbing and squeezing motion. He was there for an hour talking about personal things and very little business. He said it was ok for me to remain open during the permit process (later I found out this is not true and he |

should have told me to close during the process). The second time he came to the store he immediately started touching me again. He then asked to go to back room to talk. In the backroom he repeatedly asked for me to give him a massage even though I told him I don't do that. He said he would help me open as many stores as I want if I take care of him. He also told me a woman I had working for me was bad and I should fire her. He repeated that I could keep store open until I get permit. He again was there for about an hour. I felt very uncomfortable, afraid, and that he is not acting like professional city representative. I have photos and video(no audio unfortunately) of him touching me repeatedly. -I have heard from other massage owners that he asked for free massages. I also heard from some owners that did get their permit (even though they are known for being the bad kind of massage store the city is trying to get rid of), that they gave him envelope of money. This is common in China to pay government officials for favors, I didn't think it was acceptable in the USA. I encourage you to do a thorough investigation of William Gerry. As a tax payer and USA citizen, it makes me sad that someone like him is taking advantage of immigrants through fear, unwanted sexual advances, and bribes. Thank you for listening.

If you wish to remain anonymous, you may skip this section.

| First Name | *Field not completed.* |
| Last Name | *Field not completed.* |
| Phone Number | *Field not completed.* |
| Email Address | *Field not completed.* |

Email not displaying correctly? View it in your browser.