UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAI TRANG THI NGUYEN,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN JOSE, et al.,<br><br>Defendants. | Case No.  5:21-cv-00092-EJD<br><br>**ORDER GRANTING CITY OF SAN JOSE'S MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 30, 47 |

Plaintiff Dai Trang Thi Nguyen brings this action against Defendants City of San Jose ("the City"), William Gerry, and Does 1-100 for violation of her Fourteenth Amendment rights to due process and equal protection under 42 U.S.C. § 1983.  Compl., Dkt. No. 1.  The City now moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims against it based on municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).  The Court heard oral argument on the motion on August 21, 2021.  Dkt. No. 44.  Having considered the parties' written submissions and arguments made at the hearing, the Court GRANTS the City's motion to dismiss the claims against it with leave to amend.

## I.    BACKGROUND

### A.    Factual Background

This case concerns disturbing allegations of abuse of power and sexual coercion and assault by a City employee against Nguyen, a licensed massage therapist and naturalized U.S. citizen of Vietnamese descent with limited English skills.  Compl. ¶¶ 27-28.

#### 1.    The massage establishment ordinance

In 2016, the City passed Ordinance No. 29662 ("the Massage Ordinance"), which amended

United States District Court<br>Northern District of California

Chapter 6.44 of Title 6 of the San Jose Municipal Code, in order to combat prostitution, human trafficking, and other criminal or public health offenses occurring in the approximately 5,300 massage businesses within the City.  *Id.* ¶¶ 1, 24, 81-89, Ex. 7.  The Massage Ordinance imposed new requirements for massage businesses relating to licensing, permitting, and other municipal code requirements.  *Id.* ¶¶ 2, 24, 81-89, Ex. 7.  Section 6.44.520 of the Massage Ordinance expressly authorized the Police Department ("SJPD"), the Fire Department, and the Planning, Building and Code Enforcement ("PBCE") Department to inspect massage businesses and their records for determining compliance with the law.  *Id.* ¶ 88, Ex. 7 at 18.

In 2007, the City hired Gerry as a Code Enforcement Inspector in the Code Enforcement Division of the PBCE Department.  *Id.* ¶ 20.  According to the complaint, the City hired him without performing a background check, which would have revealed that he had declared bankruptcy in 1997.  *Id.* ¶ 21.  After the City passed the Massage Ordinance, in 2017, Gerry was designated as "Code Enforcement Inspector II—Massage" and charged with overseeing implementation and enforcement of the Massage Ordinance's new requirements in close collaboration with SJPD's Vice Unit.  *Id.* ¶¶ 25-26.  Gerry reported directly to Joseph Hatfield, supervisor of the Special Programs Group within the Special Operations Section of the Code Enforcement Division.  Hatfield in turn reported to Rachel Roberts, who served as Special Operations Division Manager and Acting Head Code Enforcement Official.  *Id.* ¶ 22.  Gerry was the sole Code Enforcement Inspector tasked with Massage Ordinance enforcement duties.  *Id.* ¶¶ 3, 25.

### 2.    Nguyen's dealings with Gerry

In November 2018, Nguyen opened a massage therapy spa business in San Jose.  *Id.* ¶¶ 28-29.  On December 20, 2018, Gerry issued a "City of San Jose – Compliance Order" on PBCE letterhead to the owner of the premises that Nguyen leased for her business, which the owner passed on to Nguyen.  *Id.* ¶ 30, Ex. 2.  The Compliance Order stated that Nguyen's spa was operating without a massage business permit and license as required by the Municipal Code and directed all massage operations to cease immediately.  *Id.* ¶ 30.

On January 8, 2019, Gerry visited Nguyen's spa for the first time. *Id.* ¶ 31. He drove a white City of San Jose vehicle bearing a San Jose municipal decal on its side, and he wore a white City identification placard visibly clipped to his belt. *Id.* ¶¶ 31-32. After being told that Nguyen was not available that day, Gerry sat next to two of her female employees and touched their backs under their blouses. *Id.* ¶ 32. After an uncomfortably long period, Gerry departed. One of the employees later told Nguyen that she was afraid of him and stated, "He thinks he can do whatever he wants to my body." *Id.*

Gerry returned to the spa the next day, again driving his City vehicle and wearing his City identification. *Id.* ¶ 33. Nguyen believed that he was police officer. *Id.* During his visit, Gerry identified unpermitted construction in the spa not shown on City plans and informed Nguyen that bringing the construction into compliance with the Municipal Code would cost $50,000. *Id.* ¶ 34. He then asked to discuss the matter privately with Nguyen. *Id.* ¶ 35. After going into the spa's employee break room, Gerry asked to see the entirety of Nguyen's back tattoo, and although surprised, she complied. He then handed her a City application packet for massage permits. *Id.*, Ex. 3. Based Gerry's statements to her, Nguyen believed that failure to cooperate with him would result in her spa's closure. *Id.* ¶ 36.

Gerry told Nguyen that she could keep her spa open if she paid him an upfront fee of $10,000 in cash, followed by monthly payments of $2,000. *Id.* ¶ 37. She understood that paying him meant that she would not have to comply with Municipal Code requirements. Gerry handwrote a payment schedule on the back of the permit application packet. *Id.*, Ex. 3.

The following morning, on January 10, 2019, Gerry returned to collect his initial payment of $10,000 before the spa opened and before any other employees were present. *Id.* ¶ 38. After Nguyen gave Gerry the $10,000, he forced her to perform oral sex on him. *Id.* ¶ 39. Nguyen believed that she had no choice but to comply with Gerry's demands because she believed that her safety, livelihood, massage licenses and permits, and legal status with the City depended on obeying him. *Id.* ¶ 42. Based on past negative experiences with law enforcement in Vietnam, Nguyen distrusted the police and government and believed that reporting Gerry's misconduct

Case No.: 5:21-cv-00092-EJD
ORDER GRANTING CITY OF SAN JOSE'S MOT. TO DISMISS
3

United States District Court
Northern District of California

United States District Court
Northern District of California

1  would only result in more problems for her. *Id.*

2       On January 11, 2019, Gerry contacted Nguyen and told her to keep the spa closed on

3  January 14, 2019, because SJPD was scheduled to inspect the spa that day. *Id.* ¶ 40.  Gerry had

4  advance notice of this inspection from the SJPD Vice Unit. *Id.*  Nguyen closed the spa on January

5  14. *Id.*

6       Per the payment schedule he wrote down for Nguyen, Gerry returned to spa on February 1,

7  2019 to collect his cash payment of $2,000. *Id.* ¶ 41.  He again forced Nguyen to perform oral sex

8  on him. *Id.*

9       On February 19, 2019, Gerry requested an earlier meeting with Nguyen than previously

10  agreed upon. *Id.* ¶ 43.  He proposed a new deal: in exchange for an additional $20,000, he would

11  arrange for the City to allow the spa to continue operating for three years without inspections by

12  removing the spa from the City's records.  Nguyen was shocked but collected the sum by

13  borrowing money and selling jewelry. *Id.*  The next day, Gerry returned to collect the $20,000 in

14  cash and again forced Nguyen to perform oral sex on him. *Id.* ¶ 44.

15       On February 26, 2019, Gerry texted Nguyen to warn her of an undercover sting operation

16  that SJPD planned for later that day. *Id.* ¶ 45.

17       On February 27, 2019, Gerry returned early for his March payment of $2,000. *Id.* ¶ 46.

18  After collecting the cash, he forced her to perform oral sex on him for the fourth time.

19       On March 19, 2019, Gerry informed Nguyen that he planned to come to the spa the next

20  day to take photos for her massage permit. *Id.* ¶ 47.  He falsely promised her that he would get her

21  the permit by April 15, 2019 and to remove the spa from the City's list of establishments to be

22  inspected.  When Gerry returned on March 20, 2019, Nguyen did not immediately give him the

23  $2,000 April cash payment. *Id.* ¶ 48.  Gerry then sexually assaulted Nguyen by groping and

24  vaginally raping her.

25       Thereafter, Gerry never returned to the spa and did not respond to Nguyen's increasingly

26  desperate texts. *Id.* ¶ 49.  Shortly after their last encounter, Gerry resigned from his position with

27  the City and moved to Texas. *Id.* ¶ 50.  After Gerry's departure, the City continued its code

28  Case No.: 5:21-cv-00092-EJD
ORDER GRANTING CITY OF SAN JOSE'S MOT. TO DISMISS
4

1    enforcement efforts against Nguyen's spa.  *Id.* ¶ 52.  Nguyen learned that Gerry had done nothing

2    to assist her.  *Id.*  On June 28, 2019, Nguyen met with the SJPD Vice Unit to discuss the closure of

3    her business, during which she informed them of Gerry's criminal acts.  *Id.* ¶ 54.  Nevertheless, on

4    September 15, 2019, Nguyen was forced to close the spa and vacate the premises.  *Id.* ¶ 55.

5         The loss of her business, the months-long financial struggle, and the emotional damage

6    from Gerry's sexual assaults had a devastating effect on Nguyen's mental health.  *Id.* ¶ 57.  On

7    July 15, 2020, Nguyen sought mental health treatment at a hospital and was transferred to another

8    facility for continued protective monitoring.  *Id.* ¶ 58.  When she told the emergency psychiatric

9    services nurses about what Gerry had done to her, they immediately informed SJPD.  *Id.* ¶ 59.

10   SJPD interviewed Nguyen and initiated an investigation.  *Id.* ¶¶ 60-62.

11        Gerry was arraigned on November 5, 2020 and currently remains in custody on $550,000

12   bail.  *Id.* ¶ 78.

13                            **3.    Gerry's other victims**

14        Nguyen was not Gerry's only victim.  On September 29, 2020, a 14-count felony

15   complaint issued out of the Superior Court for Santa Clara County against Gerry, alleging four

16   counts of forced oral copulation, one count of rape, seven counts of extortion under the color of

17   authority, and three counts of bribery by a government employee.  *Id.* ¶¶ 63-79, Exs. 1, 4.  The

18   felony complaint named two other Asian owners of San Jose massage businesses as victims, and

19   the SJPD investigation revealed yet more extortion and sexual assault victims.  *Id.*, Exs. 1, 4.  In

20   total, Gerry extorted $34,000 from Nguyen and $29,000 from two other victims named in the

21   felony complaint.  *Id.* ¶ 75.  $140,000 found in Gerry's personal accounts remains unexplained,

22   suggesting additional victims.  *Id.* ¶ 76.

23                            **4.    Allegations against the City**

24        Nguyen alleges multiple theories of *Monell* liability against the City.

25                               **a.    Express City policy**

26        First, Nguyen alleges that the City passed the Massage Ordinance to combat illicit

27   activities in massage businesses, and the language of the Massage Ordinance shows that it

28   Case No.: 5:21-cv-00092-EJD
     ORDER GRANTING CITY OF SAN JOSE'S MOT. TO DISMISS
                               5

United States District Court
Northern District of California

intended to use the Code Enforcement Division the forefront of its enforcement operations.  *Id.* ¶¶ 80-91.  She says that Gerry used the Massage Ordinance's enhanced enforcement protocols to make financial and sexual demands from vulnerable massage workers and owners who were the subject of his official outreach efforts.  Therefore, Nguyen concludes, Gerry engaged in tortious and criminal misconduct pursuant to express City policy.  *Id.*

### b.  Final policymaker

Second, Nguyen alleges that the City gave Gerry—as the sole Code Inspector enforcing the Massage Ordinance—final policymaking authority on many decisions, including: the frequency, necessity, timing, and manner of inspections of massage businesses; issuance of citations for administrative, building, and other municipal code violations to massage businesses; approval or denial of applications for massage business permits; and direct communication with massage business owners and operators regarding compliance with applicable codes and permit requirements.  *Id.* ¶¶ 92-95.  Gerry wielded this final policymaking authority on behalf of the City to develop a policy, custom, and practice of criminally exploiting Nguyen and other victims under color of law.  Specifically, this pattern consisted of: (1) visiting a massage business in person driving a City-issued vehicle, wearing his City badge, and introducing himself as a City Code Enforcement Inspector; (2) threatening or intimidating massage business owners with exaggerated cost estimates of code compliance, reports to the police, eviction, and business closure; (3) promising business owners/operators that cash payments would guarantee permit approval, advance notice of police inspections, or a finite period of no enforcement activity; and (4) sexually harassing and assaulting predominantly female Asian owners or employees of massage businesses after reminding them of the City's enforcement powers and potential negative outcomes for their businesses.  *Id.* ¶ 94.  Nguyen says that as the final policymaker, Gerry's acts can be imputed to the City.  *Id.* ¶ 95.

### c.  Practice of unsupervised solo massage enforcement

Third, Nguyen asserts that the City had a practice and custom of allowing a single male employee conduct outreach on his own with effectively no supervision or constraint.  *Id.* ¶¶ 96-97.

United States District Court
Northern District of California

1    During Gerry's approximately 703 total massage enforcement visits, he was accompanied by

2    another code inspector 5 times.  *Id.* ¶ 96.  Gerry's immediate supervisor, Hatfield, accompanied

3    Gerry twice and never conducted a follow-up visit to any spa to assess Gerry's performance.  *Id.* ¶

4    97.  Gerry's other immediate supervisor likewise never visited a massage business to check on his

5    work.  *Id.*

6    **d.      Deliberate indifference**

7          Fourth, Nguyen says that the City failed to adequately staff or fund its enhanced

8    enforcement program, leading directly to her injuries.  Nguyen alleges facts concerning SJPD's

9    lack of staff available to enforce the municipal code in the years before and after the Massage

10   Ordinance's passage.  *Id.* ¶¶ 100-104.  During the period when the City prioritized massage

11   business violations, the Vice Unit consisted of only one officer, and for a period of months in

12   2017, the Vice Unit had no officers assigned to it.  *Id.*  SJPD was therefore forced to rely on the

13   Code Enforcement Division and thus Gerry, the only Code Inspector assigned to enforce the

14   Massage Ordinance.  *Id.* ¶¶ 105-106.

15         Additionally, Nguyen describes the City's failure to fill the Code Enforcement Official

16   position between March 2018 and December 2019.  *Id.* ¶¶ 107-108.  The Code Enforcement

17   Official was in charge of supervising two Divisions consisting of eight Units, one of which was

18   the Special Programs Unit in which Gerry worked.  *Id.*  The City's failure to hire a permanent

19   Code Enforcement Official forced Roberts, Gerry's Division Supervisor, to fill in as Code

20   Enforcement Official—resulting in a failure to supervise Gerry.  *Id.* ¶¶ 109-111.  Nguyen also

21   alleges that the City could have used the salary savings from not hiring a Code Enforcement

22   Official to hire other massage code enforcement inspectors that would have worked directly with

23   Gerry and whose presence would have prevented him from engaging in criminal acts.  *Id.* ¶ 112.

24         In addition to a custom and practice of keeping its supervisors out of the field, Nguyen

25   says that the City also failed to supervise Gerry's written records of enforcement.  *Id.* ¶¶ 113-114.

26   Records for Nguyen's spa dating from August 15, 2012 to November 5, 2018 (when it was

27   assigned to Gerry) contain 50 entries regarding unpermitted construction, permit applications,

28   Case No.: 5:21-cv-00092-EJD

United States District Court
Northern District of California

1  building plans, and ultimately an expiration of a necessary work permit to bring the spa's physical

2  space into compliance on December 31, 2015.  *Id.* ¶ 115.  Gerry's first enforcement action on

3  Nguyen's spa occurred on December 20, 2018, but City records show that just 26 days later, on

4  January 15, 2019 at 1:01 p.m., he recommended that further enforcement action be closed because

5  he "was working with the responsible party."  *Id.*  Five minutes later, at 1:06 p.m., the violations

6  were formally listed as closed.  *Id.*  Nguyen says that Gerry's "correction" of all violations in 26

7  days after eight years of inaction by the City was suspicious and occurred without any apparent

8  supervision or approval by Hatfield or Roberts.  *Id.* ¶ 116.

9  **e.**     **Actual notice and knowledge**

10  Fifth, Nguyen alleges that the City had notice of Gerry's inappropriate actions.  *Id.* ¶¶ 117-

11  124.  On October 25, 2018, the Code Enforcement Division received an anonymous letter

12  addressed to Gerry.  *Id.* ¶ 117, Ex. 13.  The letter included photos of Gerry in a close embrace with

13  an Asian woman.  *Id.* ¶ 118, Ex. 13.  The author demanded that Gerry close a particular spa, and

14  that if he did not do so, the author would publicize the photos and the fact that Gerry was having a

15  sexual relationship with the woman pictured, who was later identified as a Vietnamese employee

16  of a spa where Gerry had conducted enforcement activities.  *Id.*  Roberts received the letter and

17  shared it and its contents with Gerry.  *Id.* ¶¶ 119.  Gerry identified himself and the woman but

18  claimed that such behavior was not uncommon and that he received physical affection from other

19  female massage business employees during his enforcement activities.  *Id.*  Instead of

20  investigating Gerry's behavior or taking any other kind of corrective action, Roberts apparently

21  viewed Gerry as a victim of attempted extortion and turned the letters over to SJPD to conduct a

22  criminal investigation into the letter's author.  *Id.* ¶¶ 119-120.  76 days later, Gerry would demand

23  $10,000 from Nguyen and force her to perform oral sex on him.

24  On December 16, 2018—three weeks after the delivery of the anonymous letter, and 25

25  days before Gerry sexually assaulted Nguyen—the City's "Whistleblower Hotline" received an

26  anonymous email.  *Id.* ¶¶ 121-122, Ex. 14.  The email author, who was apparently a massage

27  business owner, reported that Gerry provided incorrect information about the permitting process

28

and repeatedly touched the author in an inappropriate manner. *Id.*, Ex. 14.  The author also reported that other massage business owners received their permits after paying Gerry money, despite having a reputation for "being the bad kind of massage store the city is trying to get rid of." *Id.*, Ex. 14 at 2.  The author concluded, "I encourage you to do a thorough investigation of William Gerry.  As a tax payer and USA citizen, it makes me sad that someone like him is taking advantage of immigrants through fear, unwanted sexual advances, and bribes." *Id.*  The email was reviewed by a Senior Executive Analyst within the City's Office of Employee Relations and forwarded to SJPD. *Id.* ¶ 122.  Nguyen believes that Roberts also was aware of the email. *Id.*

Despite these two complaints, Nguyen says that the Code Enforcement Division did nothing whatsoever.  She alleges that the City's failure to conduct even a basic investigation constituted not only deliberate indifference, but "a conscious, knowing affirmative enablement of Gerry's past and ongoing misconduct." *Id.* ¶¶ 123-124.

### 5.     Racial discrimination

Finally, Nguyen alleges that Gerry intentionally targeted Asian massage business owners, operators, and masseuses for enforcement and abuse because of his sexual tastes and his purported belief that they would be less likely to report him due to language barriers and culturally based distrust of law enforcement. *Id.* ¶ 125.  The SJPD's criminal investigation confirmed that all of his victims have been identified as being of Asian ethnicity or national origin. *Id.*, Ex. 4.  Nguyen says that this constitutes intentional and purposeful discrimination that the City ratified and adopted through its conscious and knowing refusal to investigate or otherwise stop Gerry. *Id.* ¶¶ 127-128.

As a result of Gerry's unlawful conduct and the City's inaction, Nguyen suffers and continues to suffer from severe and ongoing emotional distress and anguish. *Id.* ¶ 129.

### B.     Procedural Background

Nguyen filed this action on January 6, 2021, asserting the following claims: (1) deprivation of her Fourteenth Amendment substantive due process rights to bodily integrity and property interest in her business in violation of 42 U.S.C. § 1983, against all Defendants; (2) deprivation of

United States District Court
Northern District of California

1    her Fourteenth Amendment right to equal protection in violation of 42 U.S.C. § 1983 against all

2    Defendants; and (3) municipal liability for the foregoing civil rights violations against the City.

3    Dkt. No. 1.  On February 23, 2021, Gerry filed a motion to stay the case pending the outcome of

4    the criminal prosecution against him, in which the City joined.  Dkt. Nos. 21, 22.  On March 8,

5    2021, the City filed the motion to dismiss the claims against it now before the Court.  Dkt. No. 30.

6    The Court stayed the action on August 17, 2021, indicating that it would rule on the City's motion.

7    Dkt. No. 45.  The criminal prosecution against Gerry remains ongoing.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with enough

specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which

it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  A

complaint which falls short of the Rule 8(a) standard may therefore be dismissed if it fails to state

a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  "Dismissal under Rule

12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts

to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097,

1104 (9th Cir. 2008).  When deciding whether to grant a motion to dismiss, the Court must accept

as true all "well pleaded factual allegations" and determine whether the allegations "plausibly give

rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The Court must also

construe the alleged facts in the light most favorable to the plaintiff.  *Love v. United States*, 915

F.2d 1242, 1245 (9th Cir. 1989).  While a complaint need not contain detailed factual allegations,

it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570).

A court generally may not consider any material beyond the pleadings when ruling on a

Rule 12(b)(6) motion.  If matters outside the pleadings are considered, "the motion must be treated

as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  However, documents

appended to the complaint, incorporated by reference in the complaint, or which properly are the

subject of judicial notice may be considered along with the complaint when deciding a Rule

12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Likewise, a court may consider matters that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Roca v. Wells Fargo Bank, N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153, at *3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R. Evid. 201(b)).

### III.    DISCUSSION

42 U.S.C. § 1983 provides a cause of action against any "person" who, under color of law, deprives any other person of rights, privileges, or immunities secured by the Constitution of the United States. *Monell*, 436 U.S. at 694. Although a municipality qualifies as a "person" under § 1983, a municipality cannot "be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Rather, "[l]iability may attach to a municipality only where the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official capacity.'" *Ulrich v. City & Cnty. of S.F.*, 308 F.3d 968, 984 (9th Cir. 2002) (quoting *Monell*, 436 U.S. at 694). As the Ninth Circuit recently cautioned, "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 603 (9th Cir. 2019).

A *Monell* claim for § 1983 liability against a public entity may be stated in one of three circumstances: 1) a municipal employee committed the alleged constitutional violation "pursuant to a formal governmental policy or longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity;" 2) the individual who committed the constitutional violation was an official with "final policy-making authority and that the challenged action itself thus constituted an act of official government policy;" or 3) the plaintiff may demonstrate that "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992). The plaintiff must plead a sufficient causal connection between the enforcement

Case No.: 5:21-cv-00092-EJD
ORDER GRANTING CITY OF SAN JOSE'S MOT. TO DISMISS

11

United States District Court
Northern District of California

of the municipal policy or practice and the violation of the federally protected right.  *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1078–79 (9th Cir. 2016) (quoting *Bd. of Cnty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404–05 (1997)).  The *Monell* violation must be pled with specificity as required under *Twombly* and *Iqbal*; without allegations of plausible fact supporting a policy or custom, a *Monell* claim should be dismissed.  *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1097 n.7 (E.D. Cal. 2012).

A municipality is liable under § 1983 only where its policies are "the moving force" behind the constitutional violation.  *Brown*, 520 U.S. at 405.  Indeed, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."  *Id.*; *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 391–92 (1989) (discussing the consequences of adopting a lesser standard of fault and causation, as doing so would "open municipalities to unprecedented liability under § 1983" and result in federal judges second-guessing municipal employee-training programs, implicating federalism issues).

The City contends that Nguyen has failed to state a viable claim under any of the three possible *Monell* routes of municipal liability.  Mot. at 6–13.  The Court addresses each in turn.

### A.  Policy, custom, or practice

Nguyen alleges City policies, customs, or practices of both action and inaction led to her constitutional violations.

### 1.  Custom or practice of unsupervised solo code enforcement

In the absence of an express official policy, a plaintiff may allege municipal liability through a custom or practice.  42 U.S.C. § 1983; *City of St. Louis v. Praprotnik*, 485 U.S. 485 U.S. 112, 127 (1988).  The particular custom or practice must be "so widespread" as to have the force of law.  *Brown*, 520 U.S. at 404; *Praprotnik*, 485 U.S. at 127 (noting custom or practice must be "permanent and well settled").  A plaintiff may not merely "identify a custom or policy, attributable to the municipality, that caused his injury.  [He] must also demonstrate that the custom or policy was adhered to with 'deliberate indifference to the constitutional rights of [others].'" *Castro*, 833 F.3d at 1076 (quoting *City of Canton*, 489 U.S. at 392).

United States District Court
Northern District of California

1
2
3
4
5

The parties do not dispute that the City did not have an express policy permitting Gerry to extort or sexually assault massage business owners or operators.  Rather, Nguyen alleges that the City had a custom or practice of unsupervised code enforcement by a solo male inspector.  Compl. ¶¶ 96-98; Plf. Dai Trang Thi Nguyen's Opp'n to Mot. to Dismiss Claims ("Opp'n"), Dkt. No. 37 at 16–17.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Nguyen's custom or practice argument is based on Gerry's acts and his acts alone.  The complaint does not contain allegations that other Code Inspectors conducted inspections alone, much less that they engaged in similar kinds of illegal activities while on duty.  *See Gillette*, 979 F.2d at 1349 (finding that no reasonable jury could have found plaintiff was terminated pursuant to a custom or practice where plaintiff adduced no evidence of a pattern of similar violations by defendants).  While Gerry's inspections may have been prolific during his two years enforcing the Massage Ordinance, the Court cannot plausibly infer a custom or practice from one employee's activities for two years.  There is a distinction between multiple bad acts by one employee versus bad acts by multiple employees—*Monell* covers the latter, not the former.  *City of Okla. City v. Tuttle*, 471 U.S. 808, 831 (1985) (Brennan, J., concurring) ("To infer the existence of a city policy from the isolated misconduct of a single, low-level officer . . . would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell.*").  "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). The Court cannot say under these facts that Gerry's tenure as the first and only Code Inspector assigned to enforce the Massage Ordinance created a permanent, well-settled, traditional way of enforcement.

24
25

Accordingly, the Court finds that as currently pled, Nguyen has not stated a claim for *Monell* liability based on a custom or practice of unsupervised solo code enforcement inspections.

26

### 2.      Policies of inaction or omission

27
28

Nguyen also asserts various policies of inaction or omission on the City's part.  Opp'n at

United States District Court
Northern District of California

13–16; Compl. ¶ 153.

### a.     Failure to conduct a background check on Gerry

Nguyen alleges that the City's failure to conduct a background check of Gerry before or after his hiring in 2007 or his assignment to enforce the Massage Ordinance would have revealed that he had filed for bankruptcy in 1997, which should have served as a "major red flag . . . regarding his fitness to be employed in an unsupervised capacity while yielding City-authorized enforcement powers over the permitting of small business operating primarily on a cash basis." Compl. ¶¶ 21, 153.  The City contends that this claim is foreclosed under the Supreme Court's decision in *Bd. of Cnty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397 (1997).  Def. City of San Jose's Reply to Plf.'s Opp'n to Mot. to Dismiss, Dkt. No. 39, at 13–14.

As Nguyen acknowledges, "a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged" in order to prevent municipal liability for a hiring decision from collapsing into *respondeat superior*.  Opp'n at 16 (quoting *Brown*, 520 U.S. at 410).  Nguyen's argument that "[t]he extortion and bribery that followed were an obvious link between the City's inadequate decision to hire Gerry for a job to which he was clearly not suited," Opp'n at 16, does not hold up under the timeline of facts.  The City did not initially hire Gerry to enforce the Massage Ordinance because the Massage Ordinance had not even been conceived of in 2007.  As to whether the City should have conducted a background check prior to assigning Gerry to Massage Ordinance enforcement in 2017, the Supreme Court has held that "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'"  *Brown*, 520 U.S. at 411.  Furthermore,

> the risk from a single instance of inadequate screening of an applicant's background is not 'obvious' in the abstract; rather, it depends upon the background of the applicant.  A lack of scrutiny may increase the likelihood that an unfit officer will be hired, and that the unfit officer will, when placed in a particular position to

Case No.: 5:21-cv-00092-EJD
ORDER GRANTING CITY OF SAN JOSE'S MOT. TO DISMISS

1

> affect the rights of citizens, act improperly. But that is only a
> generalized showing of risk. The fact that inadequate scrutiny of an
> applicant's background would make a violation of rights more *likely*
> cannot alone give rise to an inference that a policymaker's failure to
> scrutinize the record of a particular applicant produced a specific
> constitutional violation.

*Id.* at 410–11 (emphasis original). The Court cannot say that Gerry's acts of extortion and solicitation of bribery[1] were a "plainly obvious consequence" of a decades-old bankruptcy that a background check might have revealed. In other words, it is not plausible that Gerry would commit extortion and bribery simply because he had filed for bankruptcy 10 or 20 years prior. To find otherwise on these allegations would be to collapse municipal liability into *respondeat superior*. *Id.* at 415. Accordingly, the Court finds that Nguyen has not stated a claim for municipal liability based on the City's failure to conduct a background check on Gerry.

### b. Failure to supervise or discipline

A municipality can also be liable under § 1983 for failure to adequately train, supervise, or discipline its employees.[2] *City of Canton*, 489 U.S. at 387. In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights "may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A municipality's culpability for a deprivation of rights, however, is "at its most tenuous where a claim turns on a failure to train." *Id.* Municipal liability for failure to train attaches only where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388.

Similarly, a failure to supervise that is "sufficiently inadequate" may amount to "deliberate

---

[1] Nguyen does not argue that Gerry's sexual assaults upon her person were a plainly obvious consequence of the City's failure to adequately screen Gerry's employment application for bankruptcy. *See* Mot. at 16.

[2] Nguyen asserts in her motion that her claim is based on a failure to supervise or discipline, not a failure to train. Opp'n at 14–15. This distinction is immaterial in terms of applicable case law, as the Ninth Circuit has found "no principled reason to apply a different standard to inadequate supervision" claims than it does to inadequate training claims. *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989) (applying *City of Canton* to inadequate supervision claim).

United States District Court
Northern District of California

indifference." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Davis*, 869 F.2d at 1235). "[A] failure to supervise generally gives rise to § 1983 liability in situations where 'there is a history of widespread abuse . . . . [because] [o]nly then may knowledge be imputed to the supervisory personnel.'" *Manda v. Albin*, No. 5:19-cv-01947-EJD, 2019 WL 6311380, at *8 (N.D. Cal. Nov. 25, 2019) (quoting *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983)). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington*, 717 F.2d at 936. Mere negligence in training or supervision does not give rise to a *Monell* claim. *Dougherty*, 654 F.3d at 900.

The Ninth Circuit's decision in *Flores v. County of Los Angeles*, 758 F.3d 1154 (9th Cir. 2014) is directly on point. There, the plaintiff, who was sexually assaulted by a deputy sheriff, sued the county and its sheriff for failing to properly train deputies. The Ninth Circuit found allegations concerning another deputy who was ultimately convicted of sexual assaults seven years earlier inadequate to state a claim for municipal liability. These two isolated incidents were insufficient to put the county or sheriff on notice that the training was deficient in a particular respect, or that the absence of certain training would cause constitutional violations. *Id.* at 1159. *Flores* further held that such a situation did not fall into the "narrow range of circumstances" where a plaintiff would not need to plead a pattern of similar violations in order to show deliberate indifference, because "everyone is presumed to know the law" and that sexual assault or extortion are crimes. *Id.* at 1159–60. Thus, "[t]here is no basis from which to conclude that the unconstitutional consequences of failing to" supervise Code Inspectors to prevent them from committing sexual assault "are so patently obvious" that the City was deliberately indifferent. *Id.* at 1160. The Ninth Circuit concluded: "If the threat of prison time does not sufficiently deter sexual assault, it is not plausible to assume that a specific instruction not to commit sexual assault will provide such deterrence, and therefore failure to include such instruction does not constitute deliberate indifference absent a longstanding pattern of such criminal behavior." *Id.* As described above, Nguyen has alleged misconduct by a single employee, not a history or pattern of widespread abuse across the entire Code Enforcement Division. *See supra* Section III.A.1; *see*

Case No.: 5:21-cv-00092-EJD
ORDER GRANTING CITY OF SAN JOSE'S MOT. TO DISMISS
16

*also Brown*, 520 U.S. at 407 (stating that an inadequate training claim "necessarily intended to apply over time to multiple employees" can be the basis for municipal liability).  She has therefore not adequately pled a theory based on a failure to supervise or discipline.

Nguyen argues that she can allege liability based on a supervisor's failure to investigate a subordinate's misconduct.  Opp'n at 15 (citing *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)).  Nguyen is correct that she may pursue a supervisory liability claim, but that is not what she has pled in the complaint.  She has not asserted a claim against Roberts, Hatfield, or any other supervisor in their individual capacity for supervisory liability.  *Rodriguez v. Cnty. of L.A.*, 891 F.3d 776, 798 (9th Cir. 2018) ("[A] supervisor may be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." (internal citation and quotation marks omitted)); *Starr*, 652 F.3d at 1205–06 ("We have long permitted plaintiffs to hold supervisors individually liable in § 1983 suits when culpable action, or inaction, is directly attributed to them.").  The Court therefore expresses no opinions on whether the facts as currently pled state a claim for supervisory liability.

### a.    Failure to adequately staff Massage Ordinance enforcement

Nguyen argues that the City Council is liable as a final policymaker because it deliberately chose to understaff Massage Ordinance enforcement, but this "decision" is more properly read as a policy of inaction or omission.  *See* Opp'n at 22.

Here, Nguyen alleges that the City Council was aware that SJPD lacked sufficient staffing in the Vice Unit and thus had to rely on the Code Enforcement Division to enforce the Massage Ordinance against thousands of massage businesses.  Compl. ¶¶ 99-111.  Not only did the City Council not sufficiently staff the Vice Unit, she says, they also chose to fund only one Code Inspector position for Massage Ordinance enforcement.  Additionally, Nguyen says that by failing to fill the Code Enforcement Official's position, Gerry's Division Supervisor was forced to fill in temporarily and was thus unable to supervise him adequately.

This theory cannot succeed as pled because Nguyen has not pled facts demonstrating that

the City Council was on actual or constructive notice that funding only one Code Inspector for Massage Ordinance enforcement or that lacking a Code Enforcement Official would likely result in Gerry violating Nguyen's constitutional rights. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1145 (9th Cir. 2012). The Court therefore cannot say that the City Council made a deliberate choice to "countenance the possibility of a constitutional violation." *Id.* To accept a theory based on such attenuated events makes this theory more akin to *respondeat superior*. Moreover, the causal connection between funding additional Massage Ordinance enforcement positions or hiring a Code Enforcement Official—a supervisor three levels above Gerry—and prevention of his constitutional violations is too speculative and implausible. *See Castro*, 833 F.3d at 1078–79.

> **b.      Failure to adopt necessary policies to prevent constitutional violations**

Nguyen also posits a more general theory that the City failed to adopt policies necessary to prevent constitutional violations. She contends that, based on the Ninth Circuit's holdings in *Oviatt v. Pierce*, 954 F.2d 1470 (9th Cir. 1992) and *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128 (9th Cir. 2012), the City could have adopted simple and easy policies such as providing Gerry a partner, having his supervisors randomly attend his scheduled inspections, contacting business owners after his visits to follow up on his performance, investigating the complaints against him, and scrutinizing his written enforcement logs. Mot. at 15–16.

"A policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations." *Tsao*, 698 F.3d at 1143. A plaintiff seeking to allege municipal liability based on a policy of inaction or omission must plead (1) a constitutional violation, (2) the policy of inaction or omission amounts to deliberate indifference to the plaintiff's constitutional right, and (3) that the policy caused the violation in the sense that the municipality could have prevented the violation with the appropriate policy. *Id.* "To show deliberate indifference, [the plaintiff] must demonstrate that [the defendant] was on actual or constructive notice that its omission would likely result in a constitutional violation." *Id.* at 1145. A policy of omission can lead to municipal liability "only if the omission 'reflects a deliberate or conscious

1    choice' to countenance the possibility of a constitutional violation." *Id.* (quoting *Gibson*, 290 F.3d

2    at 1194; internal quotation marks omitted).

3        Here, Nguyen has alleged that the City had actual notice that Gerry would likely commit

4    constitutional violations based on the anonymous letter and the whistleblower email.  Compl. ¶¶

5    117-124.  The contents of the anonymous letter do indicate that Gerry was engaging in improper

6    activities—permitting a spa to continue operating despite lacking a license and engaging in a

7    sexual relationship with a massage worker—but it does not necessarily suggest that Gerry would

8    take the next step and extort bribes from or sexually assault others.  The whistleblower email, on

9    the other hand, far more clearly asserts that Gerry was demanding bribes and sexually harassing

10   massage business owners.  Nguyen alleges that the email was received and reviewed by a Senior

11   Executive Analyst within the City's Office of Employee Relations and forwarded on the SJPD,

12   and that on information and belief, the email was also provided to Roberts.  *Id.* ¶ 122.  However,

13   as discussed in greater detail below, Roberts is not a final policymaker for the City, and there are

14   no allegations that the City Council or City Manager was aware of the email complaint and chose

15   to do nothing.  This difference is what distinguishes Nguyen's allegations from those in *Oviatt*,

16   where a county sheriff, as the final policymaker for the county detention center, knew that certain

17   detainees were not timely arraigned but nevertheless decided to take no action to remedy that

18   problem even after several meetings to discuss it.  *Oviatt*, 954 F.2d at 1477.  Nguyen currently

19   pleads only a *respondeat superior* theory of liability.

20       In sum, the Court finds that Nguyen has not alleged a policy, custom, or practice that

21   would support municipal liability.

22       **B.    Final Policymakers' Decisions**

23       Whether a particular official has final policymaking authority is a question of state law.

24   *McMillian v. Monroe Cnty.*, 520 U.S. 781, 786 (1997); *Cortez v. Cnty. of L.A.*, 294 F.3d 1186,

25   1189 (9th Cir. 2001).  To determine who has final policymaking authority, the Court looks to the

26   City's charter and the ordinances enacted pursuant to it.  *Praprotnik*, 485 U.S. at 123–36; *Hyland

27   v. Wonder*, 117 F.3d 405, 414 (9th Cir. 1997) ("[U]nder California law, a city's Charter

28   Case No.: 5:21-cv-00092-EJD

United States District Court
Northern District of California

determines municipal affairs such as personnel matters.").  The parties agree that the City Council and City Manager are final policymakers under the City's charter.  Mot. at 7; Opp'n at 18, 22; *see* San Jose, Cal. City Charter §§ 400, 701.  Nguyen asserts that in addition to the City Council and City Manager, Roberts and Gerry were also final policymakers whose acts created *Monell* liability.

### 1.     Roberts

Nguyen contends the City Manager delegated his final policymaking authority over the supervision and discipline of employees in the Code Enforcement Division to Roberts in her capacity as Code Enforcement Official.  Mot. at 18–20.  Nguyen says that Roberts exercised her final policymaking authority when she disregarded the anonymous complaint about Gerry and chose to protect him instead.

To state a *Monell* claim through delegation, a plaintiff must plead that an official with policymaking authority delegated "final policymaking authority over the decisions at issue" as opposed to merely delegating discretion to act.  *Ulrich*, 308 F.3d at 985; *Christie v. Iopa*, 176 F.3d 1231, 1236 (9th Cir. 1999) (citing cases).  Here, Nguyen has not pointed to any provision in the City Charter or any City ordinance showing that the City Manager expressly delegated decisions about the supervision and discipline of Code Enforcement Division employees to the Code Enforcement Official.  Nguyen only cites to allegations in the complaint concerning Roberts's assignment to that position and her supervisory authority over Gerry.  Mot. at 19 (citing Compl. ¶¶ 22, 23, 110).  Those allegations are not sufficient to demonstrate delegation.

 "An official may be found to have been delegated final policymaking authority where the official's discretionary decision is [not] constrained by policies not of that official's making and . . . [not] subject to review by the municipality's authorized policymakers."  *Ulrich*, 308 F.3d at 986 (quoting *Christie* 176 F.3d at 1236–37) (internal quotation marks omitted).  Nguyen argues that Roberts's actions over employment decisions are not reviewable by the City Manager and not overseen by the City Manager in practice.  The problem with this argument is that there are no allegations in the complaint that address this issue, nor has Nguyen pointed to any.

1    Accordingly, the Court finds that Nguyen has not adequately pled that Roberts is a final

2    policymaker whose actions created municipal liability.

3    **2.    Gerry**

4    Nguyen provides two arguments for why Gerry should be considered a final policymaker:

5    (1) the City Council delegated such final policymaking authority to him, and (2) he was a de facto

6    final policymaker as the City's sole Code Inspector charged with enforcing the Massage

7    Ordinance.  Opp'n at 20–22.

8    As to the first argument, Nguyen asserts that the City Council delegated enforcement of the

9    Massage Ordinance to the Code Enforcement Division and the Chief of Police and his or her

10   authorized agents, and that Gerry was both a Code Enforcement Division employee and an SJPD

11   agent.  Opp'n at 20–21 (citing Compl. ¶¶ 88, 90, Exs. 3 and 7).  Thus, Gerry exercised final

12   policymaking authority over inspections, issuance of compliance orders, citations and exceptions

13   for code violations, approval or denial of applications for massage permits, and communicating

14   directly with massage business owners and operators.  Opp'n at 20–22.

15   As discussed above, to state a *Monell* claim through delegation, a plaintiff must plead that

16   an official with policymaking authority delegated "final policymaking authority over the decisions

17   at issue" as opposed to merely delegating discretion to act.  *Ulrich*, 308 F.3d at 985; *Christie*, 176

18   F.3d at 1236 (citing cases).  The Court disagrees with Nguyen that the Massage Ordinance

19   necessarily delegated final policymaking authority to Gerry.  Section 6.44.520 of the Massage

20   Ordinance states in full:

21       The City officials charged with investigating and enforcing this
         Chapter and the Municipal Code, including, but not limited to, the
22       Police Department, Fire Department, and Planning, Building and
         Code Enforcement Department, are authorized to inspect the
23       premises and all business records of each massage business during
         business hours for the purposes of determining compliance with the
24       provisions of this Chapter.

25   Compl., Ex. 7 at 18.  This language does not suggest a wholesale delegation of all final

26   policymaking authority to SJPD, the Fire Department, or the Code Enforcement Department.

27   Rather, it suggests the delegation of discretion over the enforcement of the Massage Ordinance.

28   Case No.: 5:21-cv-00092-EJD
     ORDER GRANTING CITY OF SAN JOSE'S MOT. TO DISMISS
     21

United States District Court
Northern District of California

1    *Cf. Pembaur*, 475 U.S. at 484–85 (finding that Ohio law providing that county officers may

2    "require . . . instructions from [the county prosecutor] in matters connected with their official

3    duties" delegated authority to county prosecutor as the final decisionmaker in ordering deputy

4    sheriffs to enter plaintiff's clinic, resulting in municipal liability for the county).

5         The Ninth Circuit and the Supreme Court have distinguished between delegation of

6    discretion to act and delegation of policymaking authority.  Municipal liability does not attach

7    unless "the decision maker possesses final authority to establish municipal policy with respect to

8    the action ordered.  The fact that a particular official—even a policy-making official—has

9    discretion in the exercise of particular functions does not, without more, give rise to municipal

10   liability based on an exercise of that discretion."  *Pembaur*, 475 U.S. at 481–82.  "If the mere

11   exercise of discretion by an employee could give rise to a constitutional violation, the result would

12   be indistinguishable from *respondeat superior* liability."  *Praprotnik*, 485 U.S. at 126.  The most

13   Nguyen has alleged here is a delegation of discretion.  The fact that Gerry "possessed the

14   discretionary authority" over inspections, citations, permitting, and the like "is not sufficient to

15   establish a basis for municipal liability."  *Gillette*, 979 F.2d at 1350.

16        To determine whether the City Council delegated discretion to act or delegated final

17   policymaking authority, the Court must "consider whether the official's discretionary decision is

18   'constrained by policies not of that official's making' and whether the official's decision is

19   'subject to review by the municipality's authorized policymakers.'"  *Christie*, 176 F.3d at 1236–37

20   (quoting *Praprotnik*, 485 U.S. at 127).  Here, Nguyen pleads that the City Council passed the

21   Massage Ordinance and therefore set the policy for how massage businesses were to be regulated

22   and allowed to operate.  Compl. ¶¶ 24, 81-90.  Gerry's enforcement activities were intended to be

23   in furtherance of the Massage Ordinance, a policy that Nguyen acknowledges he did not himself

24   make.  Compl., Ex. 7 at 18.  That Gerry chose to abuse his enforcement power and, in some cases,

25   disregard provisions of the Massage Ordinance for his own benefit does not mean that his

26   discretionary decisions were not constrained by policies not of his making.  Other allegations in

27   the complaint indicate that his decisions were subject to review.  *See, e.g.*, Compl. ¶¶ 114-116

28   Case No.: 5:21-cv-00092-EJD
     ORDER GRANTING CITY OF SAN JOSE'S MOT. TO DISMISS
     22

United States District Court
Northern District of California

1  (discussing Roberts and Hatfield's failure to review Gerry's written records of enforcement).  The

2  Court finds that Gerry was akin to a police officer, who is not a final policymaker in analogous

3  situations.  *See Trevino*, 99 F.3d at 920 (holding that police chief may be considered final

4  policymaker in some circumstances, but individual police officers who shot plaintiff's father were

5  not officials with final policymaking authority); *see also* Compl. ¶¶ 26, 33, 35 (pleading that

6  Nguyen believed Gerry to be a police officer).

7          Alternatively, Nguyen argues that Gerry was a de facto final policymaker as the City's sole

8  Code Inspector charged with enforcing the Massage Ordinance.  Opp'n at 22.  Citing *Lytle v. Carl*,

9  382 F.3d 978 (9th Cir. 2004), Nguyen argues that because Gerry worked with no oversight or

10  review, in practice, his decisions had the force and effect of law.  In *Lytle*, the Ninth Circuit

11  affirmed the district court's ruling that a school district assistant superintendent was a final

12  policymaker with respect to employee discipline because evidence introduced at trial

13  demonstrated that the school board had actively renounced its authority over employee discipline,

14  and thus the assistant superintendent's disciplinary decisions were not subject to review.  382 F.3d

15  at 982–86.  Nguyen's allegations do not mirror the facts of *Lytle*—no express relinquishment of

16  final policymaking authority occurred here.  The Court does not read *Lytle* as altering the standard

17  for pleading final policymaking authority.  Applying *Lytle* in this manner is also at odds with the

18  Supreme Court's decision in *Praprotnik*:

19              [I]t is self-evident that official policies can only be adopted by those
                legally charged with doing so.  We are aware of nothing in § 1983 or
20              its legislative history . . . that would support the notion that
                unauthorized acts of subordinate employees *are* official policies
21              because they may have the "potential" to become official policies or
                may be "perceived as" official policies.
22

23  *Praprotnik*, 485 U.S. at 125 n.2 (emphasis original).

24          Accordingly, the Court finds that Nguyen has not adequately pled that Roberts or Gerry

25  were final policymakers.

26          **C.      Ratification**

27          A municipality can be liable for an "isolated constitutional violation" if the final

28  Case No.: 5:21-cv-00092-EJD
    ORDER GRANTING CITY OF SAN JOSE'S MOT. TO DISMISS
    23

United States District Court
Northern District of California

United States District Court
Northern District of California

1  policymaker "ratified" a subordinate's actions. *Christie*, 176 F.3d at 1238.  Ordinarily, ratification

2  is a jury question, but it must be adequately pled to survive a motion to dismiss. *Id.* at 1238–39.

3  A policymaker's knowledge of an unconstitutional act does not, by itself constitute ratification.

4  *Id.* at 1239.  The plaintiff must show the policymaker approved of the subordinate's act; mere

5  refusal to overrule a subordinate's completed act does not constitute approval. *Id.*; *Weisbuch v.*

6  *Cnty. of L.A.*, 119 F.3d 778, 781 (9th Cir. 1997) ("To hold cities liable under section 1983

7  whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates

8  would simply smuggle *respondeat superior* liability into section 1983.").  Knowledge by the

9  policymakers must be shown before the constitutional violations ceased. *Christie*, 176 F.3d at

10  1239.

11       Nguyen asserts that she has adequately pled a ratification theory based on Roberts's failure

12  to investigate the anonymous complaints against Gerry and instead protecting him. Mot. at 22–23.

13  The complaint as currently pled does not state a theory of ratification because Roberts is not a

14  final policymaker for the reasons described above. *See supra* Section III.B.3.b.  Even if she were

15  a final policymaker, Nguyen has only alleged Roberts's knowledge that Gerry might have violated

16  someone else's constitutional rights in the past; she has not alleged that Roberts knew that Gerry

17  had violated Nguyen's rights, much less affirmatively approved of it.  Knowledge by itself does

18  not constitute ratification, and a mere refusal to overrule a subordinate's completed act does not

19  constitute approval. *Christie*, 176 F.3d at 1238–39; *see also Gillette*, 979 F.2d at 1348 (finding

20  City Manager's inaction in plaintiff's case did not amount to ratification).  Moreover, "[t]he mere

21  failure to discipline [subordinates] does not amount to ratification of their allegedly

22  unconstitutional actions." *Sheehan v. City and Cnty. of S.F.*, 743 F.3d 1211, 1231 (9th Cir. 2014),

23  *rev'd in part on other grounds, cert. dismissed in part sub nom. City and Cnty. of S.F., Cal. v.*

24  *Sheehan*, 575 U.S. 600 (2015); *see also Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1253

25  (9th Cir. 2010), *overruled on other grounds by Castro v. Cnty. of L.A.*, 833 F.3d 1060 (9th Cir.

26  2016).

27       Accordingly, the Court finds that Nguyen has not adequately pled a theory of ratification.

28  Case No.: 5:21-cv-00092-EJD
ORDER GRANTING CITY OF SAN JOSE'S MOT. TO DISMISS

**IV.     CONCLUSION**

For the foregoing reasons, the Court GRANTS the City's motion to dismiss.  Because the Court cannot say that amendment would be futile, it grants Nguyen leave to amend. Nguyen's administrative motion to file supplemental material (Dkt. No. 47) is therefore DENIED as moot.

Nguyen shall file her amended complaint **within 30 days of the Court's order lifting the stay**.  The case remains stayed until further order of the Court.

**IT IS SO ORDERED.**

Dated: March 29, 2022

EDWARD J. DAVILA
United States District Judge