1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7

8    DAI TRANG THI NGUYEN,

Plaintiff,

9

10        v.

11    CITY OF SAN JOSE, et al.,

Defendants.

12

Case No.   5:21-cv-00092-EJD

**ORDER DENYING MOTION TO DISMISS**

Re: Dkt. No. 93

13        Plaintiff, Dai Trang Thi Nguyen ("Plaintiff"), brings this action pursuant to 42 U.S.C. §

14    1983 against Defendant City of San Jose ("City") and individual Defendants Joseph Hatfield

15    ("Hatfield"), Rachel Roberts ("Roberts"), and Edgardo Garcia ("Garcia") (collectively,

16    "Supervisor Defendants") (all together with the City, "Defendants"), as well as individual

17    Defendant William Gerry ("Gerry"), alleging that Gerry violated her constitutional rights by

18    sexually assaulting and extorting Plaintiff during his code enforcement inspections of her massage

19    business, and alleging that the City and Supervisor Defendants allowed Gerry's conduct to occur

20    in deliberate indifference to Plaintiff's constitutional rights.  *See* Second Am. Compl. ("SAC"),

21    ECF No. 93.

22        Before the Court is Defendants' third motion to dismiss.  Mot. to Dismiss ("Mot."), ECF

23    No. 93.  Plaintiff filed an opposition, and Defendants filed a reply.  Opp'n to Mot. ("Opp'n"), ECF

24    No. 96; Reply in Supp. of Mot. ("Reply"), ECF No. 98.

25        Upon careful review of the relevant documents, the Court finds this matter suitable for

26    decision without oral argument pursuant to Local Rule 7-1(b).  For the following reasons, the

27    Court **DENIES** Defendants' motion to dismiss.

28    Case No.: 5:21-cv-00092-EJD
ORDER DENYING MOTION TO DISMISS
1

# I.      BACKGROUND

## A.      Factual Background

The Court previously summarized Plaintiff's factual allegations in its prior orders, and those allegations remain largely unchanged.  *See* Order Granting with Leave to Amend Mot. to Dismiss ("First MTD Order"), ECF No. 52; Order Granting Mot. to Dismiss with Leave to Amend ("Second MTD Order"), ECF No. 89.  The Court will therefore only discuss the allegations relevant to the present motion.

Plaintiff alleges that Gerry, former code enforcement inspector employed by the City's Code Enforcement Division, sexually assaulted and extorted Plaintiff, a massage business owner and operator of Vietnamese descent with limited English language, during his code enforcement inspections of her business.  *See* SAC  ¶¶ 9, 17, 70.  Plaintiff also alleges that the City allowed this to happen by implementing a custom or practice of sending unsupervised solo male code enforcement inspectors to inspect massage businesses knowing the risk that this custom or practice may lead to violations of the often-vulnerable employees and owners' constitutional rights.  *See, e.g., id.* ¶ 4, 10, 33, 62–63.  Plaintiff further alleges that Hatfield and Roberts, Code Enforcement Division supervisors, as well as Garcia, Chief of Police at the San Jose Police Department ("SJPD"), allowed Gerry to conduct unsupervised solo code enforcement inspections knowing the risk that Gerry may violate Plaintiff's constitutional rights.  *See, e.g., id* ¶¶ 38, 64–66.

### 1.      Prior Complaints About Gerry

Prior to the conduct alleged here, Plaintiff alleges that Defendants received two complaints regarding Gerry.  On October 25, 2018, shortly after Gerry began acting as the City's sole code enforcement inspector of massage businesses, Defendant Roberts in the Code Enforcement Division received an anonymous letter ("Anonymous Letter") addressed to Gerry that included photos of Gerry in a close embrace with an Asian woman who was later identified as an employee of a massage business that Gerry had inspected.  *Id.* ¶¶ 43, 44.  The letter threatened to publicize the photos of Gerry and expose the fact that he was having intimate relationship with the woman pictured unless Gerry closed a competitor's massage business.  *Id.*  Defendant Roberts gave the

Anonymous Letter to the SJPD to conduct a criminal investigation of the Anonymous Letter's author, not Gerry. *Id.* ¶ 46. Plaintiff alleges that neither Roberts nor the City investigated Gerry for the conduct alleged in the Anonymous Letter. *Id.*

A few months later, on December 16, 2018, the City's "Whistleblower Hotline" received an anonymous email complaint ("Whistleblower Complaint") from a female owner of a massage business accusing Gerry of preying on female Asian massage workers. *Id.* ¶ 47. According to the Whistleblower Complaint, Gerry twice came to the author's business while she was attempting to obtain a permit and misused his authority to sexually assault her and propose quid pro quo arrangements. *Id.* The arrangements involved exchanging sex and/or money for the issuance of massage permits. *Id.* The email also stated that Gerry accepted bribes in exchange for issuing permits to other massage businesses that engaged in the illicit sex trade. *Id.*

Plaintiff newly alleges that the City and all Supervisor Defendants knew of this Whistleblower Complaint because, pursuant to the City's Administrative Policy Manual titled "Whistleblower Hotline Policy," this email would have been sent to all Supervisor Defendants. *Id.* ¶ 57, 58. Section 1.28 of the Whistleblower Hotline Policy, which was in effect at the time of the Whistleblower Complaint, specifically states that criminal allegations sent through the whistleblower hotline are referred to the SJPD and the accused employee's department is notified, unless it may interfere with a police investigation. *Id.* Based on this policy, Plaintiff alleges that Garcia would have received the Whistleblower Complaint when forwarded to the SJPD, and Roberts and Hatfield would have received the Whistleblower Complaint as supervisors in the Code Enforcement Division. *Id.* ¶ 63. Despite this knowledge, Plaintiff alleges that the City and Supervisor Defendants did not investigate any of the allegations contained in the Whistleblower Complaint. *Id.* ¶¶ 63, 64.

### 2. Gerry's Conduct Toward Plaintiff

Gerry first visited Plaintiff's massage business, Soft Touch Spa ("Spa"), on January 8, 2019, about one month after the Whistleblower Complaint, at which time he wore a visible City identification badge and drove a white City vehicle bearing the San Jose municipal decals on its

1   doors. *Id.* ¶ 74. Plaintiff was not at the Spa at that time, but Gerry still proceeded to sit in

2   between two female employees on the couch and massage each woman's back under their blouses

3   before leaving. *Id.*

4       Gerry visited again the next day while Plaintiff was present, again wearing his badge and

5   driving his City vehicle, and inspected the premise with Plaintiff that day. *Id.* ¶ 75. Gerry

6   informed Plaintiff that she would need to spend over $50,000 in construction costs to bring the

7   business into compliance with the local massage ordinance, or he could keep the business open for

8   her if she paid him an upfront fee of $10,000 in cash, followed by monthly payments of $2,000.

9   *Id.* Plaintiff understood that these payments would fulfil her obligation to comply with City code

10  requirements. *Id.* Gerry also asked to speak to Plaintiff privately, and once alone, asked to see a

11  tattoo on Plaintiff's back. *Id.* Believing Gerry was a police officer, Plaintiff complied. *Id.*

12  Plaintiff believed her failure to comply could result in the closure of the Spa. *Id.*

13      Gerry returned the next day, on January 10, 2019, to collect his first extortion payment of

14  $10,000. *Id.* at ¶ 76. After receiving the $10,000 in cash, Gerry forced Plaintiff to perform oral

15  sex on him. *Id.* Gerry returned to the business on three more occasions in February to collect a

16  total of $24,000 more in extortion payments. *Id.* ¶¶ 79, 81, 84. Gerry also made multiple calls to

17  Plaintiff warning her to keep the Spa closed on certain days when there was a scheduled inspection

18  with the SJPD. *Id.* ¶¶ 78, 83. This reinforced Plaintiff's belief that Gerry was a police officer, and

19  she had to do what he said to keep her business open. *Id.* ¶ 78

20      Gerry's final visit to the Spa was on March 19, 2019. *Id.* ¶ 86. Gerry visited under the

21  premise that he needed to take photos of the Spa for inspection purposes. *Id.* ¶¶ 85, 86. Gerry

22  promised Plaintiff that he would get her the Spa's permit within a few months and remove its

23  name from any future inspections. *Id.* ¶¶ 85. Plaintiff made an excuse to avoid the Spa during

24  Gerry's visit, but Gerry returned to the Spa later that day after she had returned and raped her. *Id.*

25  ¶ 86.

26      This was the last time Plaintiff saw Gerry. *Id.* ¶ 87. Gerry did not use the money he

27  extorted to help acquire the proper licenses and permits like he promised. *Id.* ¶¶ 96, 97. As a

28  Case No.: 5:21-cv-00092-EJD
    ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

result, the City shut down Plaintiff's business on September 15, 2019, despite having knowledge at that time of Gerry's extortion.  *Id.*

In July 2020, Plaintiff sought medical treatment for her mental distress caused by Gerry's extortion and sexual assault, as well as the forced closure of her business.  *Id.* ¶¶ 98, 99.  At the hospital, the Emergency Psychiatric Services unit informed the SJPD of the sexual crime, and the SJPD began investigating Gerry.  *Id.* ¶¶ 99, 100.

### 3.    Gerry's Arrest

Following the SJPD's investigation, Gerry was arrested on September 29, 2020.  *Id.* ¶ 91. The investigation revealed that Gerry had also committed sex and extortive crimes under the color of his authority on other occasions, and had sexually molested a teenager in the early 2000s and his minor stepdaughter as recently as 2014.  *Id.* ¶¶ 9, 91.  On May 22, 2022, Gerry was sentenced to thirty-five years in state prison after pleading guilty to ten felony offenses in part stemming from these crimes.  *Id.* ¶ 101.

### 4.    Law Enforcement Industry Practices

Plaintiff newly alleges facts derived from two law enforcement officer declarations regarding the wide-spread knowledge among law enforcement agencies that sending solo male code enforcers to inspect massage businesses unsupervised presents an obvious risk that the constitutional rights of the business owners and employees may be violated.

First, Plaintiff alleges facts from a declaration signed by Anthony Flores, acting Lieutenant with the San Francisco Police Department ("SFPD") in charge of the Human Trafficking Unit and instructor at the SFPD Police Academy teaching courses on Human Trafficking, Vice Crimes, Domestic Violence, and Principled Policing.  SAC, Ex. 3, Declaration of Anthony Flores ("Flores Decl."), ECF No. 92, at 132–36.  Flores's statement includes the following relevant information:

> Outside of [] very narrow circumstance[s], it is unthinkable in law enforcement practice to send a solo male enforcer alone and unsupervised into a massage business. In an industry where intimate contact is commonplace, where employees are often vulnerable immigrant Asian women with poor English language skills and subservient demeanors, and where cash is a common medium of exchange, the circumstances for sexual and economic exploitation by

a male with enforcement power are obvious.

*Id.* ¶ 6.

> Allowing lone men (whether sworn or unsworn) to conduct enforcement activities in massage parlors is an archaic and outdated concept that is virtually unheard of in the twenty-first century. I was surprised and dismayed to learn that a City of San Jose Code Inspector was allowed to conduct massage enforcement by himself with little or no oversite. Having taught at police academies throughout my career, I believe first year police cadets would know better. Based on my knowledge of the industry, it is impossible that those with supervisory authority over Mr. Gerry were unaware of the obvious consequences of such behavior.

*Id.* ¶ 11.

> [I]t is the accepted standard in California that solo male enforcement visits to massage establishments are never to be conducted (with the lone exception of' sting' operations as noted above), and that inspectors should never be sent into massage establishments alone. The norm is to send multiple inspectors at a time into an establishment-preferably including female inspectors-to reduce the risk of sexual harassment or assault as much as possible. These precautions are necessary because there is a patently obvious risk associated with sending men into a space known to be staffed by indigent, immigrant women, who are often uneducated, speak little to no English, and in some cases have been human trafficked.

*Id.* ¶ 12.

Second, Plaintiff alleged facts from a declaration signed by Leonard Powell, a former career Chief Municipal Code Enforcement Official in a city adjoining San Jose, and former President of the California Association of Code Enforcement Officers.  SAC, Ex. 1, Declaration of Leonard Powell ("Powell Decl."), ECF No. 92, at 33–39.  Powell's statement includes the following relevant information:

> In California, there is a clear and obvious industry standard in code enforcement, that inspectors should not be sent into massage establishments alone . . . . This is because there a patently obvious risk associated with sending men alone into an industry rife with human trafficking, and staffed by vulnerable immigrant women who are often uneducated and speak little to no English.

*Id.* ¶ 8.

> [I]ndustry best practices include[e]: (1) using a partner system for massage establishment inspections; (2) performing mandatory 'ride-alongs' between supervisors and inspectors; (3) instituting random

customer audits; (4) completing intermittent supervisor and division manager case reviews; (5) rotating inspector assignments within the municipality's code enforcement regime; (6) performing customer satisfaction surveys with supervisor feedback; (7) conducting case post-closure reviews by supervisors with evidence analysis and site visits; (8) providing massage establishment workers and owners with readily available and easy accessible information on how to report inappropriate conduct; and (9) mandating supervisorial monitoring of an inspector's activities in the field. Based on the City of San Jose's own 2021 audit in the aftermath of Mr. Gerry's case, it was revealed that none of these basic and typical management techniques constituting the industry standard in California were in place to protect the people of San Jose from Defendant Gerry.

*Id.* ¶ 12.

Ethical code enforcement—especially of the vulnerable massage industry—is nuanced and requires diligent training and education. Simply ignoring or remaining indifferent to industry best practices puts the public at risk, which is so distressingly apparent in this case. This indifference is made more abhorrent by the simple fact that lax supervision in massage enforcement is more likely to result in a Constitutional violation than in other areas of code enforcement. Massage enforcement, akin to gaming enforcement, requires an increased level of supervision due to the likelihood of 'taking' from practitioners and the unfettered discretion that code inspectors receive within such establishments (e.g., the ability to access private rooms and inspect an establishment's entire operation without warrant).

*Id.* ¶ 11.

### B.    Procedural History and Prior Orders

This is the third motion to dismiss in this case. The Court granted the first motion to dismiss brought by the City with leave to amend on March 29, 2022. *See* First MTD Order. The Court found that Plaintiff failed to plead facts to show that the City had a "custom or practice" of allowing unsupervised solo male code enforcers to inspect massage businesses. *Id.* at 17. Plaintiff had not asserted claims against any supervisor in their individual capacity at that time. *Id.*

The Court later granted the second motion to dismiss brought by the City and Supervisor Defendants with leave to amend on November 30, 2023. *See* Second MTD Order. Regarding the City, the Court found that Plaintiff sufficiently alleged a custom or practice allowing unsupervised solo male code enforcers to inspect massage businesses, but failed to allege that this custom or practice presented an obvious risk of constitutional violations whereby maintenance of this custom or practice constituted deliberate indifference to Plaintiff's constitutional rights. *Id.* at 11–14. The

Court also found that Plaintiff failed to plead facts sufficient to support her allegation that receipt of the Anonymous Letter and Whistleblower Complaint gave the City notice of the risks inherent in their custom or practice regarding solo male code enforcement inspectors. *Id.* at 13–14.

Regarding Supervisor Defendants, the Court found that Plaintiff sufficiently pled that each Supervisor Defendant had supervisory authority over Gerry, but similarly failed to plead facts to show that they were on notice that their failure to supervise Gerry during his solo inspections created an obvious risk of constitutional violations. *Id.* at 24–25. Specifically, regarding the notice of Gerry's prior conduct, the Court found that the Anonymous Letter did not necessarily show Gerry engaging in constitutional violations, and there were no facts to show that any Supervisor Defendant even received the Whistleblower Complaint. *Id.* ¶ 26. The Court also found that Plaintiff's claims against Supervisor Defendants were equitably tolled, thus not prohibited by the applicable statute of limitation. *Id.* at 21–23.

The Court granted leave to amend, and Plaintiff filed her SAC on January 26, 2024. *See* SAC.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may therefore be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). When deciding whether to grant a motion to dismiss, the Court must accept as true all "well pleaded factual allegations" and determine whether the allegations "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court must also construe the alleged facts in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). While a complaint need not contain detailed factual allegations,

Case No.: 5:21-cv-00092-EJD
ORDER DENYING MOTION TO DISMISS

1   it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

2   plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

3   **III.   DISCUSSION**

4          Defendants do not challenge Plaintiff's allegation that Gerry's conduct violated her

5   constitutional rights, including her substantive due process rights to bodily integrity, privacy, and

6   property, and her right to equal protection.  *See* SAC ¶ 103.  Instead, Defendants argue that the

7   City is not liable for these constitutional violations under *Monell v. Dep't of Soc. Servs. of City of*

8   *New York*, 436 U.S. 658, 694 (1978), and Supervisor Defendants are not liable for these

9   constitutional violations as Gerry's supervisors.  The Court will first discuss Plaintiff's claims

10  against the City before moving to Plaintiff's claims against Supervisor Defendants.

11         **A.    Judicial Notice**

12         As an initial matter, the Court will address Defendants' opposed request for judicial notice.

13  Req. for Judicial Notice, ECF No. 93-1; Opp'n 22–24.

14         "In evaluating a Rule 12(b)(6) motion, the district court is limited to the allegations of the

15  complaint, documents incorporated into the complaint by reference, and matters which are subject

16  to judicial notice."  *MLW Media LLC v. World Wrestling Ent., Inc*., No. 22-CV-00179-EJD, 2023

17  WL 4053802, at *2 (N.D. Cal. June 15, 2023); *see also Louisiana Mun. Police Emps.' Ret. Sys. v.*

18  *Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

19  551 U.S. 308, 322 (2007)).  A court may take judicial notice of a fact "not subject to reasonable

20  dispute" if it is "generally known within the trial court's territorial jurisdiction" or "can be

21  accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

22  Fed. R. Evid. 201(b).  However, the Ninth Circuit prohibits taking judicial notice of facts in

23  documents that are being used as a basis to resolve genuine factual disputes in a complaint,

24  warning that the "overuse and improper application of judicial notice and the incorporation-by-

25  reference doctrine . . . can lead to unintended and harmful results."  *Khoja v. Orexigen*

26  *Therapeutics, Inc.*, 899 F.3d 988, 998–99 (9th Cir. 2018).

27         Here, Defendants ask the Court to take judicial notice of two documents: (1) the version of

28  Case No.: 5:21-cv-00092-EJD
    ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

San Jose City Administrative Police Manual ("CAPM"), Section 2.1.4, that was in effect in 2018 and 2019, and (2) the version of San Jose City Administrative Police Manual ("CAPM"), Section 2.1.4, that is currently in effect.  Req. for Judicial Notice.

The Court will take judicial notice of both documents as publicly available government documents whose accuracy cannot reasonably be questioned.  The Court will also take judicial notice of the current CAMP Section 2.1.4 as a document incorporated by reference, as Plaintiff cites this section in the SAC.  *See* SAC ¶ 59.  However, to address Plaintiff's opposition, the Court will not use these documents to resolve any genuine factual disputes.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. But a court may not take judicial notice of a fact that is subject to reasonable dispute.") (internal quotation marks omitted) (internal citations omitted) (citing *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986)).

**B.    Claims Against the City**

Title 42 of the United States Code Section 1983 provides a cause of action against any "person" who, under color of law, deprives any other person of rights, privileges, or immunities secured by the Constitution of the United States.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).  Although a municipality qualifies as a "person" under Section 1983, a municipality cannot "be held liable under § 1983 on a respondeat superior theory." *Id.* at 691.  However, "liability may attach where the municipality itself causes the constitutional violation through the execution of an official policy, practice or custom." *Fairley v. Luman*, 281 F.3d 913, 916 (9th Cir. 2002) (emphasis in original).  A *Monell* claim for Section 1983 liability against a public entity may be stated in one of three circumstances: (1) a municipal employee committed the alleged constitutional violation "pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity"; (2) the individual who committed the constitutional violation was an official with "final policy-making authority and that the challenged action itself thus constituted an act of

official governmental policy"; or (3) the plaintiff may demonstrate that "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992).

At issue in this case is the first prong. In the absence of an express official policy, a plaintiff may allege municipal liability through a custom or practice. 42 U.S.C. § 1983; *City of St. Louis v. Praprotnik*, 485 U.S. 485 U.S. 112, 127 (1988). A municipal's custom or practice may be one of action or inaction: "A policy of action is one in which the government body itself violates someone's constitutional rights, or instructs its employees to do so; a policy of inaction is based on a government body's failure to implement procedural safeguards to prevent constitutional violations." *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) (internal quotations and citation omitted). Thus, a municipality may be liable under Section 1983 for inaction, namely, a custom or practice of inadequate training, supervision, or discipline its employees. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989); *see also Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989).

However, it is not enough for a plaintiff to identify a local government's custom or policy that caused her injury; the plaintiff must also demonstrate that the custom or practice "was adhered to with 'deliberate indifference to the constitutional rights of [plaintiff].'" *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016) (citing *Canton,* 489 U.S. at 392).

Here, Defendants argue that the SAC fails to plead facts sufficient to show a custom or practice or deliberate indifference. The Court will address each in turn.

### 1.     Custom or Practice

The Court previously found that Plaintiff's FAC alleged facts to show the City had a custom or practice of sending unsupervised solo male code enforcement inspectors to inspect massage businesses, Second MTD Order 11, and these facts remain unchanged in the SAC. Therefore, the Court again finds that Plaintiff pled facts sufficient to meet this element.

### 2.     Deliberate Indifference

To show deliberate indifference, Plaintiff must demonstrate the City "was on actual or

United States District Court
Northern District of California

1    constructive notice" that its failure to prevent unsupervised solo made code enforcement

2    inspections would likely result in a constitutional violation.  *Tsao v. Desert Palace, Inc.*, 698 F.3d

3    1128, 1145 (9th Cir. 2012).  This is an objective inquiry.  *Castro v. Cnty. of Los Angeles*, 833 F.3d

4    1060, 1076 (9th Cir. 2016).  Notice is ordinarily shown through demonstrating a pattern of similar

5    constitutional violations by employees; however, "evidence of a pattern of constitutional

6    violations is not always required to succeed on a *Monell* claim."  *Kirkpatrick v. County of Washoe*,

7    843 F.3d 784, 794 (9th Cir. 2016); *see also Connick v. Thompson*, 563 U.S. 51, 62 (2011).  "[I]n a

8    narrow range of circumstances" a particular "showing of 'obviousness' can substitute for the

9    pattern of violations ordinarily necessary to establish" deliberate indifference.  *Id.* (citing *Connick*,

10   563 U.S. at 63).  For example, the Ninth Circuit stated that "a single incident of excessive force,

11   coupled with evidence that a city had neglected to train its armed officers on the constitutional

12   limitations on using force against fleeing felons, might establish that the city manifested deliberate

13   indifference in training law enforcement."  *Id.* (citing *Harris*, 489 U.S. at 390 n.10).

14        In its Second MTD Order, the Court found that Plaintiff failed to plead facts showing how

15   the City's practice of allowing unsupervised solo male code enforcement in the massage industry

16   shows a reckless and callous indifference to Plaintiff's rights.  Second MTD Order 11–15.

17   Specifically, the Court found that Plaintiff did not plead a pattern of constitutional violations, and

18   her allegation that allowing solo male code enforcement in the massage industry is widely

19   discouraged by law enforcement and/or experts in the field because of its "obvious risk" of

20   constitutional violations was broad and unfounded.  *See id.*  To support her argument that the

21   City's custom or practice presented an "obvious risk," Plaintiff had only cited to one source in

22   support, the 2017 Human Trafficking Task Force Report, which described the presence and impact

23   of human trafficking on the massage industry.  *Id.* at 12–13.  The Court found the fact that human

24   trafficking is prevalent in the massage industry insufficient to put the City on notice that

25   unsupervised, solo male code inspectors are likely to extort and sexually assault massage business

26   owners and employees.  *Id.*  The Court also found the two prior complaints regarding Gerry

27   insufficient put the City on notice that its custom or practice presented an obvious risk that

28   Case No.: 5:21-cv-00092-EJD
     ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

unsupervised solo male code inspectors are likely to extort and sexually assault massage business owners and employees.  *Id.*

   The Court finds that Plaintiff has now cured these deficiencies.  While there are still no facts regarding a pattern of violations at this time,[1] Plaintiff has pled new facts to show that the City's custom or practice of sending unsupervised solo male code enforcement inspectors into massage businesses presents an "obvious risk" of constitutional violations.

   Specifically, Plaintiff newly alleges facts from two law enforcement declarations regarding the wide-spread knowledge among law enforcement agencies regarding the risks inherent in the City's custom or practice.  The declarations provide facts including the following:

- "Allowing lone men (whether sworn or unsworn) to conduct enforcement activities in massage parlors is an archaic and outdated concept that is virtually unheard of in the twenty-first century."  Flores Decl. ¶ 11.

- "[I]t is unthinkable in law enforcement practice to send a solo male enforcer alone and unsupervised into a massage business" because "circumstances for sexual and economic exploitation by a male with enforcement power are obvious."  *Id.* ¶ 6.

- "[T]here is a clear and obvious industry standard in code enforcement[] that inspectors should not be sent into massage establishments alone" because of the risks that the staff's constitutional rights may be violated.  Powell Decl. ¶8.

- "[L]ax supervision in massage enforcement is more likely to result in a Constitutional violation than in other areas of code enforcement" due in part to "the ability to access private rooms and inspect an establishment's entire operation

---

[1] While Plaintiff has not alleged facts regarding a pattern of conduct at this time, Plaintiff believes a pattern of abuse will be shown through discovery.  Opp'n 11–12.  Plaintiff states that she made a Public Record Act request to the San Jose Code Enforcement Division seeking documentation "regarding complaints made against City of San Jose Code Enforcement Division Inspectors . . . specifically including but not limited to William Gerry."  *Id.*  The Division refused to produce documents, but its most recent correspondence "confirmed that Code Enforcement does have records; however, these records are personnel in nature and therefore exempt from disclosure."  *Id.* at 12.  Plaintiff believes this response indicates that more records regarding similar complaints will be revealed in the course of litigation.  *Id.*

United States District Court
Northern District of California

without warrant." *Id.* ¶ 11.

- "[F]irst year police cadets would know better" than to allow a male code enforcement inspector "to conduct massage enforcement by himself with little or no oversite."  Flores Decl. ¶ 11.

- Because of the risks summarized above, industry best practices include "using a partner system for massage establishment inspections," "performing mandatory 'ride-alongs' between supervisors and inspectors," and "providing massage establishment workers and owners with readily available and easily accessible information on how to report inappropriate conduct."  Powell Decl. ¶ 12.

These facts go beyond Plaintiff's former broad and vague allegation that law enforcement experts have instructed local agencies for years to never allow an enforcement officer to go into a massage business by himself.  Now, Plaintiff alleges specific facts regarding existing industry standards, why those standards are set, and how it is unlikely that any code enforcement agency is unaware of the obvious dangers of sending solo male code enforcement inspectors to inspect massage businesses.  If proven true, these facts could conceivably convince a reasonable jury that the City manifested deliberate indifference to Plaintiff's constitutional rights.  *See, e.g., Kirkpatrick*, 843 F.3d at 794 ("[A] single incident of excessive force, coupled with evidence that a city had neglected to train its armed officers on the constitutional limitations on using force against fleeing felons, might establish that the city manifested deliberate indifference in training law enforcement.").

Defendants argue that the conclusory opinions of experts about the adequacy of San Jose's code enforcement practices are irrelevant when the Ninth Circuit in *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1156 (9th Cir. 2014), has held that a municipality is not deliberately indifferent for failing to train and supervise employees not to do what criminal law forbids.  Reply 4.

The Court finds this argument unpersuasive for two reasons.  First, the Court does not view the declarations as conclusory opinions about the adequacy of San Jose's code enforcement practices.  As discussed above, the Court finds that these declarations provide facts sufficient to

United States District Court
Northern District of California

state a claim for deliberate indifference at this stage.

Second, the facts alleged in the FAC are now distinguishable from *Flores*.  In *Flores*, the plaintiff, who was sexually assaulted by an unknown deputy sheriff, sued the county and its sheriff for failing to properly train deputies "to ensure that Sheriff's [d]eputies do not sexually assault women that [d]eputies come in contact with."  *Flores*, 758 F.3d at 1156 (internal quotation marks omitted).  The Ninth Circuit found that isolated incidents of sexual assault were insufficient to put the county or sheriff on notice that the training was deficient in a particular respect, and plaintiff's facts did not fall into the "narrow range of circumstances" where a showing of obviousness can substitute for the pattern of violations because "everyone is presumed to know the law" with respect to the "criminal prohibition on sexual assault."  *Id.* at 1159–60 ("If the threat of prison time does not sufficiently deter sexual assault, it is not plausible to assume that a specific instruction not to commit sexual assault will provide such deterrence, and therefore failure to include such instruction does not constitute deliberate indifference absent a longstanding pattern of such criminal behavior.").

The Court has applied *Flores* to the facts of this case in its prior orders.  In its First MTD Order, the Court found *Flores* was "directly on point" with the facts alleged in the original complaint.  First MTD Order 16–17.  At that time, Plaintiff had similarly alleged misconduct by a single employee, and Plaintiff had presented no facts to even show that the City had a "custom or practice" of sending solo male code inspectors into massage businesses, let alone to show that the unconstitutional consequences of this policy were "so patently obvious," particularly given the backdrop from *Flores* that "everyone is presumed to know the law" with respect to the "criminal prohibition on sexual assault."  *Id.*  In its Second MTD Order, the Court found that Plaintiff had successfully pled a custom or practice of sending solo male code inspectors, but still failed to show that that the unconstitutional consequences of this policy were "so patently obvious," again citing the *Flores* holding that  "everyone is presumed to know the law" with respect to the "criminal prohibition on sexual assault."  Second MTD Order 14.

However, as previously discussed, the Court finds that Plaintiff cured these deficiencies.

Case No.: 5:21-cv-00092-EJD
ORDER DENYING MOTION TO DISMISS

15

The plaintiff in *Flores* alleged that the municipality was deliberately indifferent for failing to give their deputies "specific instruction not to commit sexual assault," *id.* at 1160; here, Plaintiff now alleges facts to show that the City was deliberately indifferent for implementing a custom or practice that allowed solo male code enforcers to inspect massage businesses unsupervised and with unfettered power, where it was common knowledge among law enforcement agencies that such policies would likely result in constitutional violations, and where it received prior complaints that should have specifically alerted them to Gerry's constitutional violations. Despite the notion that everyone is "presumed to know the law," and the City can in some degree rely on the criminal justice system to deter criminal conduct, the City still has the responsibility to ensure that its customs and practices are not creating the optimal conditions under which unconstitutional conduct is likely to occur.

Therefore, the Court finds that Plaintiff has pled facts sufficient to show that the City had the requisite notice that its custom or practice presented an obvious risk that Plaintiff's constitutional rights would be violated, and their continuation of that custom or practice regardless of this industry standard, and regardless of the prior complaints specific to Gerry, constituted deliberate indifference. In other words, this is indeed a "rare" case in which notice could be inferred even without any prior pattern of misconduct. *Connick*, 563 U.S. at 64.

### C.    Claims Against Supervisor Defendants[2]

Although a supervisor may not be held liable on a theory of respondeat superior under Section 1983, a supervisor may be held individually liable "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection

---

[2] Defendants improperly re-raise statute of limitation arguments and misstate the record. *See* Mot. 4 ("As to the individual defendants, the Court held that Plaintiff's claim against them was barred by the statue of limitations.") In its Second MTD Order, the Court clearly analyzed the three core elements from *Collier v. City of Pasadena*, 142 Cal.App.3d 917, 924 (1983), and held that Plaintiff's supervisory liability claims against Defendants Roberts, Hatfield, and Garcia are equitably tolled. Second MTD Order 23 ("Accordingly, Plaintiff's supervisory liability claims against Defendants Roberts, Hatfield, and Garcia are equitably tolled."). Defendants did not seek timely reconsideration or clarification of that finding and are precluded from making arguments contrary to this finding here.

between the supervisor's wrongful conduct and the constitutional violation." *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018) (internal quotations and citation omitted) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). "The requisite causal connection can be established . . . by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207–08 (quotations and citations omitted) (cleaned up).

A supervisor need not be physically present when the constitutional violation occurs. *Starr*, 652 F.3d at 1205. "Rather, the supervisor's participation could include his 'own culpable action or inaction in the training, supervision, or control of his subordinates,' 'his acquiescence in the constitutional deprivations of which the complaint is made,' or 'conduct that showed a reckless or callous indifference to the rights of others.'" *Id.* at 1205–06 (quoting *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991)). However, liability premised on supervisors' "mere knowledge and acquiescence" in a subordinates' misconduct is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Instead, "constitutional tort claims against supervisory defendants turn on the requirements of the particular claim—and, more specifically, on the state of mind required by the particular claim—not on a generally applicable concept of supervisory liability." *OSU Student All. v. Ray*, 699 F.3d 1053, 1071 (9th Cir. 2012).

Defendants argue that the SAC fails to plead facts sufficient to show supervisory authority or the necessary state of mind. The Court will address each in turn.

### 1.    Supervisory Authority

The Court previously found that Plaintiff sufficiently pled Hatfield, Roberts, and Garcia exercised supervisory authority over Gerry, Second MTD 24, and these facts remain unchanged in the SAC. Therefore, the Court again finds that Plaintiff pled facts sufficient to meet this element.

### 2.    State of Mind

As an initial matter, Defendants raise a new threshold argument that deliberate indifference is insufficient to hold Supervisor Defendants liable for the violation of Plaintiff's constitutional

United States District Court
Northern District of California

1    rights, arguing instead that Plaintiff must plead facts to show specific intent.  Mot. 17.  The Court

2    will address this argument first before moving to the substance of Plaintiff's allegations regarding

3    Supervisor Defendants.

### a.        Deliberate Indifference v. Specific Intent

5          To reiterate, courts generally apply the same state of mind requirements on the supervisor

6    as they do the subordinate in Section 1983 cases against a supervisor.  In the Second MTD Order,

7    the Court applied the "deliberately indifferent" standard for Supervisor Defendants as to Plaintiff's

8    claim that Defendants violated her substantive due process rights to bodily integrity, privacy, and

9    property, and her right to equal protection.

10          Defendants now assert, for the first time, that Supervisor Defendants may only be held

11    liable as Gerry's supervisors if they meet the "specific intent" requirement for invidious

12    discrimination and sexual assault, arguing that Supervisor Defendants themselves must have

13    "harbored the same nefarious intent as Gerry when he undertook his intentional constitutional

14    violations, i.e., the intent to use state authority to sexually assault or extort Plaintiff, or to engage

15    in invidious discrimination against her based on race or sex."  Mot. 17; *compare* Mot. to Dismiss

16    13–14, ECF No. 70.

17          "[O]nly in limited situations has the Supreme Court found constitutional torts to require

18    specific intent."  *OSU Student All. v. Ray*, 699 F.3d 1053, 1074–75 (9th Cir. 2012).  The Ninth

19    Circuit only "know[s] of three examples: (1) due process claims for injuries caused by a high-

20    speed chase; (2) Eighth Amendment claims for injuries suffered during the response to a prison

21    disturbance; and (3) invidious discrimination under the Equal Protection Clause and the First

22    Amendment Free Exercise Clause," *id.* at 1074, specifically, "invidious racial discrimination," *id.*

23    at 1071 (citations omitted).  Other types of claims, however, do not impose such a state of mind

24    requirement.  For example, while Eighth Amendment claims for injuries suffered during a prison

25    disturbance require specific intent because of the urgency of the situation, other Eighth

26    Amendment claims for excessive force and inadequate medical care require nothing more than

27    deliberate indifference.  *See, e.g., Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir.

28    Case No.: 5:21-cv-00092-EJD
     ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

2018).  Further, while invidious discrimination under the First Amendment's free exercise clause requires specific intent, a freedom of speech claim under the First Amendment and Fourteenth Amendment requires only knowledge and acquiescence.  *OSU Student*, 699 F.3d at 1074–75.

Here, the Court finds that deliberate indifference still satisfies Plaintiff's pleading obligations for all claims.  As to Plaintiff's due process claim, Defendants have not cited a single case finding that substantive due process claims implicating the rights to bodily integrity, privacy, and property require specific intent.  To the contrary, Defendants cite to a Ninth Circuit case that applied the deliberate indifference standard to a supervisor's involvement in their subordinate's violations of the plaintiff's right to bodily privacy and integrity.  *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1159 (9th Cir. 2020).

As to Plaintiffs equal protection claim, Defendants have similarly provided no case law stating that sex discrimination arising from sexual assault requires pleading facts to show the specific intent to discriminate on the basis of sex.  Instead, Defendants argue that *Iqbal* requires Plaintiff plead facts to show that Supervisor Defendants possessed the specific discriminatory intent to allow Gerry to sexually assault Plaintiff on the basis of her sex.  *See* Mot. 17.

It is true that *Iqbal* requires a showing that a supervisor had the specific intent to discriminate in order to hold a supervisor liable for his role in his subordinate's invidious racial discrimination.  *See OSU Student*, 699 F.3d at 1074–75.  However, the Ninth Circuit has clarified that *Iqbal*'s holding was specific to the constitutional violation before it—invidious racial discrimination.  *Id.* at 1701.  Courts since *Iqbal* have not applied a blanket specific intent requirement to all constitutional torts; instead, courts analyze the specific state of mind requirements for each constitutional violation alleged.  *See, e.g., id.*

Specifically regarding equal protection claims arising out of sexual harassment, the Ninth Circuit has stated that "allegations of persistent and unwelcome physical and verbal abuse in the workplace state a claim of sexual harassment, which can be impermissible sex discrimination in violation of the Equal Protection Clause," and "in order to hold the perpetrator's supervisors accountable for the harassment, including the office or department the perpetrator works for, [the

Case No.: 5:21-cv-00092-EJD
**ORDER DENYING MOTION TO DISMISS**

1  Ninth Circuit] require[s] plaintiffs to plausibly allege either that the office or department had an

2  official policy of promoting sexual harassment, or that the plaintiff's supervisors intentionally

3  refused to redress the perpetrator's sexual harassment." *Sampson v. Cnty. of Los Angeles by &*

4  *through Los Angeles Cnty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1022–23, 1024 n.8 (9th

5  Cir. 2020).  Notably, the Ninth Circuit did not state that the plaintiff's supervisors must have

6  refused to address the perpetrator's sexual harassment with the specific intent to discriminate on

7  the basis of sex; rather, the court noted that "[s]exual harassment violates the Equal Protection

8  Clause because, by definition, it is 'motivated by gender.'" *See id.* at 1203.  More recently, the

9  Ninth Circuit again stated that a plaintiff could prove an equal protection claim by showing that a

10  school official "intentionally discriminated *or* acted with deliberate indifference" in their handling

11  of sexual assault committed by a student.  *Doe 1 v. Manhattan Beach Unified Sch. Dist.*, No. 23-

12  55233, 2024 WL 719049, at *2 (9th Cir. Feb. 22, 2024) (emphasis added).  Following suit, district

13  courts in the Ninth Circuit have also largely applied the deliberate indifference standard to equal

14  protection claims against supervisors arising out of their role in their subordinate's sexual assault

15  and harassment.  *See, e.g., Smith v. Diaz*, No. 20-CV-04335-HSG, 2023 WL 2190147, at *4 (N.D.

16  Cal. Feb. 22, 2023); *Fountain v. Arizona*, No. CV-21-00356-PHX-JJT, 2022 WL 1003170, at *2

17  (D. Ariz. Apr. 4, 2022); *contra, e.g., Dixon v. Baca*, No. 2:22-CV-00220-ART-BNW, 2022 WL

18  22836118, at *5 (D. Nev. June 9, 2022).  The Court also notes that other circuits have similarly

19  premised liability under the equal protection clause for a supervisor's role in a subordinate's sexual

20  harassment or abuse on a deliberate indifference theory.  *See, e.g., Roy v. Correct Care Sols., LLC*,

21  914 F.3d 52, 72 (1st Cir. 2019); *Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010).

22         Therefore, the Court will proceed with its analysis regarding Plaintiff's allegations that

23  Supervisor Defendants acted with deliberate indifference to Plaintiff's constitutional rights.

24                          **b.     Deliberate Indifference**

25         In its Second MTD Order, the Court found that Plaintiff failed to plead facts showing that

26  Superior Defendants were deliberately indifferent to Plaintiff's constitutional rights.  Second MTD

27  Order 23–26.  Specifically, the Court found Plaintiff's allegations that the Anonymous Letter and

28  Case No.: 5:21-cv-00092-EJD
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

1    Whistleblower Complaint put Supervisor Defendants on notice of Gerry's unconstitutional

2    conduct vague, conclusory, and unsupported by facts.  *Id.*

3            Regarding the Anonymous Letter, the Court found that its contents alluding to an improper

4    intimate relationship between Gerry and a massage business owner were not enough to put

5    Roberts on notice that Gerry would sexually assault and bribe massage business owners.  *Id.* at 25.

6    It follows that Roberts's failure to look further into this matter further would have more likely

7    constituted mere carelessness rather than deliberate disregard.  *Id.* at 25–26.

8            Regarding the Whistleblower Complaint, the Court found that the contents clearly asserted

9    that Gerry was demanding bribes and sexually assaulting massage business owners, but the Court

10   found no facts to support Plaintiff's allegation that, "on information and belief," Supervisor

11   Defendants were aware of the Whistleblower Complaint and "took no steps to prevent Gerry from

12   harming other women working in the massage industry."  *Id.* at 26.  Essentially, the Court found

13   that Plaintiff failed to explain *how* Roberts, Hartfield, or Garcia would have even been made

14   aware of the Whistleblower Complaint.  *See id.*

15           The Court finds that Plaintiff has cured these deficiencies.

16           First, rather than merely alleging that Supervisor Defendants received the Whistleblower

17   Complaint based "on information and belief," Plaintiff has newly alleged that the City's

18   Administrative Policy Manual, titled "Whistleblower Hotline Policy," required that all criminal

19   allegations sent through whistleblower hotline are referred to the SJPD, and the employee's

20   department is notified, unless it may interfere with a police investigation.[3]  SAC ¶ 57.  Plaintiff

21   alleges that, pursuant to the City's own policy, Garcia, Roberts, and Hatfield would have been

22   notified of the Whistleblower Complaint when it was referred to the SJPD and the Code

23   Enforcement Division.

24           Second, regarding the Anonymous Letter, while it is still true that this letter alone is

25

26   ─────────────────────
27   [3] While Defendants dispute Plaintiff's allegations regarding other rules that were not in place at
     the time of the Whistleblower Complaint, Defendants do not dispute that this specific provision
     was in effect when the Whistleblower Complaint was received.  *See, e.g.,* Mot. 6, 21 n.6.

28   Case No.: 5:21-cv-00092-EJD
     ORDER DENYING MOTION TO DISMISS

insufficient to show Roberts had notice that Gerry was violating Plaintiff's constitutional rights, there are now facts alleged that Roberts received the Whistleblower Complaint just a few months later. Thus, the Anonymous Letter, when viewed in conjunction with the Whistleblower Complaint, could serve as another piece to the puzzle that should have put Roberts on notice of Gerry's conduct.

Third, the Whistleblower Complaint and Anonymous Letter should be viewed in the larger context of the widely known law enforcement industry standards previously discussed. If Supervisor Defendants knew of the obvious risks inherent in allowing unsupervised solo male code enforcement inspectors to inspect massage businesses, Supervisor Defendants' additional knowledge that Gerry engaged in this very conduct could further support a finding of deliberate indifference if proven true.

Therefore, the Court finds that Plaintiff has pled facts sufficient to state a claim against all Supervisor Defendants. Given the liberal requirements of notice pleading, no further specificity is expected of the complaint.

### D.    Qualified Immunity

Finally, Supervisor Defendants argue that they are immune to any liability under the doctrine of qualified immunity. The Court did not reach this issue in its prior orders.

"[A] district court may dismiss a claim on qualified immunity grounds under 28 U.S.C. § 1915(e)(2)(B)(iii), but only if it is clear from the complaint that the plaintiff can present no evidence that could overcome a defense of qualified immunity." *Chavez v. Robinson*, 817 F.3d 1162, 1169 (9th Cir. 2016), *as amended on reh'g* (Apr. 15, 2016). Where the defendant properly raises the defense of qualified immunity in a motion to dismiss, district courts in the Ninth Circuit have held that the plaintiff bears the burden to show that qualified immunity does not shield the individual defendants from liability. *See, e.g., Gorsline v. Daniels,* 674 F.Supp.3d 968, 984 (D. Nev. 2023); *MacDonald v. Oregon Health & Science University,* 689 F.Supp.3d 906, 920 (D. Or. 2023) (citing *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017)).

Courts conduct a two-part analysis when qualified immunity is raised: (1) whether the facts

United States District Court
Northern District of California

indicate that a constitutional right has been violated, and (2) whether that right was clearly

established at the time of the alleged conduct.  *Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir.

2018).

### 1.    Violation of a Constitutional Right

The Court found above that Plaintiff sufficiently pled that Supervisor Defendants could be

held liable for violating her substantive due process rights to bodily integrity, privacy, and

property, and her right to equal protection.  Therefore, the Court finds that Plaintiff has satisfied

step one.

### 2.    Clearly Established Constitutional Right

The Court also finds that Plaintiff satisfied step two by pleading facts sufficient to show

that Plaintiff's constitutional right was clearly established at the time of Supervisor Defendants'

conduct.

It is clearly established law that a supervisor's notice of a subordinate's unconstitutional

activity and failure to act in deliberate indifference to the public's constitutional rights can itself

amount to a violation of the public's constitutional rights.  *See, e.g., Starr v. Baca*, 652 F.3d 1202,

1208 (9th Cir. 2011) (finding supervisory liability sufficiently pled when facts show that the

sheriff's knowledge of the culpable actions of his subordinates coupled with his inaction amounted

to acquiescence in the unconstitutional conduct of his subordinates);  *Preschooler II*, 479 F.3d at

1183 (finding supervisory liability sufficiently pled when the plaintiff alleged that school officials

"ratified a custom that subjected [the plaintiff] to an educational environment in which he was

physically and emotionally abused" by failing to train, supervise, hire qualified teachers, and

report and discipline an abusive teacher when they received notice of the abuse); *L.W. v. Grubbs*,

974 F.2d 119, 123 (9th Cir. 1992) (finding supervisory liability sufficiently pled when facts show

the plaintiff's supervisors knew that an inmate was a violent sex offender who was likely to

assault a woman if left alone with her and intentionally assigned the plaintiff to work alone with

the inmate).

Here, Plaintiff alleges that all Supervisor Defendants knew the obvious risks associated

United States District Court
Northern District of California

with failing to supervise Gerry during his solo code inspection visits; all Supervisor Defendants knew that there had been a Whistleblower Complaint disclosing prior constitutional violations quite similar to those alleged here; and Roberts knew that there had been an Anonymous Letter showing Gerry engaging in inappropriate conduct.  Despite this notice, Plaintiff alleges that Supervisor Defendants were deliberately indifferent to her clearly established constitutional rights by failing to supervise Gerry or remove him from his position of unfettered power.  These allegations share similarities with other cases in which courts have found the violation of a clearly established right.  *See, e.g., Starr*, 652 F.3d at 1208; *Preschooler II*, 479 F.3d at 1183; *Grubbs*, 974 F.2d at 123.  Plaintiff also pleads facts that it was clearly established in Supervisor Defendants' training that they were supposed to, at a minimum, act upon knowledge of a subordinate's violation of one's constitutional rights, which further supports finding a clearly established right.  *See, e.g., Vazquez*, 949 F.3d at 1164–65 ("Training materials and regulations are also relevant, although not dispositive, to determining whether reasonable officers would have been on notice [of a clearly established right].").

Given these allegations, the Court finds that Plaintiff could conceivable present evidence to overcome a defense of qualified immunity.  *See Chavez*, 817 F.3d at 1169.  Therefore, the Court rejects Supervisor Defendants' qualified immunity defense at this time.

## IV.     CONCLUSION

Based on the foregoing, Defendants' motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 20, 2024

EDWARD J. DAVILA
United States District Judge